UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE E. BAGLEY,<br><br>Plaintiff<br><br>v.<br><br>YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER, AND ANDREW METRICK, Individually.<br><br>Defendants. | Civil Action No. 3:13-cv-01890 |

## AFFIDAVIT OF JOEL PODOLNY

I, Joel Podolny, do state and depose as follows:

1. My name is Joel Podolny. I have personal knowledge of the facts stated herein. I am giving this Affidavit of my own free will. I have not been coerced, threatened, intimidated, pressured, or promised any reward or benefit for giving this Affidavit.

2. I was the Dean of the Yale School of Management ("SOM" or "the School") from June 2005 until December 2008, when I voluntarily departed to accept a position with Apple Inc. in Cupertino, California, where I currently am employed by Apple as a Vice President, reporting to the Chief Executive Officer, Tim Cook. I reside in the San Francisco Bay area.

3. While Dean of SOM, I had the responsibility, among others, of identifying and recruiting talented new faculty to SOM to build our capabilities, to provide the highest quality experience for our students, and to distinguish us among our competitors.

4. In my capacity as Dean, I was responsible for hiring Professors in the Practice ("PiPs"). These positions were by their nature contractual for a term of years, usually with an initial term of five years, subject to multiple-year renewals. To my knowledge, at no time before I left SOM had there ever been an instance of a PiP seeking renewal who was denied renewal of their appointment as a PiP for an additional term. The successive terms tended to range from five to ten years. At the time I recruited Professor Bagley, I was not aware of any PiP whose contract had not been so renewed.

1

5. In my role as Dean, I had the authority to recruit tenure-line faculty, subject to approval by the Yale SOM Board of Permanent Officers ("BPO") and the Provost. In contrast, I had the sole authority to appoint PiPs. I was responsible for negotiating the terms of the offers made on behalf of Yale to PiPs and had the authority to enter into binding employment agreements with PiPs and Yale University without the need for approval by the Provost or any other Yale official, subject solely to the technical requirement that every Yale faculty appointment must be formally voted on by Yale Corporation. The status of a PiP stood in contrast to someone who might be hired as a lecturer or other adjunct faculty member. If SOM desired to terminate a lecturer, we could do so based on our determination that (putting aside issues of performance) we needed someone with a different specialty to fill changing needs. Lecturers frequently came, and went, with little apology. However, the status of a PiP was very different. A PiP is a full professor, a senior faculty member with all the rights (voting and otherwise) and benefits afforded a tenured faculty member, with the exception of not being eligible to vote on tenure decisions. To terminate a PiP, SOM would have to justify the denial of reappointment either on the ground that the PiP's teaching, scholarship or University service was sub-par, or that the PiP did not have the expertise to teach a subject that fit within the School's curriculum. For example, if Yale SOM hired an individual to teach accounting, that person could not be denied renewal based on a lack of need unless the School eliminated all accounting content from the curriculum. Such a situation would be very unusual, and I am not aware of any circumstance in which a PiP was even at risk for non-renewal for that reason. Importantly, SOM could not take the position when deciding whether to reappoint an individual as a PiP that the PiP's area of expertise no longer fit into the curricular requirements if we specifically appointed that person to teach in that area; the contradiction would impermissibly blur the line between PiPs and adjunct faculty and, therefore, for that reason alone would not withstand scrutiny. Certainly the senior rank of a PiP would trump anyone designated as a "lecturer" or brought in later to fill areas of curricular requirements, again assuming the PiP met the PiP standards for teaching, scholarship, and service. At the time I recruited Professor Bagley, I was not aware of any circumstance when a PiP had fallen into the category of "not fit for curricular requirements." The lack of "unfit" PiPs seems both reasonable and obvious because we recruited PiP faculty precisely to fill gaps of expertise that were difficult if not impossible to fill with faculty from the traditional academic disciplines in business schools.

6. In or around October of 2006, I began recruiting Professor Constance Bagley to teach at SOM. I thought she was a perfect fit for expanding SOM's faculty expertise and experience, especially as we were launching our new integrated curriculum, which included a heightened emphasis on the relationship of business to state and society and managers' ethical, social, and legal obligations. I was familiar with Professor Bagley's work at Harvard and Stanford and believed she was an accomplished teacher who would bring a unique and valuable perspective to SOM. There were, and are, few professionals who have the combination of law, business, and entrepreneurial perspectives that Professor Bagley had developed over the course of her career as an attorney, teacher, and author.

7. I convinced Professor Bagley to join Yale initially for a one-year term beginning in July 2007 as a visiting Associate Professor to make sure Yale SOM was a good fit for her, and she for us. Because of her ability to integrate quickly and successfully within SOM, and to demonstrate her "value added" to our SOM faculty, I began considering, in or around the early part of 2008, Professor Bagley for a longer-term appointment as a PiP at SOM. As was customary, I appointed a senior faculty review committee to examine her scholarship, teaching, and potential University service. The committee obtained letters of recommendation from leading scholars in the field of business law, and Professor Bagley submitted a personal statement outlining her accomplishments and aspirations should she join the Yale senior faculty. The committee unanimously recommended her appointment as a PiP to the Yale SOM Board of Permanent Officers (the "BPO"), which, in an advisory vote that occurred in or around February 2008, recommended that I appoint her as a PiP. I accepted that recommendation, then began negotiating with her a PiP appointment for an initial five-year term.

8. At the time I was trying to secure Professor Bagley's commitment to SOM, it was clear to me that SOM was in particular need of a professor to teach business law or, for the uninitiated, the law of business. Professor Bagley had the potential as a faculty member who could bridge for our students the multi-faceted connections between law and business, and law and entrepreneurial success. Professor Bagley was a demonstrated and recognized expert in these fields, and it was clear to me that she would be a great asset to our SOM community, for both students and faculty alike.

9. In addition, I had certain concerns regarding an interdisciplinary core course called State and Society, which was first taught by Professor Douglas Rae in spring 2006. I believed that Professor Bagley's areas of expertise might be a good fit for this core curricular class, especially since we were looking for someone who could develop new managerially relevant teaching cases and other content, and she had already written two textbooks on the subject. Professor Rae had approached me in late 2007 or early 2008, after learning of Professor Bagley's credentials and experience and meeting with her, regarding the possibility of having Professor Bagley co-teach the course with him. I believed Professor Bagley's teaching and course-development skills would complement those of Professor Rae, who, while a distinguished scholar in political science, had not received particularly high marks for his teaching style in student evaluations. I endorsed the arrangement, and the ratings improved markedly in spring 2008 after she became co-instructor of the course.

10. In early 2008, I had several iterations of negotiations with Professor Bagley around the terms of her appointment as an SOM PiP. There were multiple drafts of her offer letter, which Deputy Dean Stan Garstka prepared in accordance with my instructions. Professor Bagley rejected the initial draft letter because she wanted to be clear about the criteria to be used for evaluating her contract renewal. She understandably wanted to make certain that her appointment—assuming she continued to perform at the expected level—would provide some long term stability. Professor Bagley expressed concerns that the offer letter make clear with regard to renewal that her reappointment review would mirror the process and use similar

3

criteria to those of the review which lead to her initial appointment, "just in case" I was no longer Dean or in charge when her contract came up for renewal. Professor Bagley also made it clear that she did not want to move herself and her son from Massachusetts (as a single parent with a child who had some emotional and academic challenges that would be exacerbated by a physical move to New Haven and enrollment in a new school) unless there was the potential (again, assuming she continued performance at an acceptable level) for permanency. She also wanted to confirm her status as a senior faculty member and that she would have the same rights and benefits as tenured faculty except for the right to vote on tenure cases. I knew she had been a senior lecturer at Stanford before she joined the Harvard Business School faculty as an Associate Professor and that she would not have accepted an adjunct appointment at Yale. As a result of our negotiations, and my understanding of her concerns, I had Deputy Dean Garstka add language to the contract to address these concerns and thereby entice her to accept our offer to come to Yale as a PiP.

11. At the time I left Yale SOM, I had not received, nor was I aware of, any complaints or concerns about Professor Bagley or her role in State and Society or any of her other courses.

Signed under the pains and penalties of perjury this 14th day of November 2014.

_____
Joel Podolny

4842-8280-7066.6