UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No. 3:13-cv-01890

| | |
|---|---|
| CONSTANCE E. BAGLEY, | ) <br> ) <br> ) |
| Plaintiff | ) <br> ) |
| v. | ) <br> ) <br> ) |
| YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER, AND ANDREW METRICK, Individually. | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**AFFIDAVIT OF CONSTANCE E. BAGLEY**
**Submitted in Support of Plaintiff's Motion for Preliminary Injunction**

I, Constance E. Bagley, do depose and state the following:

1. My name is Constance ("Connie") E. Bagley. I have personal knowledge of the facts stated herein. I am giving this Affidavit of my own free will. I have not been coerced, threatened, intimidated, pressured, or promised any reward or benefit for giving this Affidavit.

2. I have reviewed the factual allegations in my Complaint, filed with the Court on December 20, 2013, and verify that the facts stated therein, with the exception of those stated "upon information and belief," are true and accurate to the best of my knowledge.

3. I am a 61-year-old Professor in the Practice of Law and Management at the Yale School of Management ("SOM") in New Haven, Connecticut, and a senior research scholar at the Yale Law School. I currently reside in Woodbridge, Connecticut, with my 16-year-old son.

4. My contract with Yale is currently set to expire on December 31, 2014. My appointment as Professor in the Practice of Law and Management has not been renewed for another term.

5. After working as a corporate partner in the law firm of Bingham McCutchen LLP, I became a full-time academic in or around 1990. I have taught courses in business law, entrepreneurship, corporate governance, business administration, and management at the Stanford Graduate School of Business, the Harvard Business School, and the Yale School

of Management. My scholarship focuses on the subspecialty of the intersection of law and management, as well as on corporate governance and entrepreneurship.

6. From the period starting in January 2008 and ending in May 2012, I helped co-develop and successfully co-taught the Yale SOM "core" course State and Society in the full-time MBA program. For a number of years, including in the summer of 2012, 2013, and 2014, I also successfully taught, on my own, the classes in State and Society included in the Yale SOM Global Pre-MBA Leadership Program, which is offered to a selective group of prospective Yale SOM students. The Yale SOM website describes this as a program taught by "top Yale SOM faculty."

7. If my contract with Yale were extended, I could resume teaching State and Society to the full-time MBA students and continue to teach it in the Pre-MBA program. Given that the Yale SOM Dean recently announced that Yale SOM would be adding a fifth section for the full-time MBA students beginning in the next academic year, it will most likely be necessary to assign additional faculty to teach that course. I could also teach State and Society to Executive MBA students.

8. In addition to State and Society, I believe that I am qualified to teach a number of other courses at Yale, both within the School of Management and in Yale College and Yale's other schools.

9. Within Yale SOM, I could teach, as I have in the past, Legal Aspects of Entrepreneurship and Managing Legal and Regulatory Complexity to the full-time MBA students and Masters in Advanced Management students, and Law for Executives to the Executive MBA students. I could develop new courses in entrepreneurship. Yale SOM recruited a new lecturer in entrepreneurship in early 2014 and announced in the fall of 2014 that it was doing a search for another faculty member in that area. I could also teach courses for the new Executive MBA tracks in asset management and sustainability. According to presentations by the directors of the healthcare, asset management, and sustainability Executive MBA tracks at a Yale SOM faculty meeting, all three tracks will include a required law course. I could continue to guest lecture in Integrated Management Perspectives (IMP) (formerly called the Integrated Leadership Perspective) and in other "core" courses, such as Employee, Competitor, and Customer, and in the Leadership Development Program (LDP), as well as other MBA and Executive MBA courses. I could help develop and integrate content on corporate governance and social responsibility for the LDP, pursuant to the vision of the committee convened to revamp the program. I could also continue to teach in a variety of Yale SOM executive education programs. In fact, I have already been asked to teach in the Management for Lawyers program and the American Institute of Graphic Artists Program in the summer of 2015.

10. Outside of Yale SOM, I could teach entrepreneurship, business law, or business and society to undergraduates or graduate and professional school students outside of Yale SOM. I could work with the Yale Entrepreneurial Institute, Office of Cooperative Research, or Title IX officer, and conduct specialized sexual misconduct trainings for faculty, staff and students, as I did for the Department of Surgery when the department

chair asked me to teach Grand Rounds, with great success. I could also supervise independent studies and help the Case Writing Department resolve copyright issues with Yale SOM "raw" cases and develop a streamlined manner for professors at other institutions to view and purchase or otherwise access cases that Yale professors have developed.

11. My associations with Stanford, Harvard and now Yale have yielded incredible reputational and other benefits, including greater access to resources for research, deep networks of scholars and instructors from a host of disciplines, and a community of intelligent and accomplished students and academics. My association with Yale has expanded these networks and opened doors to working with international universities (such as Lund University in Sweden and the Copenhagen Business School in Denmark).

12. The interruption of employment I will face upon termination of my contract at the end of December 2014 will cause irreparable professional and personal harm. I will suffer a significant loss of professional standing that results from continuity of employment, particularly in academia, stemming in part from loss of association with a community of faculty and students and the professional relationships I have developed.

13. I have invested significant time and energy to establish myself at Yale—including as an expert on the intersection between law, management and society, and as an advocate for sexual equality and the prevention and handling of sexual misconduct—and to develop ideas and materials for specific SOM courses, which would be difficult, if not impossible, to restore or build elsewhere without significant re-investment of time and effort. I also invested time in ensuring that my contract with Yale SOM in 2008 would afford me the rights and benefits of all senior faculty members (with the exception of voting on tenure appointments). I have already been denied attendance, voice and vote in decision-making at important meetings of the senior faculty.

14. My publications, on which my standing as an academic depends, will also suffer as a result of the interruption in employment come the end of December. Yale provides me with a budget for research assistance and administrative help to complete my scholarship and facilitate my publications. I currently have several academic works in progress. For instance, I am working on two law review articles, which I plan to submit to prestigious law reviews that publish few, if any, articles by unemployed former academics. The 8th edition of my textbook, *Managers and the Legal Environment*, will be published at the end of December 2014, and I will soon begin working on the 5th edition of my other textbook, *The Entrepreneur's Guide to Business Law*. My association with an academic institution like Yale is critical to my ability to continue publishing, as publishers and journals strongly prefer to publish and promote works by academics at prestigious institutions.

15. Academic faculty positions in my discipline at institutions like Yale are difficult to attain because of their scarcity—indeed, positions like mine as a full professor do not simply open up every year or even every other year—and because of the highly competitive applicant pool for such jobs. Unlike in other occupations, I cannot simply complete a job

application and easily find alternative, comparable employment, which is why I took steps in negotiating my contract to heighten my chances at renewal by insisting that specific language be added.

16. My age—I will be 62 years old in December—makes it even more unlikely that I would be hired by another institution at this stage of my career.

17. Having moved with my minor son from Stanford to Harvard then to Yale, I intended to remain at Yale until the end of my career, as a result of retirement, no earlier than age 70.

18. Even if I could find a comparable position elsewhere, having to relocate my minor son during his high school years would be highly disruptive for both of us. I am a single mother and have worked hard to create a stable community and support system for my family and believe that a geographic move at this point in my career and in my son's life would cause irreparable personal harm. Having to engage in a Yale internal review process that lasted for more than sixteen months has already taken a heavy toll.

Signed under the pains and penalties of perjury this 11th day of November, 2014.

_____
Constance E. Bagley

Subscribed and sworn to before me this 11th day of November, 2014.

_____
Notary Public
My Commission Expires:

MANJIT SINGH
Notary Public
My Commission Expires 06/30/2019

4833-5463-4784.3

4