# PERSONAL STATEMENT

## CONSTANCE E. BAGLEY

### YALE SCHOOL OF MANAGEMENT

### NOVEMBER 18, 2011

I joined the Yale School of Management faculty as a Professor in the Practice of Law and Management on July 1, 2008, for an initial five-year term and look forward to a renewal of that appointment. I came to Yale as a Visiting Associate Professor in July 2007 from the Harvard Business School where I had been an Associate Professor of Business Administration since 2000. Prior to joining the HBS faculty, I taught at Stanford University's Graduate School of Business and was a corporate partner in the San Francisco office of the law firm of Bingham McCutchen. My academic work focuses on the legal aspects of management and entrepreneurship and is designed to replace the traditional model of the besieged firm bombarded by government regulations with that of an empowered, legally astute manager who helps shape the legal context within which the firm does business and uses legal tools as part of the firm's business strategy to manage the business enterprise more effectively. In terms of Yale service, I am proud to have played a leadership role in developing the new Yale University-wide procedures on sexual misconduct.

## OVERVIEW

Looking back, my thirteen years of experience "in the field" working as a corporate lawyer in both Silicon Valley and New York City with business leaders in a variety of different industries and companies, ranging from start-ups to major publicly traded corporations, provided an essential predicate for my ability to integrate law and management in an original way. In my practice, I saw first-hand the communications gaps that can develop between lawyers and their clients. As managers rose in the corporate hierarchy, they increasingly faced legal issues that they were ill equipped to handle. Managers often did not know which questions to ask their lawyers or how to factor legal considerations into business decisions. Many managers also did not understand that the law is not set in stone and that its application to a given set of facts is often unclear. I was surprised to find that even very hands-on managers often abdicated to their lawyers not only the responsibility for resolving business disputes, but also a wide range of other activities, such as the proper structuring of business relationships and the marshaling of human resources. As a result, companies sometimes pursued legal strategies that were at odds with their broader corporate strategy.

From time to time, I had the occasion to work with managers who recognized the possibility of using law and legal tools to create and capture value and to manage risk. We worked as a team to develop a course of action that met the business objectives while eliminating any unnecessary legal or business risk. These clients viewed me as a partner in value creation and risk management, not a necessary evil.

These experiences as a corporate attorney and my subsequent field and legal research at Stanford, HBS, and Yale convinced me that managers who understand the legal aspects of their business and bring counsel into the managerial decision-making process early on are more likely to use legal advice effectively to achieve their business objectives than those who distance themselves from the legal dimensions of business. While at Stanford, I authored the first editions of two books on the legal aspects of business, *Managers and the Legal Environment: Strategies for the 21st Century* (now in its sixth edition) and *The Entrepreneur's Guide to Business Law* (now in its fourth edition). Both books are widely utilized in leading graduate schools of business. Harvard Business School Press published my third book, *Winning Legally: Using the Law to Increase Value, Marshal Resources, and Manage Risk,* in 2005.

I first articulated the thesis that managers who understand and manage the legal aspects of their business will be better able to create value and manage risk in a *Financial Times Mastering Management* article in 2000. This insight ultimately ripened into my construct of legal astuteness, which I articulated in my 2008 *Academy of Management Review* article "Winning Legally: The Value of Legal Astuteness." I defined legal astuteness as the ability of the top management team to communicate effectively with counsel and to work together to solve complex problems and posited that legal astuteness is a valuable capability under the resource-based view of the firm. It has four components: (1) a set of value-laden attitudes, (2) a proactive approach, (3) the ability to exercise informed judgment, and (4) context-specific knowledge of the law and the proper application of legal tools. The construct of legal astuteness underlies the pedagogical platform I developed for my Yale SOM elective course Legal Aspects of Entrepreneurship (LAE) and many of the materials I prepared for State and Society. Lund University recognized my original work integrating law and management with an honorary doctorate in economics in 2011.

My approach to the legal aspects of business differs from traditional approaches to educating managers about the law in several important respects.

First, the unit of analysis in my research and course development is the manager—not areas of substantive law, such as torts and property. For example, LAE is organized around the managerial objectives of creating value, marshaling resources, and managing risk, not around the "legal silos" traditionally used to teach law in business schools.

Second, the goal of my teaching materials is to develop students' ability to exercise informed judgment when managing the legal aspects of business, not to teach black-letter law, that is, a set of legal rules. The focus is not so much on what a *court* would do as on what the *manager* should do. To further this pedagogical objective, I have written a number of "Harvard-style" cases that require students to factor in legal considerations when deciding what the manager-protagonist should do.

Third, my work seeks to reframe practitioners' and students' understanding of the relationship between law and management. Inexperienced managers have a tendency to focus on the constraining aspects of law and to treat the law as an exogenous force over which they have no influence or control. Managers often view the law as an arcane set of rules designed to impede, not facilitate, the creation of value. They frequently lament that "lawyers are the people who tell me what I can't do, not what I can do." Managers might concede that law and lawyers are a

necessary evil, but they often view law and the legal system as unpredictable in their application and, at times, a dead weight loss on the economy. That is, managers often view law as a net expense and not as a facilitator of value creation or capture.

We know that failure to meet society's expectations of acceptable behavior can put a firm at a competitive disadvantage and jeopardize its very existence. Yet, staying out of trouble is only part of the picture. The law not only punishes and constrains, it also enables. Laws can liberate individual action and facilitate interorganizational interactions. Secure and enforceable property rights undergird the capitalist system. The antitrust laws seek to ensure that competition is based on the merits of the product and not on fraud, deception, or coercion. My research and course materials identify a variety of legal tools that managers can use to manage the firm more effectively during different phases of business development. By focusing on both the constraining and enabling aspects of law, my work offers a more complete picture of the role of law in business.

Finally, the construct of legal astuteness embeds legal considerations in mainstream management theory and frameworks and links managerial actions to broader concerns of ethics and societal welfare. The ethical leader's decision tree, which I first published in the *Harvard Business Review*, is a tool that students and practitioners can use to ensure that their conduct complies with both legal and ethical requirements. The systems approach to law, business, and society, published in my 2010 *American Business Law Journal* article "What's Law Got to Do with It?: Integrating Law and Strategy," is a descriptive integrating framework that imbeds legal considerations and other nonmarket factors in mainstream theories of competitive advantage.

My teaching materials are used worldwide. West has sold more than 60,000 copies of *Managers and the Legal Environment* and more than 40,000 copies of *The Entrepreneur's Guide to Business Law*. Each text is used at more than 100 universities and colleges in the United States. These include many of the leading business schools, such as the University of Chicago, Stanford, Harvard Business School, the University of Pennsylvania, Massachusetts Institute of Technology, Carnegie-Mellon, Dartmouth, University of Michigan, Cornell, and the University of California at Berkeley, as well as Princeton, Johns Hopkins, and Georgetown Law Center. *Managers and the Legal Environment* has also been used at universities in China and Israel.

My cases and technical notes have been used in more than fifty business schools, including the University of Chicago, Stanford, University of Pennsylvania, Massachusetts Institute of Technology, Carnegie-Mellon, Dartmouth, University of Michigan, Cornell, Columbia, and the University of California at Los Angeles and Berkeley, as well as at the law schools at the University of Virginia and Northwestern and at universities in Japan, Australia, and Europe.

The Academy of Legal Studies in Business (ALSB), the academic association of faculty teaching law in business schools, recognized my innovative approach to business law in 2006 by awarding me the Senior Faculty Award of Excellence. The award letter from ALSB president Professor Lynda Oswald of the University of Michigan cited my "groundbreaking publications of all kinds (books, cases, law review articles, newspaper columns)" and noted that I "was one of the first of us to look at law as a strategic tool, and one of the best at thinking about the role of law in creating business value."

In the balance of this personal statement, I first explain how my past endeavors led to my decision to join the faculty at the Yale School of Management. I then outline my teaching at Yale and list my publications and awards since joining the Yale faculty. Finally, I describe my contributions to the school environment and mission.

## ACADEMIC AND PROFESSIONAL BACKGROUND

I graduated from Stanford University in 1974 and from Harvard Law School in 1977. I was admitted to the State Bar of New York and the State Bar of California in 1978.

While a student at Harvard Law School, I coauthored with Professor Abram Chayes a paper on institutional arrangements for a multinational plant to reprocess spent nuclear fuel. The paper was subsequently published as a chapter in the book *Institutional Arrangements for Nuclear Fuel Reprocessing*. This was my first effort to integrate business and political considerations into legal and institutional arrangements for a production facility. We proposed a structure that would prevent the diversion of weapons-grade uranium while ensuring the uninterrupted supply of reprocessed fuel for use in nuclear power plants.

I first practiced law at the firm of Webster and Sheffield in New York City, where I worked primarily on an innovative financing and real estate development project that made it possible for the Museum of Modern Art to more than double its exhibit space. This project and others gave me the opportunity to see first-hand how corporate lawyers can facilitate complex business and financial transactions.

In 1978, I moved to the San Francisco Bay area and became an associate and then, in 1984, a corporate partner at McCutchen, Doyle, Brown & Enersen (now Bingham McCutchen). I drafted and negotiated a variety of contracts and worked on multiple corporate transactions, including public and private offerings of securities, tender offers, and proxy contests, as well as acquisitions and divestitures.

When I became a partner at Bingham McCutchen, I was interested in expanding the firm's practice representing entrepreneurs and growing companies so I reached out to the faculty at the Stanford Graduate School of Business. In 1985, Associate Dean Gene Webb invited me to teach two sessions on corporate takeovers and the fiduciary duties of directors during the Stanford Graduate School of Business Board of Directors Executive Program. That year I tied with two former GSB deans (Ernie Arbuckle and Arjay Miller) for the best teaching ratings for the program and gladly returned in 1986 and 1987.

Stanford hired me in 1988 to develop two new MBA electives, one for general managers and another for entrepreneurs and venture capitalists. In preparation, I reviewed the teaching materials used by my predecessor at Stanford and by faculty at other leading graduate schools of business. Stanford and other top schools, other than Harvard, used legal environment of business or business law textbooks that tended to present the law in isolation from the "business" aspects of management. There was no discernable effort to highlight those aspects of law most salient to managers. In short, the focus was more on teaching black-letter law and less on developing managerial judgment. I learned that this stemmed in part from the fact that several of the leading business law texts had been designed primarily to prepare accounting

students to pass the law portion of the CPA exam. To the extent that the existing texts on the legal environment of business addressed the practice of management, the focus was on regulation and compliance—the downside of failing to comply with the law. There was scant discussion of how managers could use law as a positive, constructive, and value-adding force. When I reviewed the syllabus for the HBS elective "Law and the Corporate Manager," I was surprised to see that full-text judicial opinions and technical notes, not HBS cases, were utilized as the primary teaching vehicles. Neither this approach nor the one used in the leading texts struck me as ideally suited for teaching future managers how to integrate legal considerations in the formulation and execution of firm strategy.

With the encouragement and support of the Stanford GSB's Dean's Office, I then proceeded to write *Managers and the Legal Environment*. My prior experience as a corporate lawyer enabled me to sift through literally thousands of judicial opinions, statutes, and regulations to identify the issues most relevant to general managers. Most of the cases presented in the text deal with issues in the gray areas of the law where managers are called upon to exercise a degree of judgment. Each chapter culminates with a section entitled "The Responsible Manager," which explains how managers can use the information provided in the chapter to manage the business more effectively.

The first edition of *Managers and the Legal Environment* was published in 1991 by West Publishing, the leading publisher of law texts used in law schools and business schools. (West subsequently spun off its non-law-school textbooks to Cengage Learning.) It addressed a variety of topics not covered in other books, such as the application of copyright law to software; the validity of biotech patents; the *Pennzoil v. Texaco* case, which resulted in a $10.5 billion jury verdict against Texaco for interfering with Pennzoil's agreement to buy Getty Oil; the fraud-on-the-market theory of liability under SEC Rule 10b-5; and the legality of poison pills and other corporate governance matters. These were rapidly developing areas of the law that lawyers in my firm wrestled with, as our clients were often on the forefront of new technologies and ways of doing business. I used *Managers and the Legal Environment* as the primary text for my first Stanford MBA elective, Managers and the Legal Environment. West (and its successor Cengage) published the second edition in 1995, the third in 1998, the fourth in 2002, the fifth in 2005, and the sixth in 2009. I was sole author of the first four editions then invited Professor Diane Savage, who taught the Managers and the Legal Environment course I developed at Stanford, to join me as the second author for the fifth and sixth editions. I will be sole author of the seventh edition, due to be published in 2012. Given the dynamic nature of business law, each edition requires a major rewrite of many sections of the book.

In 1990, I accepted Stanford's offer to join the faculty as a full-time academic and stepped down as a partner at Bingham McCutchen. Thereafter, I developed *The Entrepreneur's Guide to Business Law* as the primary text for my second new Stanford MBA elective, Legal Aspects of Entrepreneurship. My coauthor Craig Dauchy is a leading member of the venture capital bar. This was the first text to provide an integrated discussion addressed to entrepreneurs of the legal aspects of forming, funding, operating, and harvesting new ventures. West (and its successor Cengage) published the first edition in 1997, the second in 2003, the third in 2007, and the fourth in 2010.

While at Stanford, I became one of the first legal scholars to write "Harvard-style" cases for teaching business law. At that time, the HBS Publishing catalogue included very few cases under law-related headings. The few listed related primarily to regulatory issues, such as antitrust and import/export controls. I have written multiple Stanford, HBS, and Yale cases and currently serve as Case Editor for the Academy of Legal Studies in Business.

After visiting for a semester, I accepted Harvard's offer to join the Harvard Business School faculty as an associate professor in the Entrepreneurial Management (EM) Unit in July 2000. The opportunity-driven view of management developed by scholars in the EM Unit provided a helpful frame of reference for thinking about the legal aspects of business in new ways.

Harvard Business School Press published my third book, *Winning Legally: How to Use the Law to Create Value, Marshal Resources, and Manage Risk,* in 2005. Addressed to practitioners, it shows how legally astute managers can not only keep their firms out of trouble but also further their business strategy by helping shape the legal environment in which they do business and by using legal tools to manage the firm more effectively. I use that book in several executive programs I teach at SOM.

## YALE TEACHING

I have co-taught four sections of State and Society with Professor Doug Rae each year since coming to Yale as a Visiting Associate Professor in the 2007-2008 academic year. We have strengthened the coverage of legal issues and sharpened the course's managerial focus. Doug and I have written five State and Society background notes and multiple cases.

I have taught my elective Legal Aspects of Entrepreneurship each fall (except when I was on triennial leave in the fall of 2010). I use my book *The Entrepreneur's Guide to Business Law* and a combination of HBS and Yale cases I developed and co-authored. My cases, technical notes, and books identify many of the legal issues likely to arise in the course of starting, managing, and growing a company and provide opportunities for students to develop the attitudes, proactive approach, judgment, and knowledge necessary for legal astuteness.

I also developed and teach the Law for Executives course in our MBA-E program and have taught in several SOM executive programs. I helped develop the General Electric ecomagination "raw case" and co-teach it in Competitor. I teach my *Jim Flores, ControlTrix* case, which addresses many of the legal dimensions of managing employees, in Employee, and I co-teach *Toys in China* in Integrated Leadership Perspective.

## PUBLICATIONS AND AWARDS SINCE JOINING THE YALE FACULTY

Since coming to Yale in July 2007, I have published a sixth edition of *Managers and the Legal Environment* (co-authored with Diane Savage) and a fourth edition of *The Entrepreneur's Guide to Business Law* (coauthored with Craig Dauchy). I am currently working on the seventh edition of *Managers and the Legal Environment.* I have coauthored more than twenty-five SOM cases and technical notes, including *Research in Motion's BlackBerry: Balancing Privacy Rights and National Security, From Politics to Law: U.S. Healthcare Reform 2011, BP in Russia,* and *South Africa's Energy Crisis: Reconciling Economic Growth with Environmental Protection.* My articles include "Winning

Legally: The Value of Legal Astuteness" in the *Academy of Management Review*, "What's Law Got to Do with It?: Integrating Law and Strategy" in the *American Business Law Journal*, and "Deep Links: Does Knowledge of the Law Change Managers' Perceptions of the Role of Law and Ethics in Business?" in the *Houston Law Review*.

In 2009, I won SOM's Excellence in Teaching Award. In 2011, Lund University recognized my original work linking law and management with an honorary doctorate in economics.

## CONTRIBUTION TO SCHOOL ENVIRONMENT AND MISSION

I served as co-chair of the Yale University Women Faculty Forum Working Group on Sexual Misconduct and was primary author of the WFF report that led to creation of the new University-wide Committee on Sexual Misconduct. I am coauthor of an article on Yale's new policies, which received a preliminary acceptance from *Change The Magazine for Higher Learning*. I am now a core member of the UWC and a member of the WFF Steering Committee. I also served on the SOM curriculum review committee.

I am a staff editor of the *American Business Law Journal*, which is a peer-reviewed journal published by the Academy of Legal Studies in Business. I currently serve as President of the ALSB and was Program Chair of our 86th annual conference in August 2011. We had 269 participants from the United States, England, France, Denmark, Norway, and Australia and more than 160 papers presented. I have been a reviewer for the *Academy of Management Review* and the *Strategic Management Journal*.

I serve on the Academic Advisory Board of the Carol and Laurence Zicklin Center for Business Ethics Research at the Wharton School, University of Pennsylvania, and have presented my work on legal astuteness and the relationship of law and ethics at several faculty seminars at Wharton. I was one of a select group of academics invited to participate in the Aspen Institute Business and Society Program Roundtable "Rethinking Shareholder Primacy & Purpose of the Firm" at UCLA Law School in September 2011 and have been invited by the Brookings Institution to speak on that topic in December 2011. Invited practitioner presentations include a day-long program for the law department at Mass Mutual Financial on exercising judgment when managing legal issues.

My books and articles have been cited in more than 90 law review articles, including articles published in the *Harvard Law Review*, the *Stanford Law Review*, the *Yale Law and Policy Review*, and the *Columbia Law Review*. Management journal citations include the *American Economic Review*, *Administrative Science Quarterly*, *Organization Science*, *The Accounting Review*, and the *Journal of Business Ethics*. I have been quoted as an expert by the *Wall Street Journal*, *BusinessWeek*, the *Boston Globe*, the *Baltimore Sun*, *Inc.* magazine, the Associated Press, Bloomberg News, and other publications.

From 2005 to 2008, I served on the National Adjudicatory Council of the Financial Industry Regulatory Authority. The NAC hears appeals of disciplinary actions against securities broker-dealers for violations of the NASD's and NYSE's rules requiring members to observe high standards of commercial honor and just and equitable principles of trade.

## THE FUTURE

I look forward to continuing to write course materials, scholarly articles, and articles for practitioners to further develop a field within management centered on managing the legal dimensions of business. Given the Yale School of Management's integrated and inter-disciplinary approach to business education and research, I cannot imagine a better place to continue to pursue this work.

It has been exciting to be a part of this dynamic phase in SOM's development. I share SOM's sense of higher purpose and its mission of educating leaders for business and society. In particular, I look forward to doing my part to enhance our students' ability to understand not only competition and cooperation but also complexity.