Yale SCHOOL OF MANAGEMENT

ANDREW METRICK
*Deputy Dean for Faculty Development*
*Michael H. Jordan Professor of Finance*
*and Management*

PO Box 208200
New Haven CT 06520-8200
T 203 432-3069
F 203 432-8931
metrick@yale.edu
mba.yale.edu/metrick

*courier*
135 Prospect Street
New Haven CT 06511

February 27, 2013

Dear Verity,

This letter contains responses to the questions posed in your email of 2/17/13. Questions and responses are given below:

> 1. Did you (the SOM Deans) or the Review Committee read the text of CB's appointment letter of April 8, 2008 before May 7? If so, when was it read and by whom?

Yes. At a meeting in April 2012, Professor Bagley told me that there was language in her appointment letter promising specific voting rights and standards for her review. I also spoke with Stan Gartska, who had been the Deputy Dean at the time of the initial appointment, to get a better understanding of the background and intent of the language in the letter. Professor Garstka then sent me the email correspondence that he had between former Dean Podolny and Professor Bagley during negotiations over the contract. (I believe that this correspondence was reviewed by your committee.) I also spoke about the letter with representatives of the Provost's and General Counsel's office.

> 2. Did you read and consider the language of the appointment, in particular, the paragraph stating: As Professor in the Practice of Law and Management you will be a full time, voting member of the faculty on all matters except tenure appointments. Under our rules governing such appointments you will be reviewed in the fourth year of this appointment for continuation as a Professor in the Practice of Law and Management. This review will be similar in process and use similar criteria to those of the review which led to this current appointment.
>
> If so, did you give any guidance to the Review Committee, the BPO or Professor Bagley about your understanding of the reappointment process or standard set out in the italicized statement? If so, when and to whom did you give such guidance, and what was the guidance you gave?

Yes. As stated in my answer to the question above, I read the letter carefully, spoke with other members past and present of the Deans office, and consulted with members of the Provost's and

JAN 0 9 2014



General Counsel's offices. We also looked at past reports and appointment letters for other Professors of the Practice. We (SOM deans) concluded that the language "This review will be similar in process and use similar criteria to those of the review which led to this current appointment" meant that we should follow our normal review process and criteria for Professor of the Practice. This process includes a review of teaching, scholarship, and the programmatic needs of the school, and these criteria were applied both at her initial appointment and for this review.

Since we concluded that the correct course was to follow our normal process, there was no need to provide any special guidance for the BPO.

    3. When were the results of the teaching evaluations for the State and Society course taught by Professors Bagley and Rae made available?

I requested of the Registrar that I be sent these reports as soon as they were available, which would typically be a few days after the final day of class. The reviews were sent to me on May 3, 2012.

    4. Who in the SOM community had access to these evaluations?

The staff of the registrar's office, the instructors (Rae and Bagley), the chair of Professor's Bagley's review committee (Paul Bracken), and SOM deans. The reviews for the spring 2012 course came out too late for the Review Committee to include in their report.

    5. Who among SOM leadership had responsibility for reviewing and analyzing these evaluations? Was there any comparison with prior teaching evaluations and, if so, what was the outcome of that comparison?

For the spring 2012 evaluations, the analysis was done by Deputy Deans Metrick and Rouwenhorst, and did include comparisons with prior years. The outcome of this comparison is discussed in my answer to the question #6, below.

    6. We would like to know the exact nature of the careful assessment of the teaching evaluations of the State and Society course you report having undertaken. Beyond a review of email correspondence, did SOM leaders interview the teaching assistants for the course, other staff involved in administering the course and students who had taken the course? Was there an attempt to address the problems of the course by a face to face, conjoint meeting with the conflicting teachers?

Metrick and Rouwenhorst read the detailed student comments, reviewed the syllabus, and compared summary ratings to past years. I had also met many times with Professor Bagley during the semester, and once with Professor Rae towards the end of the semester. I offered Professor Bagley the opportunity to meet with her together with Professor Rae, but she declined. We did not meet with students, TAs or staff because such meetings would not have been germane to our decision. We were not attempting to apportion blame for the problems of the spring 2012 course; we were attempting instead to make a curricular decision about the future of the course and its role in the core.

7. Is it standard to discuss (or not to discuss) teaching performance (as described in a committee report and as additional information is available) in a BPO meeting prior to a vote on reappointment of a Professor in the Practice?

Yes, it is standard to cover teaching performance as part of the BPO discussion. This would typically done using summary data of course evaluations, combined with individual faculty members impressions of style, rigor, and effectiveness. This practice was followed in Professor Bagley's case.

Sincerely,

*[signature]*

Andrew Metrick