## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
                                        )
CONSTANCE E. BAGLEY,                    )
                                        )        No. 3:13-cv-1890 (CSH)
                    Plaintiff,          )
                                        )
v.                                      )
                                        )
YALE UNIVERSITY, DOUGLAS RAE,           )        **DECEMBER 22, 2014**
EDWARD SNYDER, and ANDREW               )
METRICK, Individually,                  )
                                        )
                    Defendants.         )
_____)

## OPINION ON RULING DENYING PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

**HAIGHT, Senior District Judge**:

In a Ruling in Summary Form [Doc. 100], the Court denied Plaintiff's motion for a preliminary injunction. That Ruling stated that an Opinion giving the Court's detailed reasoning would be filed subsequently. This is that Opinion.

## I.  BACKGROUND

In this action, Plaintiff Constance Bagley claims principally that Defendant Yale University ("Yale") and certain members of the faculty of the Yale School of Management ("SOM") violated federal anti-discrimination statutes when Yale decided not to renew Bagley's contract as a professor at SOM.

The factual background of the case, and the nature of Plaintiff's several federal and state law claims, are fully described in the Court's Ruling [Doc. 55], reported at 2014 WL 4230921 (D. Conn.

Aug. 26, 2014). Familiarity with that Ruling is assumed. For present purposes, it is only necessary to state that as the result of Defendants' decisions adverse to Professor Bagley, her employment at the Yale SOM will terminate on December 31, 2014. After discovery had commenced but before completion, Bagley filed a motion against Yale under Fed. R. Civ. P. 65(a) [Doc. 62] for a preliminary injunction.

The parties seem to disagree to some extent with respect to the specific injunctive relief the Court should grant to Bagley if her motion succeeds. Responding to a direction by the Court for clarification of that question, Yale submits that the proper form of a "mandatory injunction" in its entirety would be an order "extending the term of Plaintiff's employment contract at the School of Management commencing January 1, 2015 and continuing until the entry of judgment in this matter," during which interval "Yale University shall provide Plaintiff with the same salary and fringe benefits she was receiving on December 31, 2014." Doc. 90 at 1. Bagley submits that an injunction should paint with a broader brush. The Court's order, in her view, should mandate Yale to maintain Bagley's faculty title, salary and benefits, and in addition maintain her "current teaching load," "ability to teach in executive programs," "current level of secretarial support," "teaching assistant support," her office and parking space, her "research and teaching financial support," and maintain "all faculty rights currently held by Professor Bagley in faculty governance." Doc. 91 at 1-2.

In the view I take of the case, I need not deal specifically with these differences in a proposed injunctive order. For present purposes, the important aspect of these submissions is that both Yale and Bagley identify as the first, and clearly the most important, aspect of the requested preliminary relief the retention of Professor Bagley on the SOM faculty until the merits of the underlying action are decided at trial.

Prior to December 8, the date scheduled for the beginning of the hearing on Plaintiff's preliminary injunction motion, Defendants moved to bifurcate the hearing [Doc. 84], so that the Court would first hear evidence upon and then decide whether Plaintiff had proved irreparable harm in the absence of a preliminary injunction.  A ruling adverse to Plaintiff on that question would, in Yale's submission, require denial of plaintiff's motion and render all other issues moot.  Plaintiff opposed bifurcation. [Doc. 93].  At the beginning of the hearing on December 8, after hearing the arguments of counsel on the point, the Court ruled orally that the Defendants' motion to bifurcate was granted and the hearing would proceed accordingly.[1]

During December 8, 9 and 10, the parties put in evidence on the irreparable harm issue.  Counsel argued the question on December 11.  On December 12 the Court entered a Ruling in Summary Form [Doc. 100], which held that Plaintiff had not proved irreparable harm, and consequently denied her motion for a preliminary injunction.  This Opinion states at greater length the Court's reasons for that December 12 Ruling.

## II.  DISCUSSION

Two threshold questions must be considered at the outset: Defendants' assertion that Plaintiff's delay in moving for a preliminary injunction precludes the granting of the motion; and bifurcation of the hearing on the motion.  I discuss these issues in order.

### A.    Delay

Defendants cite cases in which courts have held that a party's delay in making a preliminary injunction motion weighs against granting interim relief or precludes it altogether.  The proposition is tied to the prerequisite of irreparable harm, and in the vernacular, goes like this: An individual

---

[1]  Transcript of December 8, 2014 Hearing at 84-90.

seeking a preliminary injunction is saying: "Good grief, I am suffering or will suffer severe and permanent injury unless the court tells this other individual to stop doing something (or do something) RIGHT NOW."  If the individual seeking interim relief has waited an inexplicable amount of time before asking for that relief – say, three months, or perhaps a year – after the occurrence of the facts giving rise to his claimed distress, courts may draw the inference that the complainant's circumstances really are not or could not have been that dire.  In short: a plaintiff's delay in seeking a preliminary injunction weighs against a finding that the plaintiff has suffered that kind of irreparable harm.

**B.    Bifurcation**

Rule 42(b), Fed. R. Civ. P., provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  A district court's order for a separate trial of an issue or claim is referred to as a "bifurcation."  Bifurcation under Rule 42(b) rests in the discretion of the district court, and is reviewable for abuse.  *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984).

While bifurcation motions are frequently made in the context of a plenary trial, there is precedent for the separate consideration and adjudication of a specified issue presented by a motion for a preliminary injunction.  In *Upjohn Co. v. Medtron Labs, Inc.*, No. 87 Civ. 5773, 1998 WL 18842 (S.D.N.Y. Feb. 22, 1998), in which the plaintiff moved for a preliminary injunction, the district court bifurcated and tried separately the defendants' defense of laches.  The court reasoned that since the laches defense, if sustained, would moot the preliminary injunction motion, "it would serve the interest of judicial economy for [the court] to consider defendants' laches defense before

and separately from considering the merits of plaintiff's preliminary injunction motion." *Id*. at *1. I followed the same reasoning in bifurcating for initial consideration Yale's contention that Professor Bagley would not be able to prove irreparable harm, a prerequisite for any form of preliminary injunctive relief.

## C.    Standards of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and internal quotation marks omitted).

When a party in litigation moves for a preliminary injunction, the district court's responsibility is to determine whether the circumstances of the case warrant it.  The question is entrusted to the district court's discretion.  Appellate review of a preliminary injunction order is limited to the determination of whether the district court abused its discretion in deciding that the circumstances of the case justified injunctive relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931-932 (1975).  "The district court has wide discretion in determining whether to grant a preliminary injunction, and this Court reviews the district court's determination only for abuse of discretion." *Moore v. Consol. Edison Co.*, 403 F.3d 506, 511 (2d Cir. 2004) (citation omitted).  The same principles apply to a permanent injunction.  "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## D.    Order and Standards of Proof on the Prerequisite of Irreparable Harm in a Motion for

5

### a Preliminary Injunction

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.  Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  *Rodriguez v. DeBuono*, 175 F.3d 227, 234-235 (2d Cir. 1999) (citations and internal quotation marks omitted).

During oral argument in the case at bar, counsel for Plaintiff suggested that later decisions call into question the Second Circuit's holding in *Rodriguez* that the element of irreparable harm must always be demonstrated before all others.  Counsel's suggestion is questionable, since in subsequent cases the Second Circuit cites *Rodriguez* for the principle that on a motion for a preliminary injunction, the existence *vel non* of irreparable harm must be considered and decided first.  *See, e.g., Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that the injury is likely before the other requirements for an injunction will be considered.") (citing *Rodriguez* for the latter proposition; other citations and internal quotation marks omitted).  But I need not pursue that subject.  It is beyond question that whatever its proper place on the time line place of preliminary injunction evaluation, irreparable harm is an essential requirement for the granting of preliminary relief.  If a plaintiff does not or cannot demonstrate irreparable harm if a preliminary injunction is not granted, the injunction will not be granted.

These principles inexorably lead the district court to a consideration of what remedies are available to a plaintiff who succeeds at the trial.  In the phrase "preliminary injunction," the adjective "preliminary" means *before the trial*.  In the phrase "irreparable harm," the adjective "irreparable"

means *not remediable by the trial*.  In *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), the Second Circuit cautioned that a district court "may issue the injunction only if the plaintiff has demonstrated that he is likely to suffer irreparable injury in the absence of an injunction." (citation and internal quotation marks omitted).   What this formula envisions is a plaintiff who does not obtain a preliminary injunction but wins at the trial.  *Salinger* holds that in deciding whether an injunction should issue, a district court "must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. " 607 F.3d at 80 (citation and internal quotation marks omitted).

In the case at bar, if Professor Bagley prevails on the merits of her claims against Yale, the remedies available to her would include back pay, front pay, and a reinstatement to the School of Management position of which (on this assumption) she was wrongfully deprived: a respected member of the non-tenured faculty, whose application for renewal of her employment contract should have been evaluated by the SOM's articulated criteria, untainted by gender or age discrimination.  At oral argument, counsel for Bagley seized upon the last-quoted language from *Salinger* to argue that since reinstatement is an equitable remedy, and consequently not to be found among "the remedies available at law," the availability of reinstatement at the hands of the trial judge (clad in the robe of a Chancellor in Equity) should not be included in this Court's determination of whether Yale's termination of Bagley's employment on December 31 will cause her *irreparable* harm.

Although this argument is made with force and energy, I am unable to accept it.  If the argument were sound, every individual whose employment was terminated and sought reinstatement

could claim a *per se* irreparable injury.  Counsel for Plaintiff do not cite a case for that proposition.

On the contrary: cases routinely hold that the availability of job reinstatement as a remedy at trial

precludes preliminary injunction relief.  In *EEOC v. City of Janesville*, 630 F.2d 1254 (7th Cir.

1980), where Jones, a municipal police chief whose employment had been terminated by reason of

age, sued for reinstatement alleging discrimination, the Seventh Circuit reversed the district court's

grant of a preliminary injunction reinstating the former chief pending trial on the merits.  The court

of appeals held that the plaintiff had not made "the requisite showing of irreparable injury to justify

injunctive relief in this case."  630 F.2d at 1259.  The district court had concluded that

> the failure to reinstate Jones to his former position during the
> pendency of the litigation would result in the deterioration of his skill
> and morale during that period which could not be cured *by a final
> judgment reinstating him to his job with back pay.*

*Id*. (emphasis added).  The Seventh Circuit rejected that holding:

> We find no basis in the record for such a conclusion.  Reinstatement
> pending a trial on the merits, even in cases of race or sex
> discrimination, is an extraordinary remedy permissible only upon a
> substantial showing of irreparable injury.  Moreover, irreparable
> injury does not include loss of income, inability to find other
> employment, or financial distress.

*Id*.  For the last proposition, the Seventh Circuit cited *Sampson v. Murray*, 415 U.S. 61 (1974).

Implicit in the court of appeals' reasoning is the trial court's ability to make the plaintiff whole by a

judgment of reinstatement with back pay.  In concluding that the plaintiff had not shown an

irreparable injury, the Seventh Circuit manifested no discernible concern that if plaintiff prevailed

at trial, the district court's available remedies would be partly legal in nature, and partly equitable.

In *Ahmad v. Long Island University*, 18 F.Supp.2d 245 (E.D.N.Y. 1998), a professor at the

university alleged that he had been denied tenure for discriminatory reasons, and sought a

preliminary injunction enjoining the university from terminating his employment and precluding his

research at the university.  In denying a preliminary injunction, District Judge Spatt said in part:

> If the plaintiff prevails in this case on the merits, he may be awarded
> his back pay, front pay, the value of any benefits or earnings and,
> perhaps, reinstatement.  He thus has failed to demonstrate that his
> alleged injury is not capable of being remedied by money damages.

18 F.Supp.2d at 249 (citation and internal quotation marks omitted).

Cases such as these stand for the common-sense conclusion that an available trial remedy of

employment reinstatement precludes Bagley's argument that harm caused by pre-trial employment

termination is irreparable.  The Second Circuit clearly stated that conclusion in *Savage v. Gorski*,

850 F.2d 64, 68 (2d Cir. 1988), which reversed the district court's grant of a preliminary injunction

enjoining a county executive from terminating the employment of county employees on the ground

that firing them would have violated their constitutional rights.  In holding that the employees had

not demonstrated irreparable harm, the Second Circuit stated succinctly:

> Since reinstatement and money damages could make appellees whole
> for any loss suffered during this period, their injury is plainly
> reparable and appellees have not demonstrated the type of harm
> entitling them to equitable relief.

That language may perhaps be consistent with the theory of Bagley's counsel that "reinstatement"

is somehow different from "money damages," but the more important point is that the trial court

availability of *both* reinstatement of employment and money damages are included in the

determination of whether a discharged employee's injury is *reparable*.

It follows that Professor Bagley cannot characterize Yale's termination of her employment,

even if discriminatory, as a cause of *irreparable* harm.  She claims other kinds of harm, which

include loss of reputation in the academic world; an adverse effect upon her ability to find publishers

for academic books and articles she authors; stress and anxiety resulting from a possible relocation from her home in Woodbridge, Connecticut, which she established when Yale hired her (a factor compounded by the asserted needs of Bagley's 16-year-old adopted son, for whom she is the sole parent); and a chilling effect Yale's treatment of Bagley allegedly has upon other Yale employees.

In the context of a motion for a preliminary injunction, claimed injuries such as these must be evaluated in the light of established Supreme Court and Second Circuit authority. "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately addressed by final relief on the merits and for which money damages cannot provide adequate compensation. And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (citations and internal quotation marks omitted).

It has been clear since the Supreme Court decided *Sampson v. Murray*, 415 U.S. 61 (1974), that in employment termination cases, damage to a professional reputation and attendant deprivations do not constitute irreparable harm. The plaintiff in *Sampson*, a federal employee, claimed that her discharge was invalid because it violated agency procedures. The district court issued an injunction restraining termination of her employment pending further agency review, which the court of appeals affirmed. The Supreme Court, reversing, stated that "we view the order at issue here as a preliminary injunction," and "the basis of injunctive relief has always been irreparable harm and inadequacy of legal remedies." 415 U.S at 88-89 (quotation marks omitted). The Supreme Court added:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weights heavily

10

against a claim of irreparable harm.

*Id*. at 91.[2]  Applying this principle to the facts in *Sampson*, the Court held:

> Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

*Id.* at 92-93.  Expanding upon that point, the Court said in a footnote at 415 U.S. 93 n.68:

> We have held that an insufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual.

The *Sampson* Court suggested in the same footnote that "cases may arise in which the circumstances surrounding an employee's discharge, together with the resulting effect on the employee, may so far depart from the normal situation that irreparable injury might be found," adding that "we do not wish to be understood as foreclosing relief in the genuinely extraordinary situation."  In the case at bar, counsel for Professor Bagley argue that a combination of circumstances create just such an extraordinary situation.  But that is a difficult showing to make.  The difficulties are illustrated by *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193 (2d Cir. 1985), where the Second Circuit reversed the district court's preliminary injunction in favor of a government employee suspended without pay who filed a Title VII case alleging discrimination. The district court held that *Sampson*, a civil service regulations case, did not apply to a Title VII

---

[2]  This last-quoted language appeared in a D.C. Circuit case which the Supreme Court explicitly approved in *Sampson*.

discrimination case, and that "irreparable injury was established herein by the alleged damage to

Stewart's family relationships, his inability to support his family, and the possibility that others might

be chilled in exercising their rights as a result of alleged retaliatory action." 762 F.2d at 199.  The

Second Circuit reversed the preliminary injunction granted by the district court.  The court of

appeals' reasoning in *Stewart* is so instructive with respect to the similar collection of claims asserted

by Professor Bagley in the case at bar that I quote Judge Pierce's language at some length:

> Although the *Holt* court [*Holt v. Continental Group, Inc.*, 708 F.2d 87 (2d Cir. 1983)] follows *Sampson* and suggests, in *dictum*, that there may be exceptions to the *Sampson v. Murray* rule under extraordinary circumstances, the *Holt* court clearly maintains that, even in the Title VII context, without such extraordinary circumstances, the requisite irreparable harm is not established . . .by financial distress or inability to find other employment.

> Herein, Stewart has plainly failed to demonstrate the existence of "extraordinary circumstances" sufficient to avoid application of the strict standards articulated in *Sampson*.  According to appellee, the INS' action caused him irreparable harm by, *inter alia*, degrading and humiliating him in the eyes of his peers, family, and community, thereby damaging his reputation and self-esteem, by causing his family to suffer undue hardship, and by preventing him from providing adequately for his family.  Such unfortunate effects either alone or in combination do not constitute irreparable harm sufficient to justify injunctive relief.  Concerning injury to Stewart's reputation, the *Sampson* Court stated that damage to reputation "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction."  *Sampson*, 415 U.S. at 91-92. With regard to the hardship imposed on Stewart's family and his inability to financially provide for them, while we concede the harm resulting to individuals in this situation, it is exactly this type of harm which the Supreme Court in *Sampson* stated would be insufficient to demonstrate the irreparable harm required for injunctive relief.

> Finally, the district court herein alluded to the possibility that denying Stewart relief might produce irreparable harm by chilling future actions by other employees alleging discrimination.  We

> acknowledge that both *Sheehan*[3] and *Holt* do recognize the potential chilling effect as an example of an extraordinary circumstance which might constitute irreparable harm.  In *Holt*, however, this Court expressly rejected the notion that a chilling effect sufficient to warrant a finding of irreparable harm presumptively exists in every employee discharge case alleging discrimination.  Rather, the *Holt* court remanded the case to the district court for an explicit determination as to whether in the particular circumstances therein, the risk of irreparable harm existed as the result of a potential chilling effect.

762 F.2d 199-200 (some citations and internal quotation marks omitted).

More recently, in *Hyde v. KLS Professional Advisors Group, LLC*, No. 12-1484-cv, 500 Fed.Appx. 24 (2d Cir. Oct. 12, 2012), the Second Circuit reversed a district court's preliminary injunction enjoining defendant from enforcing a restrictive covenant against a former senior employee.  The court of appeals cited and quoted *Sampson*, 500 Fed.Appx at 25, and added :

> In *Savage v. Gorski*, 850 F.2d 64 (2d Cir. 1988), our Court relied in part on *Sampson* when we vacated a preliminary injunction prohibiting a county executive from terminating several government employees.  Observing that "[l]oss of employment does not in and of itself constitute irreparable injury," 415 U.S. at 67, we concluded that "reinstatement and money damages could make appellees whole for any loss suffered." *id.* at 68.  *Sampson* and *Savage* thus apply, in the employment context, the long-established principle that financial loss is not "irreparable" for determining whether a preliminary injunction is warranted.

*Id*.  We see in this language a reiteration of the principle that "reinstatement *and* money damages" are both forms of a trial court's available remedies, so that the underlying injuries cannot be regarded as irreparable.

These Supreme Court and Second Circuit decisions, binding upon this Court, show that there is no substance to the effort of Professor Bagley's counsel to exclude her possible reinstatement to

---

[3]  *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981).

the Yale faculty after trial from a list of *remediable* as opposed to *irreparable* harms, of the sort necessary to warrant a preliminary injunction.

It is equally clear from the cited cases that damage to a plaintiff's reputation in his or her chosen field does not constitute irreparable harm, in the sense that it cannot be compensated by money damages at trial. There is nothing surprising about that: for centuries, the common law of defamation has afforded plaintiffs damages for loss of reputation. *See, e.g., Mattox v. News Syndicate Co., Inc.*, 176 F.2d 897, 901 (2d Cir. 1949) ("So far as we know, it is universally agreed that the damages recoverable in libel are the plaintiff's loss of reputation in the minds of those who know him, together with his mental suffering as a result of the libel.") (L. Hand, Ct. J.). The same principle applies in cases of academic contracts and tenure; *see Stolberg v. Members of the Board of Trustees for the State Colleges of the State of Connecticut*, 474 F.2d 485, 488 (2d Cir. 1973) ("any resulting injury to reputation would have been compensable, if proved, and fully remediable as a consequence of the non-renewal of his teaching contract in retaliation for his lawful exercise of his First Amendment rights.") (Mansfield, Ct. J.).

Professor Bagley emphasizes the stress and anxiety that a change in residential location would cause her adopted son, now 16 years of age. She described a history consistent with that concern. I accept her testimony, but this factor cannot be included in a showing of irreparable harm. The Second Circuit said in *Stewart* that "causing [the plaintiff's] family to suffer undue hardship," while one of enumerated "unfortunate effects" of a terminated employment, "either alone or in combination do not constitute irreparable injury sufficient to justify injunctive relief." 762 F.2d at

200.[4]

Professor Bagley claims that the loss of her position as a member of the Yale SOM faculty will diminish her status in the academic world and reduce her ability to submit books, articles, or other writings for publication and, presumably, profit. One would suppose that even if her action against Yale fails, she could accurately describe herself in any future publication of her work as *formerly* on the faculties of Stanford, Harvard and Yale, a seemingly impressive resume. But I will accept the theory that loss of her faculty position at the Yale SOM may have a negative effect upon Professor Bagley's publication prospects. The problem with this factor as an ingredient of irreparable harm is that the Second Circuit said in *Kamerling* that irreparable harm "must be shown to be actual and imminent, not remote or speculative." 295 F.3d at 214. The evidence at the hearing precludes those findings. Bagley has authored two successful books in her specialty, both used in numerous universities, each passing through a series of supplemental editions, one just completed (while Bagley still had her Yale position) and the other not scheduled until three years hence. No articles or other works are ready for submission. Accordingly, the actuality and imminence of this form of harm either has not been shown or cannot be.

At the hearing, counsel for Professor Bagley laid particular emphasis upon an asserted chilling effect upon other Yale employees that the University's treatment of Bagley might have. In

---

[4] Quite apart from this, the evidence in support of the asserted hardship for Professor Bagley's son is not strong. She apparently has no plans to leave her Woodbridge home, whatever the outcome of this case, and has the financial resources to stay on there until her son graduates from high school – at least, there is no evidence to the contrary. The son was enrolled in a different high school last year and, now a sophomore, would seem to be doing well. He is not presently under therapy or other professional treatment, is not medicated, and has not had therapy in the past, with the sole exception of a psychological evaluation attendant upon the School Board's decision to let the son repeat the 9th grade upon changing schools. For the reasons stated in text, this sort of family hardship would not constitute irreparable harm, even if the proof were stronger.

*Stewart* the Second Circuit recognized "chilling future actions by other employees alleging discrimination" as "an example of an extraordinary circumstance which might constitute irreparable harm."  762 F.2d at 200.  This theory, to be worthy of consideration as a basis for a preliminary injunction, must be backed up by evidence sufficient to allow the district court to make "an explicit determination as to whether in the particular circumstances therein, the risk of irreparable harm existed as the result of a potential chilling effect."  *Id.*

In the case at bar, the proof on the point is thin.  It consists entirely of this exchange, during Professor Bagley's direct examination by her counsel:

> Q.  Over the course of the last couple of years while you were at Yale and challenging the decision not to renew your contract as a professor in the practice, do you have occasion to meet anyone who expressed to you an unwillingness to come forward and talk about discrimination in the workplace at Yale?
>
> A.  Yes.
>
> Q. On how many occasions did that happen?
>
> A. I can think of at least two by name.  But I – I know there were others, but I can only remember two by name.

December 8 Transcript at 159.

Counsel for Bagley did not elicit any further details.  Counsel for Yale, whose objection to the quoted testimony had been overruled, did not cross-examine on the subject.  At summation, counsel for Yale argued that this evidence was insufficient to prove anything, in the absence of the names of the reluctant individuals, whether they were on the SOM faculty, indeed if they were employees of Yale at all, and so forth.  Counsel for Bagley, while vigorously defending the adequacy of the quoted evidence, responded that such further details were not furnished out of concern for the

individuals in question, but asked the Court, if the Court was influenced by Yale's argument, to reopen the record so that additional details could be elicited, while at the same time protecting to the extent possible the individuals' situations.

It is not the customary practice for counsel to offer proof on a particular point, rest the party's entire case at the conclusion of the hearing, hear opposing counsel in summation challenge the adequacy of the proof on that point, and ask the Court to reopen the hearing to receive some more proof on the point. But I need not reflect further on that request in this case, because it is clear that in any event the asserted chilling effect does not demonstrate the sort of irreparable harm that would warrant the Court granting the preliminary injunction for which Professor Bagley prays.

In *Piercy v. Federal Reserve Bank of New York*, No. 02 Civ. 5005, 2003 WL 115230 (S.D.N.Y. Jan. 13, 2003), District Judge Chin (as he then was) denied a preliminary injunction to former Bank law enforcement officers who claimed they had been discharged in retaliation for conduct protected by the First Amendment. They sought reinstatement, and a preliminary injunction reinstating them to their positions at the Bank during the pendency of the action. In aid of their injunction motion, plaintiffs contended that irreparable harm resulted *inter alia* from "the chilling of the First Amendment rights of other FRBNY law enforcement officers." 2003 WL 115230, at *4. After holding a hearing, Judge Chin first concluded that the asserted chilling effect had not be adequately proved, and then went on to hold that:

> even assuming plaintiffs have provided sufficient proof of a chilling effect on other employees, the argument suffers from the same deficiency as plaintiffs' claim of a chilling effect on their own First Amendment rights. A temporary order of reinstatement will not vitiate the alleged chilling effect, as the discharges will continue to be the subject of litigation and permanent discharge remains a distinct possibility.

17

*Id.* at \*5.

Judge Chin's quoted conclusion is consistent with, and obedient to, a line of Second Circuit decisions which hold that to show irreparable injury sufficient to warrant a preliminary injunction in an employment retaliation case, a plaintiff "must show some evidence of actual chill *that would be cured by the requested injunction.*"  *Bennett v. Lucier*, No. 07-1568-cv, 239 Fed. Appx. 639, 640 (2d Cir. July 5, 2007) (emphasis added).  In *American Postal Workers Union v. United States Postal Service*, 766 F.2d 715, 722 (2d Cir. 1985), the Second Circuit said that:

> we fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

In *Bennett*, the Second Circuit cited and quoted *American Postal Workers* for this point.  The principle is one of general application.  While *American Postal Workers* involved government employees, the plaintiff in *Bennett* had been dismissed from his position as an athletic coach of a school.

These Second Circuit cases, and Judge Chin's holding in *Piercy,* apply to the case at bar because, in the judgment of these courts, the truly chilling effect of an employee's termination, sufficient to demonstrate irreparable harm to other employees, stems not from an interim discharge – interim because the employee challenges it in litigation – but from the threat that the discharge will become permanent if the employee loses his or her case at trial.  *That* threat, the Second Circuit reasoned in *American Postal Workers*, "is not vitiated by an interim injunction," and so an interim injunction was not granted.  The Second Circuit regards this proposition as one of logic: chilling of others, the court of appeals says, "could not logically be thawed by the entry of an interim

injunction." Counsel may quarrel with the Second Circuit's logic, but it is sufficient for decision on the point that the Second Circuit has expressed it.

## III.   CONCLUSION

The proceedings in this Court attendant upon Professor Bagley's motion for a preliminary injunction reveal the strengths and the limitations of the rule of law as it works out in the case at bar.

One can surely accept the sincerity and disappointment of Constance Bagley, who came from Massachusetts to Connecticut, from Harvard to Yale, in the belief  – or at the very least, the hope – that her future lay as a professor and respected member of the faculty of the Yale University School of Management.  She charges that she has been dishonorably discriminated against at the highest levels of the School and the University.

One can surely accept the sincerity and, perhaps, outrage with which those SOM deans and faculty members charged with discrimination reject the charge.  They say that Professor Bagley was denied reappointment to the SOM faculty as the result of proper procedures, untainted by illegality or dishonor.

The rule of law is that saving institution which preserves us all from settling disputes through trial by combat of mindless lottery.  The rule of law tells us that both sides cannot win.  If the case is not otherwise disposed of, it will be tried before a jury.  Professor Bagley will prove her charges or she will not.  The trial court will dispense remedies or deny them, in accordance with the verdict.

On a plaintiff's motion for an injunction *preliminary* to trial, the plaintiff must show that if the injunction is not granted, she will suffer *irreparable* damage that cannot be repaired by the trial court, even if she wins at trial.  The rule of law requires that because interim relief is an extraordinary remedy, there must first be a  showing of irreparable harm before the District Court, sitting as a court

of equity, turns to a consideration of prospects of success on the merits of the claims, and decides whether or not to issue a preliminary injunction.

For the reasons stated in this Opinion, the Court concludes that Professor Bagley has not made a sufficient showing of irreparable harm in this case.

In consequence, the Court issued its Ruling in Summary Form [Doc. 100] which denied the Plaintiff's motion for a preliminary injunction.

Dated:   New Haven, Connecticut
              December 22, 2014


       */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge