UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE BAGLEY | : | |
| | : | |
|     Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:13 CV 1890 (CSH) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, DOUGLAS RAE, | : | |
| EDWARD SNYDER and ANDREW | : | |
| METRICK, Individually | : | FEBRUARY 19, 2015 |
| | : | |
|     Defendants | : | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER</u>**

      The defendants, Yale University ("Yale"), Douglas Rae, Edward Snyder and Andrew Metrick, hereby submit this memorandum of law in support of their motion for protective order. The plaintiff has insisted on a search of the electronically stored information ("ESI") of twenty-four custodians, utilizing twenty-four search terms. In compliance with the plaintiff's request, the defendants have mirrored the hard drives of the identified custodians and applied the search terms to that data. Defendants have also reviewed the search results of eight of the custodians for privilege and responsiveness. The review performed so far has revealed that the vast majority of the documents extracted through the keyword search of the identified custodians are entirely irrelevant to this lawsuit. As such, the minimal benefit to be obtained from any marginally relevant information gathered through the defendants' laborious search of ESI is greatly outweighed by the burden and expense of conducting this search. This Court

should therefore enter a protective order relieving the defendants of the obligation to continue this ESI review.

## I. FACTUAL BACKGROUND

The present action arises from the plaintiff's employment relationship with Yale. The plaintiff alleges that she accepted an employment contract with the Yale School of Management ("SOM") in 2008 as a Professor in the Practice. (See December 20, 2013 Complaint, ¶¶ 30 and 32.) The plaintiff's employment contract was for a five-year term with an opportunity for re-appointment. (See Complaint, ¶ 32.) Despite the clear language of the letter appointing her to a five year term after which she could apply for renewal, the plaintiff claims she accepted Yale's offer of employment only because she had been promised by former Dean Podolny that her reappointment was a certainty. (See Complaint, ¶¶ 38 and 40.) Dean Podolny testified that there was no such guarantee during an evidentiary hearing on the plaintiff's Motion for Preliminary Injunction. On October 21, 2013, the plaintiff was informed that her appointment as Professor in the Practice in the Yale School of Management would not be renewed. (See Complaint, ¶ 37.) The plaintiff now claims, *inter alia*, that the decision to not renew her appointment constituted a breach of contract and was improperly motivated by her age and gender. The vote taken by the senior faculty was sixteen to two against reappointment, with two members abstaining. All female members voted in the negative.

## II. PROCEDURAL HISTORY

Plaintiff insisted on a search of the ESI of twenty-four Yale custodians, which included the individual defendants[1], covering the period from January 1, 2007 to the present, using the following search terms:

> "State and Society;" Bagley, Constance; Connie; CB; Bracken AND Committee or Bracken AND Cmte or Bracken AND Report; Harte AND Committee or Harte AND Cmte or Harte AND Report; Blackball (with extensions); Nierenberg /2 Chair (with extensions); Aguilera; "Professor in the Practice;" PIP; Alstott; Ayers; Blanchette; Margaret Clark; Meltdown; bitch; Baglady; and Bag w/2 lady.

Owing to the number of custodians, the search terms used, the very general nature of many of these terms, and the fact that many of the terms are not specific to this case, this search, as Defendants expected, produced an enormous amount of data. The initial search of the computers of the individual defendants, as well as four additional custodians (Senior Associate Dean David Bach, Deputy Provost Stephanie Spangler, Professor Michael Della Rocca, and Deputy Dean Stanley Garstka) produced 20.8 gigabytes of data divided into 37,991 separate files. As a frame of reference, one gigabyte is the equivalent of over 100,000 pages of emails. Thus, the initial search alone produced the equivalent of more than 2,000,000 pages of material. The search of all twenty-four custodians has produced approximately 44.71 gigabytes of information, divided into nearly 70,000 separate files. This is the equivalent of almost 4.5 million pages of email text.

---

[1] In addition to the individual defendants, the custodians are: Michael Della Rocca, Stanley Garstka, Stephanie Spangler, Ian Shapiro, David Bach, Edieal Pinker, Judith Chevalier, Frank Zhang, Paul Bracken, Ian Ayres, Geert Rouwenhorst, Richard Levin, Peter Salovey, Frances Rosenbluth, Verity Harte, Anne Alstott, William Sledge, Benjamin Polak, John Wargo, Margaret Clarke and James Baron.

The defendant made its first production on July 30, 2014. (A copy of the cover letter sent with this production is attached hereto as Exhibit A.) This production consisted of responsive ESI from the computers of the individual defendants: Dean Snyder, Dean Metrick and Professor Rae. This production required paralegals and lawyers to review approximately 13,393 files, totaling 4.5 gigabytes, or the equivalent of about 450,000 pages of emails. Only 6% of this data was responsive to Plaintiff's discovery request: about 300 megabytes, or about 29,300 pages of emails. In excess of 95% of this information, while responsive to the ESI request, has absolutely nothing to do with any of the issues in this case. Thus, defendants' lawyers and paralegals reviewed approximately 450,000 pages of material in order to produce less than 1,500 pages of information which have any relationship whatsoever to this dispute; and the majority of the 1,500 pages are only marginally relevant.

Following this production, the defendant reviewed and produced to plaintiff responsive documents from its review of the ESI of custodians Professor Michael Della Rocca, former President of Yale University Richard Levin, Senior Associate Dean David Bach, Professor Geert Rouwenhorst, and President Peter Salovey. This required the review of approximately another 11,000 files, totaling 7.38 gigabytes of information, or the equivalent of about 738,000 pages of emails. Again, the end result of this review was that only a small percentage of data was responsive to the plaintiff's discovery requests: about 696 megabytes. As with the other searches, most of this information is not relevant to the present dispute.

In other words, of the 11.88 gigabytes of information (which is the equivalent of more than 1 million pages of email files) that has so far been reviewed by the defendant, only about 8%

of that information has been responsive and non-privileged. Furthermore, only a small percentage of those documents that are responsive and non-privileged actually have any relevance to the issues in this lawsuit.

The search of David Bach's ESI is illustrative of the enormous burden placed on defendant for no apparent purpose because of plaintiff's insistence on adhering to a discovery process which is unreasonably burdensome and is providing no benefit to either side. David Bach is a Senior Associate Dean for Executive MBA and Global Programs, and Senior Lecturer, at SOM. Dean Bach clearly has no information relevant to the non-renewal of Plaintiff's contract; he was not even hired until after the decision had been made in May 2012 that her contract would not be renewed. Plaintiff claims that Dean Bach was hired to replace her. This claim arises from the fact that Dean Bach, in addition to his administrative duties, is teaching the course State & Society in SOM's Executive MBA program. The claim that Dean Bach replaced Plaintiff is specious; Plaintiff never taught that course in the Executive MBA program. She taught the State & Society course as part of the main degree program, but never as part of the Executive MBA program. The key word search of Dean Bach's ESI produced nearly 3,500 files. These files comprised a total of 4.34 gigabytes of data, the equivalent of approximately 435,000 email pages. Only 0.35 gigabytes of this data—about 35,000 pages of emails—were responsive, and these were produced. However, only a handful of the documents produced are even arguably relevant to this matter. Despite the paucity of information that was relevant, the search of Dean Bach's ESI consumed an enormous amount of time on the part of Yale's IT personnel, paralegals, inside counsel and outside counsel.

Defendants' counsel submits that a more focused discovery process would have produced all of the relevant documents in a small fraction of the time that has now been expended. For example, in responding to the plaintiff's standard production requests and initial discovery protocols, the defendants have produced over 5,000 pages of paper documents collected from the identified custodians.

Yet to be reviewed are the files of 16 additional custodians identified by the plaintiff, totaling more than 43,000 separate files. Assuming that defense counsel is able review about 60 documents per hour, it will take 716 hours to complete this review, at a cost to defendant of about $179,000. This cost estimate does not include the costs associated with Yale's in-house lawyers and paralegals, nor does it include the cost of the third-party vendor, Ricoh, retained by Yale to host the data and produce responsive documents in the format requested by plaintiff's counsel. As discussed in greater detail below, the review of these remaining documents will amount to nothing more than a waste of time and money. This Court should therefore enter a protective order relieving the defendant from performing the requested ESI review.

## II.   LAW AND ARGUMENT

The Federal Rules of Civil Procedure define the scope of discovery as follows: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1). *See also In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not

presently appear germane on the theory that it might conceivably become so.") (citation omitted; internal quotation marks omitted); *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978) (holding that "discovery, like all matters of procedure, has ultimate and necessary boundaries") (citations omitted).

With regard to ESI, the Federal Rules limit discovery pursuant to the "rule of proportionality," which permits the Court to limit the extent of discovery if the burden and expense of the proposed discovery outweighs its likely benefits. *See* Fed. R. Civ. P. 26(b)(2)(B) and Fed. R. Civ. P. 26(b)(2)(C). This serves to "protect a party against having to produce voluminous documents of questionable relevance." *Woods v. Capital One Servs., LLC*, 2011 U.S. Dist. LEXIS 61962, at *10 (N.D.N.Y Apr. 15, 2011) (denying plaintiff's motion to compel, and allowing plaintiff to re-file only were he willing to underwrite the expense associated with the request). *See also I-Med Pharma, Inc. v. BioMatrix,* 2011 U.S. Dist. LEXIS 141614, at *5 (D.N.J. Dec. 9, 2011) (applying the Rule 26(b) proportionality analysis in affirming magistrate judge's ruling that party did not have to review large volume of documents retrieved by a poorly-crafted set of search terms).

Under Fed. R. Civ. P. 26(b)(2)(B)[2], the Court must first assess whether the requested ESI production constitutes an undue burden. After an undue burden has been demonstrated, the requesting party -- in this case, the plaintiff -- bears the burden of establishing "good

---

[2] Fed. R. Civ. P. 26(b)(2)(B) provides: "Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the

cause" to permit the discovery.  For the "good cause" determination, the Court is to consider whether the discovery request's "burden or expense … outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed.R.Civ.P. 26(b)(2)(C)(i)(ii) and (iii).  In other words, "good cause" can be established where, as here, the requesting party's demands are overreaching and unwarranted.  *See Defreitas v. Tillinghaust*, 2013 U.S. Dist. Lexis 7429, at *3 (W.D. Wash. Jan. 17, 2013) (finding that where the relevance of the requested information is low, "[a]voiding the harm that comes with such a burden constitutes good cause for a protective order.")

The district courts are afforded broad discretion under Rule 26(c) to issue protective orders limiting the scope of discovery.  *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court...").  The court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had."  Fed. R. Civ. P. 26(c)(1).  *See also Gardner v. Univ. of Conn. Health Ctr.*, 2013 U.S. Dist. LEXIS 163784, *3-5 (D. Conn. Nov. 18, 2013).  Judge Smith has observed: "Because the liberality of pretrial discovery has the potential to impinge on the privacy of a party, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party."  *LaPlante v. Estano*, 228 F.R.D.

---

requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify

8

115, 116 (D. Conn. 2005), *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S. Ct. 2199, 81 L.Ed. 2d 17 (1984). "[P]rotective orders issued under Rule 26(c) serve the vital function … of securing the just, speedy, and inexpensive determination of civil disputes …" (Internal quotation marks omitted.) *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001). *See also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983) (a protective order is a safeguard against "injury, harassment, or abuse of the court's processes.")

Applying the "rule of proportionality" to the present case clearly demonstrates that the defendant should be relieved from conducting any additional search of ESI. There is no question that the plaintiff's requested ESI production has placed, and will continue to place, an undue burden on the defendant. In addition to individuals in Yale's Information Technology Services Department, a total of seven people have assisted in the effort to comply with the plaintiff's ESI request: two attorneys and a paralegal from Yale's Office of General Counsel, and three attorneys and a paralegal from the undersigned counsel's office.[3] These individuals have spent an inordinate amount of time mirroring the hard drives of the custodians; performing additional processing of the collected data, including applying the keyword search terms; and reviewing the results of those searches for responsive, non-privileged documents. So far, defendants have reviewed more than 20,000 separate files, totaling more than 10 gigabytes of information.

---

conditions for the discovery."
[3] As noted above, Yale has also retained the services of an outside vendor, Ricoh, to assist with the review and production of ESI.

As the defendants have demonstrated that the ESI production sought constitutes an undue burden, the burden shifts to the plaintiff to establish good cause to require the defendants to continue the ESI search and production. The plaintiff cannot satisfy this burden as any limited benefit to be gained by the plaintiff through the continuation of the ESI search is easily outweighed by the significant burden imposed on the defendants. As the search thus far completed demonstrates, the plaintiff's search terms are not formulated properly to return responsive and relevant documents. Lawyers should not be "designing keyword searches in the dark, by the seat of their pants…" *William A. Gross Constr. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D.N.Y. 2009). However, that is exactly what has occurred in this case. The search terms on which the plaintiff has insisted "cast far too wide a net over the universe of ESI," and have resulted in "a burdensome amount of irrelevant documents." *Hannah v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 2971, *16-17 (D. Conn. Jan. 10, 2014) (Fitzsimmons, J.)

In evaluating the reasonableness of a search of ESI, courts should consider, *inter alia*, "whether the search terms contain proper names, uncommon abbreviations, or other terms unlikely to occur in irrelevant documents," and "whether operators such as 'and', 'not', or 'near' are used to restrict the universe of possible results…" *I-Med Pharma, Inc., supra,* 2011 U.S. Dist. LEXIS 141614, at *18. The plaintiff's search terms do not conform with these considerations. Instead, many of the plaintiff's terms are highly likely to occur in irrelevant documents (and as the search completed by the defendants so far demonstrates, these terms have, in fact, produced an excessive number of irrelevant documents). For example, one of the

search terms on which the plaintiff insisted is "State and Society," the title of a course the plaintiff taught. Since this is a "core" course, it must be taken by every SOM student. It is therefore a very common term used in communications among professors and in communications between professors and students, the vast majority of which have nothing to do with this lawsuit. The search term "Professor in the Practice" is also a very commonly used term by the Yale SOM community. Some professors who hold the rank of Professor in the Practice use this term in the signature block of their emails (as does the plaintiff). Certainly, not every email authored by a Professor in the Practice is relevant to this matter. As another example, the plaintiff has insisted on the inclusion of the search term "meltdown." Considering that the financial meltdown of 2008 is a hot topic among business school professors, it is no surprise that this search term, without any other limitation, has resulted in many irrelevant and unresponsive documents.

There is no reason to believe that continuing the ESI search will produce a greater yield of responsive documents. As the defendants have already reviewed the documents of the individual defendants, it is likely that a search of the remaining custodians' ESI will produce a lower yield of responsive -- and relevant -- documents. The remaining custodians had, at best, a limited role in the plaintiff's termination. If these individuals are in possession of any relevant documents, utilizing standard discovery requests is a much more efficient way to gather them than reviewing the results of the keyword search of their computers. Indeed, all of the custodians have been queried for non-electronic documents responsive to the plaintiff's

July 8, 2014 Requests for Production and the initial discovery protocols. Those documents, totaling 5,678 pages, were produced to plaintiff on November 13, 2014.

As noted above, only about 8% of the 11.88 gigabytes of information gathered through the use of the plaintiff's search terms and reviewed so far has been responsive. However, as low as this figure is, it nonetheless does not accurately represent just how fruitless the defendants ESI search has been. In excess of 95% of the ESI documents produced are of no significance to the present action.

As the ESI search is producing primarily documents that are either irrelevant or of exceedingly low relevance, there is no justification for requiring the defendants to continue to expend exorbitant amounts of time and money associated with this search. The plaintiff cannot demonstrate the "good cause" necessary to overcome the present motion for protective order. In addition, requiring the defendant to spend nearly $180,000 to unearth a handful of relevant documents (documents which may well be -- or already have been -- obtained through more focused and efficient discovery methods) does not comport with Fed. R. Civ. P. 1, which requires that the Federal Rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

As the plaintiff's ESI production requests place an undue burden on the defendants, and that burden is not outweighed by any benefit the plaintiff is likely to obtain from such requests, the present Motion for Protective Order should be granted, thereby relieving the defendants of the obligation to continue its ESI search.

### III.     CONCLUSION

The plaintiff's ESI production requests are not simply an unfocused fishing expedition. Rather, "instead of using rod and reel, or even a reasonably sized net, [the plaintiff] would drain the pond and collect the fish from the bottom.  This exercise goes beyond the bounds set by the discovery rules." *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 42, 1977 U.S. Dist. LEXIS 12338, *6 (N.D. Cal. 1977).   The defendant's motion for protective order should be granted.

>                             THE DEFENDANTS
>                             YALE UNIVERSITY, DOUGLAS RAE,
>                             EDWARD SNYDER and ANDREW
>                             METRICK, Individually
>
>
>                         BY:      /s/ Patrick M. Noonan  (#ct00189)
>                             Patrick M. Noonan
>                             Donahue, Durham & Noonan, P.C.
>                             741 Boston Post Road
>                             Guilford, CT 06437
>                             (203) 458-9168

**CERTIFICATION**

      I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                        _____/s/_____
                                                  Patrick M. Noonan