UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE E. BAGLEY,<br><br>      Plaintiff<br><br>v.<br><br>YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER, AND ANDREW METRICK, Individually.<br><br>      Defendants. | Civil Action No.<br>3:13-cv-01890 (CSH)<br><br>LEAVE TO FILE GRANTED<br><u>MARCH 18, 2015</u> |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO LIMIT DEPOSITION OF PETER SALOVEY**

Plaintiff, Professor Constance E. Bagley, hereby briefly replies to the assertion made in the Defendants' Reply Memorandum in Support of Motion for Protective Order Re: Deposition of President Salovey (<u>see</u> Dkt. #125) that President Salovey should be treated differently from any other percipient witness.

Discovery to date has illuminated the scope of President Salovey's involvement in Professor Bagley's circumstances that belie the Defendants' representations that he does not possess information which could not be obtained from lower level employees or that his knowledge and participation was "very limited". Plaintiff suspects that Defendants' attempts to limit this deposition to less than the permissible seven (7) hours has more to do with Defendants' strategic attempts to force the Plaintiff to identify in advance the subject matters of the inquiry and less to do with protecting President Salovey from some inconvenience in his busy schedule. Nonetheless, Salovey's participation in events pertaining to Professor Bagley was very broad and spanned a considerable period of time. The following are illustrative of Salovey's participation:

1

In or around October 2008, Salovey became Provost of Yale University. As detailed in the Yale Faculty Handbook, the Provost is responsible for a range of faculty related issues, and in particular communicating directly with the Deans of the various schools, including without limitation Defendants Deans Snyder and Metrick. In November 2009, Salovey signed a letter to Professor Bagley acknowledging that he had read the *Report of the Yale University Women Faculty Forum Council for Sexual Misconduct at Yale*. There may be communications between and among a number of senior faculty and Deans relevant to Salovey's assessment of that work. In 2011, Salovey announced the creation of the University-Wide Committee on Sexual Misconduct. Professor Bagley was appointed to the Committee and became the principal architect of the protocols. There are predicate communications involving Salovey's decisions relating to this exercise. Plaintiff is entitled to explore this topic, as well as related avenues, directly with this decision-maker.

Beginning in April 2012, *before* the Board of Permanent Officers ("BPO") discussed and voted on Professor Bagley's reappointment, then-Provost Salovey had communications with former Deputy Provost Frances Rosenbluth, as well as other high ranking faculty and Deans, regarding Professor Bagley. Plaintiff is entitled to explore with Salovey what he knew, when he knew it, what he did and did not do, and with whom he communicated and did not communicate, both generally regarding Professor Bagley, and specifically regarding her reappointment.

Following the initial negative vote on Professor Bagley's reappointment in May 2012, Salovey continued to communicate at the highest levels within the University as well as within SOM regarding the Plaintiff. The Plaintiff is entitled to explore those communications, as well as when and how decisions were made regarding the Plaintiff, the process of reassessment, and Salovey's direct or indirect involvement in how the process was defined and carried out. During

the same time frame, Salovey was also engaged in communications with other senior faculty and Deans regarding Professor Bagley's participation on the University-Wide Committee on Sexual Misconduct, her reappointment, the assessment of her service to the University, and ongoing efforts to reconsider her appointment.  Plaintiff is entitled to explore with Salovey a range of topics about which he no doubt had personal knowledge and regarding information he obtained through others.

In June 2012, Professor Bagley sent Salovey a 16-page letter, including several attachments, detailing her complaints of discrimination (including gender discrimination and sex stereotyping), her contract and representations made to her at the time of hiring, her challenges with Professor Doug Rae, and the flawed process she experienced that (at best) failed to comply with the Yale University Faculty Handbook and the terms of her contract.  As Provost, and as recipient of Professor Bagley's communication, Salovey has personal knowledge regarding Yale's decision-making and response, including his own directives that followed receipt of Bagley's letter.  Plaintiff is entitled to explore with Salovey his directives, his communications, and decisions in response to Professor Bagley's comprehensive and detailed correspondence.

Further, in July 2012, Salovey appointed the "Harte Committee" allegedly to review the concerns raised by Professor Bagley and make recommendations.  This Committee includes individuals from various schools in the University.  Plaintiff is entitled to query Salovey on the composition of the Committee, their charge, their fact finding and recommendations, and well as his communications with other high level faculty and Deans as this review was underway and when it was concluded.  In November 2012, Salovey received the first version of the Harte Committee Report, which was, at minimum, sent to the Plaintiff, Dean Metrick and Dean Snyder.  Plaintiff is entitled to explore with Salovey his communications relating to the

Committee's work and decisions regarding Professor Bagley. In March 2013, Salovey received a letter from the SOM Student Government President containing incredibly positive reports from dozens of students in the full-time and executive MBA programs in support of Professor Bagley. Plaintiff is entitled to explore what, if anything, Salovey communicated to others regarding the substance and narrative of that unsolicited endorsement of Professor Bagley.

In April 2013, Salovey communicated to Professor Bagley his determination that she had not faced discrimination, but that he decided to appoint yet another Committee to engage in a review of Bagley's appointment "process". Surely the Plaintiff is entitled to explore this topic and its related implications as Salovey, still Provost, was communicating with senior level faculty, Deans, and others regarding Professor Bagley's fate at Yale.

In July 2013, former-Provost Salovey took office as President of Yale. Current discovery has disclosed that Salovey's involvement in Professor Bagley's future at Yale did not come to a close. Around this point in time, the Pinker Committee (yet another Committee approved by and likely populated by Salovey) was considering Professor Bagley's reappointment and the second vote of the Board of Permanent Officers had yet to occur. Salovey not only initiated the review, but likely remained closely involved with the "handling" of Professor Bagley, communicating with senior faculty throughout the University and the Deans of SOM, with the consideration of the committee's recommendations, and with the ultimate decision to terminate her on December 31, 2014.[1] Plaintiff wishes to explore a wide range of highly relevant areas with Salovey, both in his role as Provost and as President, all relating to her allegations and the circumstances

---

[1] The Plaintiff notes that she has requested, but has not yet received, a privilege log for communications involving President Salovey. As the email production from President Salovey's account appear to end partway through 2013, when a second SOM Committee (the Pinker Committee) was considering Professor Bagley's reappointment and the second vote of the Board of Permanent Officers had yet to occur, the Plaintiff finds this gap in production curious and Plaintiff continues to pester Yale for full production of documents such as these.

surrounding her termination. Beyond the written documents and e-mails produced to date, Salovey also undoubtedly had communications with senior faculty, SOM Deans, and others that may not have been reduced to writing, and Plaintiff is entitled to explore the content of those verbal communications at his deposition.

As this timeline suggests, Professor Doug Rae (who Yale notes was deposed for only 3.75 hours) likely played a smaller role in the underlying events at issue in this litigation than President Salovey did as Provost and President.[2] Regardless—and contrary to Yale's belief—embedded in Federal Rule of Civil Procedure 30(d)(1) is not a "VIP" exception. Professor Bagley is entitled to explore President Salovey's actions (or lack thereof) over relevant periods of time. Respecting his busy schedule, Plaintiff has agreed to have President Salovey pick the date among many already determined to be available to both Plaintiff's counsel and Defendants' counsel. Defendants have shown no good faith basis to preclude the Plaintiff from exercising her full rights to explore with this key witness topics relevant to her claims.

WHEREFORE, Professor Bagley respectfully requests that this Court deny Defendants' Motion, and require that President Salovey appear for deposition on a mutually convenient date and time, for up to seven (7) hours, and given the prejudice of further delay to the Plaintiff, to order that the deposition take place on a date before Yale University begins its summer sessions and holidays.

---

[2] The relatively short deposition of Professor Rae is further evidence of Plaintiff's good faith efforts to be careful, precise, and efficient with deposition time.

                                          Respectfully Submitted,
                                          Constance E. Bagley
                                          BY HER ATTORNEYS,

                                          /s/ Laura R. Studen
                                          Laura R. Studen, Esq. (phv06466)
                                          lstuden@burnslev.com
                                          Emily J. Nelson, Esq. (phv06483)
                                          enelson@burnslev.com
                                          Burns & Levinson LLP
                                          125 Summer Street
                                          Boston, MA 02110
                                          617-345-3000
                                          *Counsel for Plaintiff*

Dated: March 18, 2015

## CERTIFICATE OF SERVICE

     I hereby certify that, on this 18th day of March, 2015, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                          /s/ Emily J. Nelson
                                          Emily J. Nelson

4826-2292-8162.2