UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE E. BAGLEY, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 3:13 - CV- 1890 (CSH) |
| | ) | |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER, and ANDREW METRICK, Individually, | ) ) ) | APRIL 15, 2015 |
| | ) | |
| Defendants. | ) | |

## RULING ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER [DOC. 109]

**HAIGHT, Senior District Judge:**

Plaintiff Constance E. Bagley has filed this action against Yale University ("the University") and three members of the faculty of the Yale School of Management ("SOM"). Bagley's principal claim is that she was wrongfully terminated from her employment as a professor on the SOM faculty. The facts and circumstances of the case are stated fully in the Court's decisions denying defendants' motion to dismiss the complaint, 42 F.Supp.3d 332 (D.Conn. 2014), and denying plaintiff's motion for a preliminary injunction, 2014 WL 7370021 (D.Conn. Dec. 29, 2014), familiarity with which is assumed. The pre-trial discovery process, now going forward, has generated a number of disputes. This Ruling resolves one of them.

Counsel for Bagley noticed the pre-trial deposition of Professor Peter Salovey. Salovey is presently the President of the University. During certain earlier events relevant to this action, Salovey was the University's Provost. Counsel for Bagley stated her intention of deposing Salovey,

1

possibly for the full seven hours allowed by the Federal Rules of Civil Procedure during the day of the deposition, or for such shorter time as the evolving circumstances might allow. The University responded by filing a motion for a protective order [Doc. 109] limiting Salovey's deposition to two hours. Bagley opposes that motion and insists upon an allowance of seven hours. A full round of briefs, vigorously worded, have been exchanged.

The issue is governed by Federal Rule of Civil Procedure 30(d)(1), which provides in its entirety:

> Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

The Advisory Committee's Notes to the 2000 Amendments tell us that the rule "imposes a presumptive durational limitation of one day of seven hours for any deposition" because "the Committee has been informed that overlong depositions can result in undue costs and delays in some circumstances" – information that would come as no surprise to most trial lawyers. For the sake of clarification, the Committee's Notes add: "This limitation contemplates that there will be reasonable breaks during the day for lunch and other reasons, and that the only time to be counted is the time occupied by the actual deposition." The Committee gives voice to hopeful expectations: "It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court. . . . It is also assumed that there will be reasonable breaks during the day. Preoccupation with timing is to be avoided." The Advisory Committee speaks with the measured and unruffled detachment of those who are above, or beside, the fray.

The principal cause of the parties' differing calculations of the appropriate durational

limitation on Salovey's deposition – seven hours or two hours – is the differing perceptions counsel profess in their briefs about Salovey's importance.  Not the importance of his rank: the offices of Provost and President are the most exalted in the University's pantheon.  Rather, it is the importance of Salovey's participation in events relevant to the University's termination of Bagley's employment that counsel debate with asperity.  Within that particular context, if one adopts the parlance of the Yale Dramat rather than the SOM, the University's counsel place Salovey at the far end of the last row in the chorus, while Bagley's counsel cast him as one of the lead singers.

On this point, the briefs on behalf of both parties are to some degree exercises in advocacy.  The main brief for the University [Doc. 109-1] says at 8-9 that "President Salovey's involvement in this case amounted to appointing a committee to address the plaintiff's formal complaint to Yale's Office of the Provost, reviewing that committee's report, and then directing Yale SOM to reconsider the decision of whether to reappoint the plaintiff," and follows that recitation with this warning shot across the deposition's bows: "To the extent the plaintiff seeks to question President Salovey about issues not related to his direct involvement in the non-renewal of the plaintiff's appointment, she is not permitted to do so."

While counsel for Bagley may accept that restraint, so that a potential dispute subsides, counsel may regard other subjects as permissible subjects of inquiry.  For example, Bagley's sur-reply brief [Doc. 128] at 2 states that "[i]n 2011, Salovey announced the creation of the University-Wide Committee on Sexual Misconduct.  Professor Bagley was appointed to the Committee and became the principal architect of the protocols."  From those seemingly undisputed events, Bagley's counsel fashion the contention: "There are predicate communications involving Salovey's decisions relating to this exercise.  Plaintiff is entitled to explore this topic, as well as related avenues

[undefined in the brief], directly with this decision-maker." In similar vein, and perhaps closer to the core issues, plaintiff's sur-reply brief at 2 says that in April 2012, before the SOM BPO discussed and voted on Bagley's reappointment, then-Provost Salovey had communications with the Deputy Provost "as well as other high ranking faculty and Deans, regarding Professor Bagley." In those circumstances, Bagley's counsel contend: "Plaintiff is entitled to explore with Salovey what he knew, when he knew it, what he did and did not do, and with whom he communicated and did not communicate, both generally regarding Professor Bagley, and specifically regarding her reappointment." *Id.*

When President Salovey's deposition takes place, counsel for the University may accept that these and other lines of inquiry suggested by counsel for Bagley are permissible. Potential disputes would again subside. But disputes as to relevance and related factors may emerge. Of course, one hopes not. But I do not undertake to decide such questions now because they are not ripe and are not before me. My present responsibility is to decide the duration of Salovey's deposition, counsel for the parties having been unable to agree. In the totality of circumstances, I conclude that it would be an abuse of discretion to limit the deposition to two hours and enforce that limitation. Instead, the Court's order will be that Salovey's deposition may, in case of need,[1] consume the full seven hours authorized by the Rule.

The Court recognizes the importance of President Salovey's position, the myriad natures and pressing demands of his duties, and the University's need for the undivided attention of its President to those duties. On the other hand, the present dispute boils down to whether the University must

---

[1] That qualification is made because counsel for Bagley said in her main brief [Doc. 114] at 3: "it is unlikely that the deposition will require seven hours of time."

resign itself to the loss of half a business day of Salovey's presence on the job (which a two-hour deposition would surely cause) or the loss of a full day (which a seven-hour deposition would effectively cap). No one questions that there must be some expenditure of Salovey's time; unlike the high-ranking university or corporate officers in the cases defendants cite, who had no knowledge whatsoever of the underlying facts in the action, Salovey played some role in the drama. I think it unlikely that Salovey's deposition will be completed, wrapped up, and ready for transcription two hours after it begins. If counsel for the University regard as permissible the inquiries by Bagley's counsel into the several areas suggested in plaintiff's briefs, the deposition will almost certainly take more than two hours. If the University's counsel objects to certain lines of inquiry as impermissible because irrelevant, it will take some time to state the objections, preserve them for the record, and then take the testimony subject to a later motion to strike, which is the preferable practice.[2]

For the foregoing reasons, the deposition of Peter Salovey, noticed by counsel for plaintiff Constance Bagley as part of pre-trial discovery, will take place beginning in the morning of a date to be agreed by the parties or set by the Court in the absence of agreement, at a location to be agreed by the parties or set by the Court in the absence of agreement. The duration of the deposition may

---

[2]  Professor Moore instructs us that "Counsel may instruct a deponent not to answer only in the following three situations: When necessary to preserve a privilege; To enforce a limitation directed by the court; or To suspend a deposition in order to present a motion under Rule 30(d)(3)." Moore's text also says severely: "It is improper to instruct a witness not to answer a question on the basis of relevancy. . . . When counsel does instruct the witness not to answer based on an improper reason, the court may order that the deponent be redeposed," a remedy that President Salovey presumably would not welcome. 7 *Moore's Federal Practice* (3d ed. 2010) § 30.43[2] (citations omitted).

be up to, but may not exceed, seven hours, as provided in Rule 30(d)(1) of the Federal Rules of Civil Procedure.

Defendants' motion [Doc. 109] for a protective order is DENIED.

It is SO ORDERED.

Dated:   New Haven. Connecticut
         April 15, 2015

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge