# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

———————————————————————

CONSTANCE E. BAGLEY,                    )
                                        )
            Plaintiff                   )
                                        )
      v.                                )        Civil Action No. 3:13-cv-01890 (CSH)
                                        )
YALE UNIVERSITY, DOUGLAS                )
RAE, EDWARD SNYDER, AND                 )
ANDREW METRICK, Individually,           )
                                        )
            Defendants.                 )
———————————————————————

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION TO COMPEL DEFENDANT YALE UNIVERSITY TO PRODUCE DOCUMENTS

Plaintiff Constance E. Bagley ("Plaintiff" or "Professor Bagley") filed this action alleging, among other claims, discrimination and retaliation following Defendant Yale University's ("Defendant" or "Yale") decision to deny her reappointment as a Professor in the Practice ("PIP") at its School of Management ("SOM").  As the facts and circumstances of the case are fully stated in the Court's decisions (Haight, Senior District Judge) granting in part and denying in part Defendants' motion to dismiss the complaint, 42 F. Supp. 3d 332 (D. Conn. 2014), and denying Plaintiff's motion for a preliminary injunction, 2014 WL 7370021 (D. Conn. Dec. 29, 2014), Plaintiff assumes the Court's familiarity with the relevant background for this pre-trial discovery dispute.

At issue in this motion is Yale's refusal to produce documents that constitute discovery of comparator evidence, including baseline data (for example, Professor Bagley's own complete personnel file[1]), the personnel files of eight potential comparators[2], and all comparative data

_____

[1] For purposes of this Motion, "personnel file" includes all "papers, documents and reports pertaining to a particular employee which are used or have been used by an employer to determine such employee's eligibility for

1

related to the activities associated with the appointment or reappoint of a PIP within the SOM, and the role of the Board of Permanent Officers (BPO) in that process. These documents include Committee Reports and Recommendations, communications within the SOM regarding each individual's initial appointment or subsequent reappointment, BPO notes, BPO votes, BPO meeting minutes pertaining to the appointment and reappointment of PIPs, email exchanges between and among SOM Deans and BPO members regarding each PIP's appointment or reappointment, and communications with the Office of the Provost (or other Yale offices or departments) pertaining to each candidate's appointment or reappointment at the SOM. In addition, comparable information (including personnel files) of Ian Shapiro and David Bach, the two younger and less experienced males who replaced Professor Bagley as members of the SOM faculty, and Kyle Jensen, a male who was hired for an entrepreneurship program position for which Connie applied and was qualified, are equally relevant. Professor Bagley's need for discovery of these materials to rebut Yale's alleged non-discriminatory motive for not renewing her appointment, together with the confidentiality agreement already in place, outweighs any privacy interests at issue.[3] Attached as <u>Exhibit A</u> to this Motion and Memorandum is a list of the

---

employment, promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action including employee evaluations or reports relating to such employee's character, credit and work habits." See Connecticut Personnel Files Act, Conn. Rev. Stat. § 31-128a(3).

[2] Professor Bagley's comparators are the following individuals, who are or were employed as PIPs at the SOM beginning in 1983 (with the appointment of Stanley Garska) to the present: Frank Fabozzi, Jeffrey Garten, Stanley Garstka, Roger Ibbotson, Thomas Kolditz, Loretta Mester, Rakesh Mohan, and Jeffrey Sonnenfeld. In addition, Professor Bagley was replaced with two males on the faculty of the SOM, Ian Shapiro and David Bach, and was overlooked for a position that was given to Kyle Jensen, and their comparative data is equally relevant to her claims.

[3] Yale has nonetheless cherry picked and produced a random scattering of select documents from comparator files. For example, (1) Professor Stanley Garstka's 1983 offer letter, with salary information, and his memorandum accepting a five-year appointment; (2) a January 1992 memorandum regarding Garstka's renewal review, with handwritten notes; (3) an April 2002 document reflecting the vote taken at a meeting of the Yale Corporation to appoint Garstka for a five-year term (4) Professor Rakesh's 2009 offer letter, with salary information, and appointment committee report; and (5) Professor Kolditz's May 2012 offer letter, with salary information, and appointment committee report.

sought after documents.

I.  **ARGUMENT**

While Yale has produced some documents in response to Professor Bagley's discovery requests, a substantial portion of its production consists of duplicates.  Critical e-mail exchanges between then-Provost Peter Salovey and Deputy Provost Frances Rosenbluth regarding Professor Bagley's renewal—including one dated April 28, 2012, in which Rosenbluth told Salovey that Deans Snyder and Metrick "are not sure about wanting to renew Connie Bagley as Professor in the Practice" since "she started worrying and threatening legal action," and another dated May 8, 2012 (the day after the negative BPO vote), in which Rosenbluth asked Salovey if there is "some other position for [Professor Bagley] at Yale where she would be valued" and Salovey responded "[n]ot if she is threatening legal action"—were not produced until after the Court denied the Defendants' motion to halt all further electronic discovery and after the depositions of Deans Snyder and Metrick.[4]  Other documents, some of which this Court requires be produced without objection, have not been produced at all.

On March 21, 2014, following a telephone conference in which Yale's counsel participated, the Court ordered the parties to this action to "follow this district's 'Initial Discovery Protocols for Employment Cases Alleging Adverse Action.'"  *See* Dkt. No. 30.  The Protocols require defendants to employment actions, such as this, to produce "[t]he plaintiff's personnel file, in any form, maintained by the defendant, including files concerning the plaintiff maintained by the plaintiffs [sic] supervisor(s), manager(s), or the defendant's human resources representative(s), irrespective of the relevant time period."  *See* Protocols, at 4(d).  The Protocols also require defendants to produce plaintiffs' performance evaluations.  *See* Protocols, at 4(e).

In her First Request for Production of Documents, which was served on Yale's counsel

---

[4] The e-mails were produced as YU015737-38 and YU015803-04.

on July 8, 2014, Professor Bagley made clear that her "request is intended to supplement, and not replace, the document production expressly mandated by the [Protocols] endorsed by the Court in this action." *See* <u>Exhibit B</u>. Professor Bagley reiterated Yale's obligation to comply with this Court's Protocols in her Second Request for Production of Documents, which was served on Yale on January 14, 2015. *See* <u>Exhibit C</u>. However, Yale still has not yet produced her complete personnel file.

Because one of the central issues in this case is whether Professor Bagley was treated differently from other PIPs (and was replaced by younger, less experienced, males), Professor Bagley requested "[t]he complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred." *See* Pl.'s Document Request No. 47, <u>Exhibit D</u>.[5] Yale responded as follows:

> See general objections. Defendants also object to this request on the ground that it is overbroad, burdensome, unlimited in scope of time, and is not designed to lead to the discovery of relevant, admissible evidence. In addition, compliance with this request would violate the provisions of Conn. Gen. Stat. §31-128f, which prohibits the disclosure of personnel information without the consent of the employee, and would violate the privacy interests of persons or [sic] not parties to this litigation.

Despite multiple requests and the undeniable relevance of the personnel files and comparative data to the claims and defenses in this case, Yale continues to refuse disclosure. Professor Bagley's counsel attempted to narrow the scope of her requests and also agreed to reasonable redactions of highly sensitive information and irrelevant personal data, but Yale still has not changed its position. *See* <u>Exhibit E</u>, April 10, 2015 e-mail from Matt Geelan to Emily Nelson ("Even though the plaintiff has narrowed this request, it nonetheless seeks private

---

[5] The temporal scope of this request was originally limited to January of 2006 through the present, but it now includes 1983 to present because Stanley Garstka received his initial appointment in 1983 and has enjoyed numerous "reappointments," including reappointment in 2014.

information about individuals who are not parties to this lawsuit.  As a result, Yale believes that

it needs to protect this information.  In addition, the request is overly broad and burdensome.").[6]

## A.  <u>The Scope of Discovery is Broad in Employment Cases</u>

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any

matter that bears on, or that reasonably could lead to another matter that could bear on, any issue

that is or maybe in the case.'"  *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d

106, 114 (2d Cir. 1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351(1978)).

This principle guides discovery in all cases and must be brought to bear with particular force

when a plaintiff's allegations involve employment discrimination and retaliation.  *See E.E.O.C.*

*v. Beauty Enterprises, Inc.*, Civ. No. 3:01CV378(AHN), 2008 WL 3359353, at *1-*2 (D. Conn.

Aug. 8, 2008) ("with regard to discrimination claims …the imposition of unnecessary discovery

limitations is to be avoided … Blanket objections" to discovery requests as "'overly broad or

unduly burdensome' or providing a few scattered documents from files do not amount to

adequate and complete responses based on the liberal discovery standard in employment cases").

"[T]he necessity for liberal discovery to clarify complex issues encountered in litigation

seeking to redress employment discrimination has been widely recognized," *Lyoch v. Anheuser-*

*Busch, Inc.*, 164 F.R.D. 62,65 (E.D. Mo. 1995), "[b]ecause employers rarely leave a paper trail—

or "smoking gun"—attesting to discriminatory intent."  *See Hollander v. Am. Cyanamid Co.*, 895

F.2d 80, 85 (2d Cir. 1990).  Furthermore, employers have a near monopoly on relevant

information and aggrieved employees must be entitled to broad discovery from the employer to

resolve that inequity.  *See Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013) ("In

---

[6] Although the Plaintiff previously offered to narrow her request to handwritten notes or typed minutes from the BPO deliberations on PIP renewal, Yale rejected that offer.  The Plaintiff renews her original request for complete personnel files, including notes, minutes, and other data, because the request is within the scope of reasonable discovery in this case.

the context of employment discrimination cases, courts favor 'liberal civil discovery rules,'
giving plaintiffs 'broad access to employers' records in an effort to document their claims.'").

Given the broad scope of discovery, Yale, as the non-moving party, bears the burden of
showing why Professor Bagley's request for personnel files and comparative data should be
denied. *See Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165 (D. Conn. 2005);
*Kimbro v. I.C. Sys., Inc.*, 2002 U.S. Dist. LEXIS 14599, at *2 (D. Conn. Jul. 22, 2002). Yale
cannot meet this burden.

**B.** **Plaintiff's Request for Comparative Data is Adequately Narrow in Scope and Well
Within the Parameters of Reasonable Discovery**

It is well established that a plaintiff may raise an inference of discrimination by showing
that he or she was subjected to less favorable treatment than others who were similarly situated.
*See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Courts have recognized that
disclosure of peer review materials is often necessary to determine whether such discriminatory
treatment has occurred. *See Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 193 (1990)
("Indeed, if there is a "smoking gun" to be found that demonstrates discrimination in tenure
decisions, it is likely to be tucked away in peer review files…. '[T]he peer review material itself
must be investigated to determine whether the evaluations are based in discrimination and
whether they are reflected in the tenure decision.'") (quoting *E.E.O.C. v. Franklin & Marshall
Coll.*, 775 F.2d 110, 116 (3d Cir. 1985)).[7]

Here, Professor Bagley has requested that Yale produce documents and correspondence
concerning the appointments and reappointments of other PIPs at the SOM, two younger males

---

[7] In *University of Pennsylvania v. E.E.O.C.*, the Supreme Court rejected a university's "academic-freedom"
challenge to an EEOC subpoena that sought tenure-review files of a female associate professor who was denied
tenure and five male faculty members who were alleged to have received more favorable treatment. The Court held
that "[a] university does not enjoy a special privilege requiring a judicial finding of a particularized necessity of
access, beyond a showing of mere relevance, before peer review materials pertinent to charges of discrimination in
tenure decisions are disclosed to the EEOC." 493 U.S. at 182.

(Shapiro and Bach) who replaced her, and a male (Kyle Jensen) who was chosen to fill a position for which Professor Bagley applied and was qualified. The discovery Professor Bagley seeks bears directly on a central issue in this case—her contention that she was treated differently from similarly situated PIPs, and then replaced by less experienced younger males.

Professor Bagley's request is also consistent with what was placed "at issue" by the Defendants in its defense to the claims asserted in this case. During his deposition, Defendant Dean Andrew Metrick testified that the BPO was told during deliberations on Plaintiff's reappointment that it should use the criteria it has "traditionally used," including knowledge of the Faculty Handbook and faculty members' ***past experience***. *See* <u>Exhibit F</u>, Metrick Dep. Tr. at 97-98. Professor Bagley is entitled to an opportunity to challenge this assertion and show that the standards and process followed in her reappointment review is at odds with how the SOM conducted the reviews and reappointments of other PIPs. Without contemporaneous notes and meeting minutes from the relevant BPO deliberations, ballots, PIP contract documents, and other information concerning appointments and reappointments of her comparators, Professor Bagley cannot fully assess Yale's alleged non-discriminatory motive for not renewing her appointment.

Yale's attempt to shield this comparative data through a boilerplate objection of over breadth and undue burden is superficial, at best. As the party resisting discovery of the data, Yale cannot merely recite the "familiar litany" of conclusory objections. Rather, it must demonstrate "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *See Breon v. Coca-Cola Bottling Co.*, 232 F.R.D. 49, 56 (D. Conn. 2005); *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 72 (D. Conn. 2004) ("The question here is not whether ... a

production would be burdensome to defendant. Clearly, responding to any document [request] is burdensome to one degree or another. The question, for these purposes, is whether responding ... would be *unduly* burdensome.") (emphasis added)[8]; *see also Ruran*, 226 F.R.D. at 168 (plaintiff's request for "documents reflecting 'all statements and interviews conducted by the Defendant relating to the Plaintiff's allegations' may be broad, but it is not *overly* broad"). Because Yale cannot meet this burden, it should be compelled to disclose the comparative data.

### C.  **Plaintiff's Personnel File Must Be Produced Pursuant to This Court's Order**

On March 21, 2014, the Court ordered the parties to comply with its Initial Discovery Protocols for Employment Cases Alleging Adverse Action.  *See* Dkt. No. 30.  The Protocols require Yale to produce Professor Bagley's personnel file, "in any form," including files maintained by her "supervisor(s), manager(s), or [Yale's] human resources representative(s), irrespective of the relevant time period."  *See* Protocols, at 4(d).  Despite the Court's Order and multiple requests from Professor Bagley, Yale has not produced her personnel file in its entirety or in any form that even approximates a "personnel file."  Accordingly, Professor Bagley requests that this Court enter an order compelling Yale to immediately produce her complete personnel file.

### D.  **Disclosure of Relevant Portions of the Comparators' Personnel Files is Permitted and Necessary**

Yale's objection to the disclosure of the personnel files of Professors Frank Fabozzi, Jeffrey Garten, Stanley Garstka, Roger Ibbotson, Thomas Kolditz, Loretta Mester, Rakesh Mohan, Jeffrey Sonnenfeld, Ian Shapiro, David Bach, and Kyle Jensen should not stand because Professor Bagley's request falls within the ambit of an exception to the general rule prohibiting

---

[8] *See* Dkt. 131, Ruling on Defendants' Motion for Protective Order [Doc. 108] at 15 ("The sense of irritated resignation conveyed by the familiar aphorism – 'it's like looking for a needle in a haystack'– does not exclude the possibility that there may actually be a needle (or two or three) somewhere in the haystack, and sharp needles at that. Plaintiff is presumptively entitled to search for them.") (Haight, J.).

unauthorized disclosure of personnel files, and because Professor Bagley's need for disclosure of the files outweighs any privacy interests at issue.

The Connecticut Personnel Files Act, Conn. Gen. Stat. §31-128f, generally requires an employee's written consent for release of information from his or her personnel file. However, an exception is recognized where the personnel file is disclosed "pursuant to a lawfully issued administrative summons or judicial order, including a search warrant or subpoena, or in response to … the investigation or defense of personnel-related complaints against the employer." *See* Conn. Gen. Stat. §31-128f(2); *see Culkin*, 225 F.R.D. at 73 ("pursuant to a lawfully issued judicial order, an employer need not obtain the employee's authorization" prior to disclosing his or her personnel file); *see also E.E.O.C. v. Beauty Enterprises, Inc.*, 2008 WL 3359252, at *6 ("While personnel files should not be produced normally in discovery, they are highly relevant to a plaintiff's claims in an employment discrimination case.").

Courts within the Second Circuit have repeatedly applied this exception to permit disclosure of personnel file information. *See Sperling v. Harman Int'l Indus., Inc.*, 2011 U.S. Dist. LEXIS 103455, *2-3 (E.D.N.Y. Sept. 14, 2011) (ordering disclosure of personnel files of "younger and allegedly less-qualified employees to whom [plaintiff's] job functions were distributed"); *Duck v. Port Jefferson Sch. Dist.*, 2008 U.S. Dist. LEXIS 39695 (E.D.N.Y. May 14, 2008) (ordering disclosure of employment records plaintiff believed "could yield evidence of whether male coaches were subjected to the same requirements as their female counterparts"); *Gibbs v. Am. Sch. for the Deaf*, 2007 U.S. Dist. LEXIS 25036 , *3-*4 (D. Conn. April 4, 2007) ("Judges in this District have repeatedly recognized that when personnel information … is necessary and relevant to a case, a court may order limited disclosure of that information consistent with the dictates of § 31-128f"); *Chamberlain v. Farmington Savings Bank*, 247

9

F.R.D. 288, 291 (D. Conn. 2007) (ordering production of "comparative information" in personnel files concerning defendant's treatment of other management level employees); *Ruran*, 226 F.R.D. at 169 (ordering disclosure of personnel files after finding they were relevant to plaintiff's claim of disparate treatment)[9]; *see also Cost Mgmt. Incentives, Inc. v. Civil Theradex Sys.*, 2007 U.S. Dist. LEXIS 0241 (D. Conn. March 21, 2007) (ordering disclosure of personnel file of former employee because the file was "relevant to the issues" in the lawsuit).

Here, the matter before the Court falls within the scope of the exception to the general rule prohibiting disclosure of personnel files, and there is no question that the information Professor Bagley seeks is relevant.  The personnel files contain appointment and reappointment information regarding eight of her comparators, all of whom were similarly situated in that they held the position of PIP at the SOM. The material in the files will show whether PIPs with lesser qualifications were offered reappointment or whether an entirely different process and set of standards were used to assess their eligibility for renewal.  This information is critical to establishing a pattern of discrimination or otherwise revealing discriminatory intent and pretext.

Furthermore, Professor Bagley's need for disclosure of the personnel files outweighs any privacy concerns at issue because Yale is Professor Bagley's only source for the information in those files.  Any concerns Yale has regarding privacy with respect to these files can easily be addressed through reasonable redactions of sensitive information (such as social security numbers and medical information) and adherence to the court-approved protective order to which Professor Bagley has already agreed.[10]  Therefore, Yale should be compelled to produce

---

[9] The *Ruran* Court stated: "others' personnel files are certainly relevant to Mr. Ruran's claim of disparate treatment under the ADEA--for, a claim of disparate treatment begs the question: 'Disparate to what?'" 226 F.R.D. at 169. Based on its finding of relevance, the court entered an order compelling production of the documents, triggering the exception to the general rule prohibiting disclosure.
[10] *See Sperling*, 2011 U.S. Dist. LEXIS 103455, at *4 ("in most cases, a protective order can 'appropriately remedy privacy concerns arising from discovery of personnel records.'")

all remaining information from the comparators' files.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court order Yale to produce documents referenced in Schedule A, and that the order provide Yale a reasonable time to produce these documents but nonetheless on a date certain.

Plaintiff further requests attorneys' fees for the costs of bringing this Motion, and any other relief this Court deems equitable and just.

Respectfully Submitted,
Constance E. Bagley
BY HER ATTORNEYS,

/s/ Laura R. Studen
Laura R. Studen, Esq.
lstuden@burnslev.com
Neerja Sharma, Esq.
nsharma@burnslev.com
Carla A. Reeves, Esq.
creeves@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
617-345-3000

Dated: September 15, 2015

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on September 15, 2015, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

                  /s/ Laura R. Studen
                  Laura R. Studen

4819-1132-1123.6

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                    )
CONSTANCE E. BAGLEY,                                )
                                                    )
                Plaintiff                           )
                                                    )
        v.                                          )        Civil Action No. 3:13-cv-01890 (CSH)
                                                    )
YALE UNIVERSITY, DOUGLAS                            )
RAE, EDWARD SNYDER, AND                             )
ANDREW METRICK, Individually,                       )
                                                    )
                Defendants.                         )
_____)

## DOCUMENT REQUESTS

All of the following requests are for the period 1983 to the present, and relate solely to

the position of a Professor in the Practice (PIP) within the Yale School of Management:

1.  Plaintiff's complete personnel file within the meaning of Connecticut Personnel Files

    Act, Conn. Rev. Stat. § 31-128a(3);

2.  The personnel files of Frank Fabozzi, Jeffrey Garten, Stanley Garstka, Roger Ibbotson,

    Thomas Kolditz, Loretta Mester, Rakesh Mohan, Jeffrey Sonnenfeld, Ian Shapiro, David

    Bach and Kyle Jensen;

3.  For each of the foregoing persons, produced in separately identified files by individual:

    a.  all internal and external correspondence (including, without limitation, emails)

        pertaining to or relating to the recruitment of each individual to the SOM;

    b.  all documents relating to negotiations, offers, and agreements (including drafts)

        expressing the terms of the initial appointment to the position of a PIP within

        the SOM, and for each subsequent term of reappointment;

    c.  all Committee reports and communications by and between Committee

1

members appointed to review the candidate with the Board of Permanent Officers (BPO) members, the Dean's office, and the Office of the Provost regarding the candidacy of each individual for an initial PIP appointment, and for consideration of a subsequent term of reappointment ;

d.  all documents presented to the BPO in advance (or made available at the meeting) relating to each candidate's presentation to the BPO for its consideration for an initial PIP appointment, and for any subsequent meetings relating to the consideration of an additional term of reappointment;

e.  all handwritten notes (with the identity of the note taker prominently indicated) and minutes of the BPO meeting at which the candidate was presented for initial appointment and for any subsequent meetings relating to consideration of an additional term of reappointment;

f.  all communications by and between any BPO member and the Dean's Office, and between the Dean's Office with the Office of the Provost, concerning each individual's appointment, or reappointment, as a PIP;

g.  all documents evidencing who was in attendance at each meeting of the BPO at which the candidate was presented for initial appointment and for any subsequent meetings relating to consideration of an additional term of reappointment;

h.  all ballots reflecting votes taken on the appointment or reappointment to the position of a PIP;

i.  communications submitted to The Yale Corporation concerning the appointment or reappointment of any PIP;

2

j.   any other documents or data concerning committee recommendations, deliberations, and decisions related to the appointment or reappointment of PIPs; and

k.   any and all documents or data relating to the recruitment, negotiations, hiring, contracts or agreements regarding assignment as a faculty member within the SOM, together with all performance reviews or assessments (formal and informal, by faculty, students or alumni) of Ian Shapiro, David Bach, and Kyle Jensen.

4838-3872-2856.1

3

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                    )
CONSTANCE E. BAGLEY,                )
                                    )
          Plaintiff                 )
                                    )
          v.                        )          Civil Action No. 3:13-cv-01890
                                    )
YALE UNIVERSITY, DOUGLAS            )
RAE, EDWARD SNYDER, AND             )
ANDREW METRICK, Individually.       )
                                    )
          Defendants.               )
_____)

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**PROPOUNDED ON DEFENDANT YALE UNIVERSITY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26, the Plaintiff, Constance E. Bagley ("Professor Bagley" or "Plaintiff"), hereby requests that all documents and tangible things described below be produced for inspection or copying, within thirty (30) days from the date of this request, at the offices of Burns & Levinson LLP, 125 Summer Street, Boston, Massachusetts 02110.  This request is intended to supplement, and not replace, the document production expressly mandated by the Initial Discovery Protocols for Employment Cases Alleging Adverse Action endorsed by the Court in this action.[1]  See Dkt. 30.

**TIME FRAME**

Unless otherwise specified, the time period governing the below Requests is January of 2006 to the present.

---

[1] This Protocol already requires Defendants to produce, *inter alia*, documents concerning the formation and termination of Plaintiff's employment, her personnel file, evaluations, workplace policies and codes of conduct, documents concerning investigations of the Plaintiff's complaints and communications relevant to the actions in the lawsuit.  Plaintiff notes that certain Requests contained herein may be more specific requests that fall within the categories required by the Protocol.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

|  |  |  |
|---|---|---|
| CONSTANCE E. BAGLEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13-cv-01890 |
| | ) | |
| YALE UNIVERSITY, DOUGLAS | ) | |
| RAE, EDWARD SNYDER, AND | ) | |
| ANDREW METRICK, Individually. | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**PLAINTIFF'S SECOND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**PROPOUNDED ON DEFENDANT YALE UNIVERSITY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26, the Plaintiff, Constance E. Bagley ("Professor Bagley" or "Plaintiff"), hereby requests that all documents and tangible things described below be produced for inspection or copying, within thirty (30) days from the date of this request, at the offices of Burns & Levinson LLP, 125 Summer Street, Boston, Massachusetts 02110. This request is intended to supplement, and not replace, the document production expressly mandated by the Initial Discovery Protocols for Employment Cases Alleging Adverse Action endorsed by the Court in this action.[1] See Dkt. 30.

**TIME FRAME**

Unless otherwise specified, the time period governing the below Requests is January of 2006 to the present.

---

[1] This Protocol already requires Defendants to produce, *inter alia*, documents concerning the formation and termination of Plaintiff's employment, her personnel file, evaluations, workplace policies and codes of conduct, documents concerning investigations of the Plaintiff's complaints and communications relevant to the actions in the lawsuit. Plaintiff notes that certain Requests contained herein may be more specific requests that fall within the categories required by the Protocol.

1

# EXHIBIT D

**REQUESTS**

**Request No. 43**

All drafts of the report produced as a result of the 2014 Diversity Summit at Yale, including any revisions made by Yale management prior to its publication.

**Request No. 44**

All documents or communications provided by SOM Deans or any other individual to President Salovey in response to Professor Bagley's June 2012 request for provostial review of the decision not to renew her contract.

**Request No. 45**

All documents and communications relating to any decision or recommendation by the University-Wide Committee on Sexual Misconduct concerning an allegation or incident of sexual misconduct that was overturned or reversed by Yale management.

**Request No. 46**

Any and all complaints of harassment, discrimination, or retaliation against Dean Snyder, Dean Metrick, or Professor Rae, including any communications relating thereto.

**Request No. 47**

The complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred.

**Request No. 48**

A copy of the job posting ("job as posted") as referenced at bates-stamped document YU003170.

**Request No. 49**

All emails to and from the e-mail account eas@yale.edu ("EAS Confidential") referencing or concerning Professor Bagley.

# EXHIBIT E

Hi Emily,

Attached please find a privilege log related to President Salovey's ESI.

Also, it's my understanding that you received a disc from Ricoh today.  This disc contains documents in response to Request for Production No. 22.

Matt

~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

---

**From:** Matt Geelan
**Sent:** Friday, April 10, 2015 9:19 AM
**To:** 'Emily J. Nelson'
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

I just wanted to touch bases with you about a few outstanding matters:

(1)  I will be sending you a privilege log related to President Salovey's ESI a little later today.

(2)  I am working on the privilege log for Dean Snyder's confidential email account.  I will try to get it done today, but it may not be ready until early next week.

(3)  As to the plaintiff's request for BPO notes and contracts regarding other PIPs at SOM, Yale intends to pursue its object to this request.  Even though the plaintiff has narrowed this request, it nonetheless seeks private information about individuals who are not parties to this lawsuit.  As a result, Yale believes that it needs to protect this information.  In addition, the request is overly broad and burdensome.

(4)  You should be receiving a disc from Ricoh on Monday containing documents in response to Request for Production No. 22.

Please let me know if you have any questions.

Matt

~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

# EXHIBIT F

Page 97

1 particularly for the lecturers and the senior
2 lecturers.
3       But there is -- in any organization a way
4 that -- things are discussed when you are making an
5 important decision.  And this was always discussed
6 according to everybody in the room.  There was nobody
7 in the room who said, hey, this is not something we
8 consider when we do a professor in the practice.
9 Because it's always considered.
10    Q.   So you're confident everybody in the room
11 knew about her negotiations with Joel Podolny, they
12 knew about the e-mails they exchanged, knew about the
13 fact that Connie should have been aware or they were
14 aware that programmatic -- that need somehow was a
15 criteria.  You think everybody who was voting on May 7
16 was aware of that?
17       MR. NOONAN:  Objection.  Compound.
18       THE WITNESS:  I don't know what's in
19    everybody's mind.
20 BY MS. STUDEN:
21    Q.   Well, you didn't give them that information,
22 did you?
23    A.   We got the information.  In fact, one piece
24 of information we gave to everybody at the beginning
25 of the meeting was that we have determined that what

Page 98

1 we are voting on today is a standard professor in the
2 practice agreement, that this is a standard professor
3 in the practice renewal that we are making.  So we had
4 -- so everybody could just refer to what they knew
5 from their experience.
6    Q.   In the handbook?
7    A.   Yeah, and their experience.
8    Q.   Okay.  So the BPO vote on May 7, 2012, was
9 based on the representation that the BPO should use
10 the criteria in evaluating Connie that they have
11 traditionally used in evaluating professors in the
12 practice?
13    A.   That is correct.
14    Q.   And was there, then, a determination at that
15 point in time by the BPO that law was no longer
16 integral to management within the School of
17 Management?
18    A.   I can't answer that question because you said
19 no longer.
20    Q.   Was not?
21    A.   There was never a determination one way or
22 the other whether it was integral at any point in
23 time.
24    Q.   Okay, so there was no determination on May
25 7th of 2012 that, in fact, the unique combination of

Page 99

1 skills and experience that Connie had was no longer
2 relevant to the School of Management, correct?
3    A.   Relevant?  There was no --
4    Q.   No determination.
5    A.   We don't vote on those things.  There was no
6 discussion of it along those lines.  It's just not
7 language that we use.
8    Q.   There was no such determination that her
9 unique set of skills and experience wouldn't have some
10 usefulness to the School of Management going forward?
11    A.   That was not something that was voted on, no.
12    Q.   And it wasn't discussed.
13    A.   I think broadly what was discussed was how
14 her set of skills and experience would contribute to
15 the school.  So that was discussed at length.  But
16 whether or not -- and part of that conversation was
17 certainly in general do we want to have somebody doing
18 this kind of thing, is that useful for the school.
19    Q.   Well, what was the kind of thing?
20    A.   Bringing law into management education.  You
21 know, should we, should we have a full-time faculty
22 member of our own who can participate in our own
23 governance and decisions about this school and helping
24 fuse the overall curriculum with a legal perspective;
25 is that an important priority for the school?  And

Page 100

1 that was certainly something that was discussed.
2    Q.   When you say a faculty member of our own, you
3 are talking about somebody from the law school?
4    A.   No, no.  I more talking about should we have
5 -- we know we can go and get outsiders, but an
6 outsider is different.
7       Having someone like Connie on the faculty is
8 potentially very useful if the person's voice in
9 curricular discussions overall is adding and the
10 person is teaching in the core.  You really do want to
11 have -- people who are in the core, you want them to
12 be your own faculty members.
13       So how important was that to us as a school.
14 And that was something that was discussed at the
15 meeting.
16    Q.   So since the May 7th, 2012, vote, has anybody
17 from the law school been brought over to teach at SOM?
18    A.   We have many many of our students taking
19 courses at the law school that are cross listed.
20    Q.   And those law school courses, do they
21 integrate law and management?
22    A.   I don't think they do a particularly good job
23 of it, no.
24    Q.   And there are standards, accreditation
25 standards, that require that a School of Management

