UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE BAGLEY | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:13 CV 1890  (CSH) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, DOUGLAS RAE, | : | |
| EDWARD SNYDER and ANDREW | : | |
| METRICK, Individually | : | OCTOBER 13, 2015 |
| | : | |
| Defendants | : | |

## OBJECTION TO MOTION TO COMPEL

The defendants, Yale University ("Yale"), Douglas Rae, Edward Snyder and Andrew Metrick, hereby submit this memorandum of law in support of their motion for protective order.

## I.    FACTUAL BACKGROUND

The present action arises from the plaintiff's employment relationship with Yale.  The plaintiff alleges that she accepted an employment contract with the Yale School of Management ("Yale SOM") in 2008 as a Professor in the Practice.  (See December 20, 2013 Complaint, ¶¶ 30 and 32.)  The plaintiff's employment contract was for a five-year term with an opportunity for re-appointment.  (See Complaint, ¶ 32.)  Despite the clear language of the letter appointing her to a five year term after which she could apply for renewal, the plaintiff claims she accepted Yale's offer of employment only because she had been promised by former Dean Podolny that her reappointment was a certainty.  (See Complaint, ¶¶ 38 and 40.)  Dean Podolny testified that there

was no such guarantee during an evidentiary hearing on the plaintiff's Motion for Preliminary Injunction.  On October 21, 2013, the plaintiff was informed that her appointment as Professor in the Practice in the Yale School of Management would not be renewed.  (See Complaint, ¶ 37.) The plaintiff now claims, *inter alia*, that the decision to not renew her appointment constituted a breach of contract and was improperly motivated by her age and gender.  The vote taken by the senior faculty was sixteen to two against reappointment, with two members abstaining.  All female members voted in the negative.

## II.    PROCEDURAL HISTORY

To date, the plaintiff has served 52 production requests on the defendants and 23 production requests in connection with the depositions of employees of Yale.  The plaintiff has also required Yale to search the electronically stored information ("ESI") of ten Yale custodians, including the individual defendants, covering the period from January 1, 2007 to the present, using 25 different search terms.  While the plaintiff claims in her motion to compel that the defendants have produced only "some" documents, in reality, the defendants have produced in excess of 55,000 pages of documents in compliance with the plaintiff's extensive discovery demands.  As will be discussed below, this required Yale's IT staff and lawyers to locate, assemble and review the equivalent of 2.8 million pages of emails.  The time and effort required on the part of the defendants and defense counsel in order to produce this information has been far larger than any other case in which the undersigned counsel has ever been involved in over 35 years of practice.

Owing to the number of custodians, the search terms used, the very general nature of many of these terms, and the fact that many of the terms are not specific to this case, the ESI search, as defendants expected, produced an enormous amount of data.  The defendants made their first production on July 30, 2014.  This production consisted of responsive ESI from the computers of the individual defendants, Dean Snyder, Dean Metrick and Professor Rae, who made up three of the ten custodians identified by the plaintiff.  This production required paralegals and lawyers to review approximately 13,393 files, totaling 4.5 gigabytes, or the equivalent of about 450,000 pages of emails.  Only 6% of this data was responsive to Plaintiff's discovery request, i.e. about 300 megabytes, or about 29,300 pages of emails.  In excess of 95% of this information, while responsive to the ESI request, has absolutely nothing to do with any of the issues in this case.  Thus, defendants' lawyers and paralegals reviewed approximately 450,000 pages of material in order to produce less than 1,500 pages of information which have any relationship whatsoever to this dispute; and the majority of the 1,500 pages are only marginally relevant.  Furthermore, those 1,500 pages would have been produced through the normal discovery process.  There was simply no benefit to the use of the time-consuming ESI discovery; yet the cost was astronomical.

All told, the ESI production alone required the review of approximately 28 gigabytes of information.  As a frame of reference, one gigabyte is the equivalent of over 100,000 pages of emails.  Therefore, the ESI search of the ten custodians produced the equivalent of 2,800,000 pages of email text.  Again, this was not time well spent as only a small percentage of those documents that are responsive and non-privileged actually have any relevance to the

issues in this lawsuit.  The manner in which the discovery has been conducted in this case contravenes the express dictate of Fed. R. Civ. P. 1, which provides that the rules should be administered "to secure the just, speedy, and inexpensive determination of every action on the proceeding."  With specific regard to discovery, Rule 26(b)(2)(C) provides that the Court should limit the discovery which is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive," and where "the burden or expense of the proposed discovery outweighs its likely benefit . . ."  Both Rule 1 and Rule 26 provide more than ample reason to deny the plaintiff's Motion to Compel.

Of course, discovery has not been limited to ESI review.  The defendants have also been required to sift through vast amounts of data in order to comply with the many far-reaching traditional discovery requests the plaintiff has served.  For example, in order to comply with the plaintiff's request for all documents related to the work of the Harte Committee, the defendants were required to review through more than 10,000 emails and documents in order locate the requested information.  More recently, the defendants were required to review nearly 5,000 emails simply to comply with the production request included in the subpoena of Camille Costelli, who is Professor Rae's administrative assistant, a clerical employee who had no role whatsoever in participating in the decisions regarding the plaintiff's employment.  In order to comply with the plaintiff's requests, the defendants have also searched and reviewed the paper documents and ESI of Professor Geert Rouwenhorst, Professor Paul Bracken, Professor Ian Ayres, Professor Michael Della Rocca, Professor Edieal Pinker, Professor Judy Chevalier,

Professor Frank Zhang, President Richard Levin, and Sheril Frano, consisting of thousands of documents.

Despite the quantity of documents produced by the defendants, and the time and effort required to produce those documents, plaintiff has now filed a Motion to Compel as to production requests which were never filed until being attached to the motion itself.  The fact that the plaintiff never filed the production requests which she now seeks to compel mandates denial of the motion.  Under Fed. R. Civ. P. 37, a party may file a Motion to Compel only after the following has occurred:  (1) the party has served discovery requests, (2) the opposing party has declined to provide the requested discovery, and (3) the party seeking discovery had attempted to resolve the discovery objections with opposing counsel.  Since the subject discovery requests were not even filed prior to attaching them to the Motion to Compel, the plaintiff has failed to comply with any of these steps.  Accordingly, the Court should refuse to entertain the plaintiff's motion.  Furthermore, even if plaintiff's counsel had complied with the requirements of Rule 37, the new discovery requests attached in the Motion to Compel are unreasonable, would likely require the review of millions of pages of additional documents, would not advance the litigation, and would infringe upon the privacy interests of persons who are not parties to this action. Accordingly, the Motion to Compel should be denied.

### III.   LAW AND ARGUMENT

### A.   The Plaintiff's Motion Is Improper In That It Seeks To Compel Compliance With Discovery Requests Which Have Never Been Served On The Defendants.

The plaintiff seeks to compel compliance with three production requests, the third of which contains eleven subparts.  These requests, which are attached as Exhibit A to the plaintiff's Memorandum of Law in Support of Motion to Compel, have never been served on the defendants.

Motions to compel in this District are governed by Rule 37 of the Federal Rules of Civil Procedure and Rule 37 of the Local Civil Rules.  Fed. R. Civ. P. 37(a)(3)(B) provides that a "party seeking discovery may move for an order compelling … production… This motion may be made if: … (iv) a party fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34."  In this case, the requests with which the plaintiff seeks compliance differ substantially from the request actually served on the defendants.  The Motion to Compel seeks, without limitation, every single document and communication concerning the appointment or reappointment of any Professor in the Practice since 1983, as well as the appointments or reappointments of Professor Ian Shapiro, Dean Kyle Jensen, and Dean David Bach.  (See Document 136, Exhibit A.)  The requests contained in the attachment to the Motion to Compel were never served on the defendants prior to the filing of the present motion.  As the plaintiff has never requested, through discovery, the production of information she now seeks to compel, her motion is improper at this time and should be denied.

Rule 37(a) of the Federal Rules also requires a party seeking discovery to confer with opposing counsel in a good faith effort to resolve the dispute.  Rule 37 of the Local Civil Rules contains the similar requirement that:

> No motion . . . to [compel discovery] shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy . . . .

D. Conn. L. Civ. R. 37(a). The purpose of the Rule is to encourage the parties to resolve discovery disputes without court intervention.  See, e.g., Hanton v. Price, 2006 U.S. Dist. LEXIS 12454, at *1 (D. Conn. Mar. 8, 2006).  Plaintiff's counsel and defense counsel could not have conferred regarding the production requests for which the plaintiff now seeks compliance because defense counsel had never before seen these requests prior to the filing of the present motion.   Accordingly, the Motion to Compel should be denied.

**B.**       **Plaintiff's Brief Contains A Material Misrepresentation Regarding Yale's Conduct As To The Production Of Documents.**

In an attempt to imply that the defendants attempted to improperly withhold relevant documents, the plaintiff claims that "critical e-mail exchanges" between then-Provost Salovey and Deputy Provost Frances Rosenbluth "were not produced until after the Court denied the Defendants' motion to halt all further electronic discovery . . ."  (See Plaintiff's Memorandum in Support of Motion to Compel, Document No. 136, p. 3.)  This statement is false.  In fact, the email exchanges to which the plaintiff refers, dated April 28, 2012 and May 8, 2012, were produced to the plaintiff on February 13, 2015 in response to the plaintiff's second request for

production of documents.[1]  The Court's prior order was entered on April 27, 2015, long after the documents were produced on February 13, 2015.  In fact, contrary to plaintiff's brief, these documents were produced even before the defendants filed their motion on February 19, 2015.  The plaintiff's brief is wrong on the facts, and the implication that the defendants acted in a deceitful manner in order to hide relevant documents is unwarranted and misleading.

        **C.**        **The Plaintiff's Requests For Comparative Data Exceeds the Necessary Bounds Of Reasonable Discovery.**

The plaintiff's requests attached as Exhibit A to her Memorandum in Support of Motion to Compel are sweeping in nature.  In addition to the production of personnel files, contract negotiation documents, review committee reports, review committee files, Board of Permanent Officers ("BPO") notes and BPO ballots, the plaintiff seeks production of *all* communications by review committee members, BPO members, the Dean's Office, the Provost's Office, and members of the Yale Corporation,[2] concerning the recruitment, initial committee review, contract negotiations, initial BPO deliberations, appointment, subsequent committee reviews, subsequent BPO deliberations, and subsequent reappointment of each of eleven putative comparators from 1983 to the present.  In essence, compliance would require the production of every piece of paper and electronic document relating to the recruitment, appointment and reappointment of eleven individuals employed by Yale SOM, covering a period of 32 years.  The requests contain no limitations as to relevant custodians (indeed,

---

[1]  Specifically, the documents referenced by the plaintiff were produced as Bates Nos. YU015726 and YU015803.  (See Exhibit A, p. 2, Defendants' response to Request No. 44.)

[2] The members of the Yale Corporation are, in essence, the members of the Board of Trustees of the University. None of them had anything to do with Ms. Bagley's appointment or reappointment.

compliance would require the production of all documents in the possession of Yale University, not just Yale SOM).  The plaintiff's requests, on their face, exceed the "ultimate and necessary boundaries" of reasonable discovery, Oppenheimer Fund, 437 U.S. 340, 351-52 (1978), in that they are "unreasonably cumulative," "burdensome" and "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2).

        "While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  In re Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (citation omitted; internal quotation marks omitted). "[L]imitations are imposed where the discovery is 'unreasonably cumulative or duplicative,' overly 'burdensome . . . [or] expensive' or 'the burden or expense of the proposed discovery outweighs its likely benefit.' Fed. R. Civ. P. 26(b)(2)…"  Vertrue Inc. v. Meshkin, 2006 U.S. Dist. LEXIS 37700, *8-9 (D. Conn. June 8, 2006).  "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries…"  Oppenheimer Fund, 437 U.S. at 351-52 (citations omitted).  A party seeking discovery has the initial burden such that "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  Rubin v. Hirschfeld, 2002 U.S. Dist. LEXIS 26798, at *3, 8 (D. Conn. Feb. 12, 2002) (quoting Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).

        The requests attached as Exhibit A to plaintiff's Motion to Compel are even more unreasonable when it is considered that the defendants have already performed and completed

the ESI review of ten custodians identified by the plaintiff which, as described above, was an expensive, time-consuming and extremely burdensome task.  In essence, what the plaintiff now seeks is an additional phase of ESI review, and one which will be much broader in scope, cover a much longer period of time, will involve a far greater number of custodians, and will require retrieving and reviewing a far greater number of documents.  The plaintiff previously identified ten custodians who possess information relevant to this lawsuit, and the defendants already reviewed and produced the ESI and hard copy documents of those individuals.  While this Court denied the defendants' motion to limit the plaintiff's list of custodians, the Court's Order also states that "[t]his analysis assumes that I have correctly interpreted the scope of Plaintiff's remaining ESI discovery requests, and that such requests will not be materially changed or increased as ESI discovery goes forward."  (See Document No. 131, p. 16.)  The remaining scope referred to by this Court was the completion of the ESI review of four of the ten identified custodians (which has now taken place).  In other words, the Court did not condone the addition of custodians.   Therefore, in light of the work already done, and in light of this Court's previous order, the plaintiff's requests are particularly unreasonable.

The sheer volume of material sought by plaintiff is staggering, and the effort required to uncover this material would be oppressive and enormously expensive.  The information sought by plaintiff relates to eleven individuals: Frank Fabozzi, Jeffrey Garten, Stanley Garstka, Roger Ibbotson, Thomas Kolditz, Loretta Mester, Rakesh Mohan, Jeffrey Sonnenfeld, Ian Shapiro, David Bach and Kyle Jensen.  As Stanley Garstka (1983) and Roger Ibbotson (1984) were both initially appointed by Yale SOM in the mid-1980s, and thereafter were

subject to regular reappointment reviews, the plaintiff's requests cover a period of more than 30 years, and almost 25 years before she began her employment at Yale SOM.[3]  While this time frame on its own renders the plaintiff's requests unreasonable, the requests are particularly unreasonable in light of the fact that they are not limited by custodian.  As such, compliance with this request would require the defendants to search the files and communications of every Yale employee of the last 32 years who may have information as to the recruitment, appointment and/or reappointment[4] of the above individuals.  As an example of the number of people who may fall under these requests, there were 34 members of the BPO at the time of the May 7, 2012 vote on the plaintiff's reappointment.  Since 1999, there have been 50 different BPO members.  (See Exhibit B, Affidavit of Andrew Metrick.)[5]  As this constitutes about half of the time frame covered by the plaintiff's requests, it is not unreasonable to assume that there will be 100 custodians just in terms of BPO members.   Of course, BPO members would only be a subset of relevant custodians under the plaintiff's requests, which also seek "all internal and external correspondence" relating to recruitment and all communications of the BPO, Dean's Office, Office of the Provost and the Yale Corporation relating to appointments and reappointments.  (See Plaintiff's Exhibit A.)  Since 1983 there have been nine different Yale SOM Deans and four different Deputy Deans. The Yale Corporation consists of 19 members appointed to six year terms, and there are currently

---

[3] Ian Shapiro was initially hired in 1984 as an Assistant Professor in the Department of Political Science.

[4] Professors in the Practice at Yale SOM are typically appointed to five year terms.  Appointments and reappointments of Professors in the Practice are voted on by the BPO.

12 Assistant, Associate and Deputy Provosts in the Office of the Provost.  As a result, the number of custodians who may possess information responsive to the plaintiff's requests attached as Exhibit A to her Motion to Compel likely exceeds 100 individuals.  If the plaintiff's present requests -- which are virtually limitless as to subject matter, limitless as to custodians, and cover a period of more than 30 years -- do not satisfy the definition of "burdensome" under Fed. R. Civ. P. 26, then no request ever will.

A closer look at what would be required to comply with the plaintiff's requests only as it relates to Stanley Garstka demonstrates their unreasonableness.  The defendants would need to identify the points in time -- since at least 1983 -- when Professor Garstka was recruited, when his employment contract was initially negotiated, when his initial appointment was considered by the BPO and every time he was considered for reappointment by the BPO (which, over the course of more than 30 years was likely 5 or 6 times).  For each such point in time, the defendants would then need to identify every custodian who may have relevant information.  As the BPO membership changes, and the individuals employed in the Dean's Office and Office of the Provost change as well, the list of custodians is not static over the course of Professor Garstka's tenure.  The list of custodians would include all of the BPO members, the Yale SOM Dean and Deputy Dean.  Perhaps also included in the list of custodians would be employees in the Office of the Provost and members of the Yale Corporation if they had any involvement.  The personnel in each of these offices change

---

[5] Due to a transition to electronic record keeping in 1999, the exact number of different BPO members prior to that time was not readily available.

regularly.  The defendants would then need to query each of the identified custodians for hard

copy documents, in addition to performing an ESI search of each custodian's hard drive and

any backup drives.  As described above, it is estimated that the number of custodians is likely

to exceed 100 people.  In order to ensure that all responsive documents and communications

are obtained, general keywords, such as "renew," "contract" and "reappoint," would need to be

utilized.  Similarly, the name of each person appointed or reappointed -- in this example,

Professor Garstka -- would have to be included.  The result of this will be that the keyword

searches generate tens -- if not hundreds -- of thousands of documents that are non-responsive.

Nonetheless, all of the documents generated by this search will then need to be reviewed

individually in order to determine whether they are responsive and not subject to a claim of

privilege.  This laborious process would result only in documents related to Professor Garstka;

it would then need to be repeated for each of the remaining 10 putative comparators.  Such a

search for a large number of custodians over a period of more than 30 years would likely

produce millions of pages of documents, virtually all of them irrelevant to the present dispute.

    **D.**    **The Plaintiff's Requests Improperly Violate the Privacy Interests of Persons Who Are Not Parties To This Action.**

The plaintiff's requests are particularly improper considering the personal and sensitive

nature of the information sought.  The requested documents contain sensitive critiques of

scholarship and teaching ability of individuals who are not parties to this lawsuit.  The

plaintiff's discovery requests at issue concern information contained in employee personnel

files.  The disclosure of the contents of personnel files is governed by Conn. Gen. Stat. § 31-

128f, which provides in relevant part: "No individually identifiable information contained in

the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except . . . where the disclosure is made . . . (2) pursuant to a lawfully issued . . . judicial order . . . ."  With regard to the disclosure of information contained in a personnel file, Connecticut courts have cautioned as follows:

> "The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case.  Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning … [another], the entire file should not be disclosed.  No . . . [party] has the right to conduct a general 'fishing expedition' into the personnel records of [another]. . . ."

(Citations omitted; internal quotation marks omitted.)  Rosado v. Bridgeport Roman Catholic Diocesan Corp., 1994 Conn. Super. LEXIS 3144, *6-8 (Conn. Super. Ct. December 8, 1994) (Levin, J.), quoting State v. Januszewski, 182 Conn. 142, 172-73, 438 A.2d 679 (1980).  See also Muro v. Yale-New Haven Hosp., 2014 Conn. Super. LEXIS 3044, *6 (Conn. Super. Ct. Dec. 8, 2014) (Wilson, J.).

The Connecticut courts have also advised that careful scrutiny by the trial court is necessary and an *in camera* inspection should take place before the disclosure of information contained in a personnel file:

> Because discovery of matters contained in a . . . personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters shall be disclosed.  An *in camera* inspection of the documents involved, therefore, will under most circumstances be necessary… In resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be

14

> specific and should set forth the issue in the case to which the
> personnel information sought will relate. The trial court should
> make available to the [party] only information that it concludes is
> clearly material and relevant to the issue involved.

(Citations omitted; internal quotation marks omitted.)  Rosado, supra, 1994 Conn. Super. LEXIS 3144, *8.  See also Muro, supra, 2014 Conn. Super. LEXIS 3044, *7; Anderson v. Anderson, 2011 Conn. Super. LEXIS 1896, *8, 2011 WL 3672089 (Conn. Super. Ct. Aug. 1, 2011) (Owens, J.); Zito v. Sports Auth., 2000 Conn. Super. LEXIS 2320, *6 (Conn. Super. Ct. Aug. 28, 2000) (Kocay).[6]

The present plaintiff has done exactly what the courts of Connecticut interpreting the personnel file statute have prohibited; she has made a blanket request for all information contained in the personnel files of individuals who are not parties to this lawsuit.  There is nothing "specific" or "carefully tailored" about the plaintiff's requests.  As described above, she seeks every piece of paper and every electronic document that in any way relates to the appointment of reappointment of eleven different individuals.  Furthermore, while the plaintiff generally describes her need for the information she requests (to "show that the standards and process followed in her reappointment review is at odds with how the SOM conducted the reviews and reappointments of other PIPs."), this description fails to explain why she requires such a staggering amount of information, including every communication by BPO members, the Dean's Office, the Office of the Provost and the Yale Corporation, covering a period of more than 30 years.  The plaintiff claims that she needs to investigate the standards and

---

[6] In accordance with this authority, the defendants request that this Court conduct an *in camera* inspection of any personnel material the defendants are ordered to produce.

processes followed in the appointment and reappointment of other Professors in the Practice. Certainly, there are more efficient ways to obtain such information than through the production of every communication by any Yale employee.  Indeed, the plaintiff has already deposed 18 individuals and obtained this very information through that mechanism.  Even if there were any benefit to be gained through the production of this information it is easily outweighed by the immense burden, described above, of gathering this data.

In the related context of requests for tenure review files, the Federal courts, while permitting the limited disclosure of some information, have applied reasonable and sensible limitations.  For example, in Torres v. City University of New York, 90 Civ. 2278 (CSH), 1992 U.S. Dist. LEXIS 18546 (S.D.N.Y. December 3, 1992), the plaintiff professor claimed that the defendant discriminated against him on the basis of his national origin by refusing to reappoint or promote him to a tenured position.  The plaintiff in Torres was first appointed as an instructor in the Department of Law, Political Science and Criminal Justice at the defendant university in 1980, and his complaint concerned two decisions of the defendant not to reappoint or promote him to a tenured position: one made in 1986 and the other made in 1989. While the plaintiff's discovery demands shifted, he at one time sought the personnel files and review materials of all former members of his department with no limitation as to time frame. Magistrate Judge Katz permitted the production of files involved in the reappointment and tenure review process for the members of the plaintiff's department who were given a second or subsequent reappointment as an assistant professor, promoted to associate professor, or tenured, from 1984 through 1992, Id. at 27-28.  See also Ibrahim v. American University, 1999

16

U.S. Dist. LEXIS 8388 (D.D.C May 20, 1999) (permitting disclosure of tenure review files for the period of five years prior to plaintiff's tenure denial); Weinstock v. Columbia University, 1996 U.S. Dist. LEXIS 16779 (S.D.N.Y. November 13, 1996) (Keenan, J.) (permitting disclosure of the personnel files and tenure dossiers of faculty in certain departments from 1985 through 1996).

While the federal courts permit, with reasonable limitations, the disclosure of tenure review files of non-parties, defense counsel was unable to locate a single federal decision permitting the type of discovery sought here, namely, every single communication and every single shred of paper or electronic data related to the appointment or reappointment of a non-party for a period of thirty two years.  Surely the reason for this is due to the burden that compiling such production would impose, and the limited value added by such information.

     **E.**     **The Information Sought By The Plaintiff Exceeds The Scope Of What Can Properly Be Considered "Comparative Data."**

For an employee to be "similarly situated" for the purpose of supporting a claim of discrimination, the individuals with whom the plaintiff attempts to compare herself must be similarly situated to the plaintiff "in all material respects."  Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).  "[T]he issue of whether fellow employees are similarly situated is somewhat strict."  Brown v. Middaugh, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999).  "Employees are not 'similarly situated' merely because their conduct might have been analogized."  Mazzella v. RCA Global Commc'ns, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986).  Rather, to be similarly situated, the "other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing

performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Id. (citations omitted). See, e.g., Gannon v. UPS, 2013 U.S. App. LEXIS 14319, *104 (2d Cir. July 16, 2013) (three employees who worked in a different division and were disciplined by a different division manager than the plaintiff were not similarly situated as a matter of law); Iuorno v. DuPont Pharms. Co., 129 Fed. App'x 637, 641 (2d Cir. Jan. 31, 2005) (where allegedly comparable employees reported to a different supervisor than the plaintiff they were not similarly situated to the plaintiff for the purposes of establishing an employment discrimination claim); Roa v. Mineta, 51 Fed. App'x 896, 899 (2d Cir. Oct. 23, 2002) (employees not similarly situated as a matter of law "because their duties and responsibilities were materially different"); John v. Bridgeport Bd. of Educ., 2011 U.S. Dist. LEXIS 29154, *61 (D. Conn. Mar. 22, 2011) (citing Mazzella and holding that allegedly comparable job interviewees were not similarly situated as a matter of law).

It is well established that employees who were the subject of employment actions temporally remote from the conduct complained of by the plaintiff cannot be considered comparators for the purpose of proving discrimination. See Lee v. Kan. City S. Ry. Co, 574 F.3d 253, 259-260 (5th Cir. 2009) ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions *too remote in time* from that taken against the plaintiff generally will not be deemed similarly situated.") (emphasis added).  See also Tibbs v. Calvary United Methodist Church, 505 F.

App'x 508, 515-16 (6th Cir. 2012) (concluding that "comparators were not similarly situated in that there is no temporal nexus to the events here" when disciplinary decisions concerning comparators were seven months to two years removed from plaintiff's termination); Hurst v. District of Columbia, 2015 U.S. Dist. LEXIS 33623, *21-23 (D. Md. Mar. 16, 2015)(holding that events concerning other employees which occurred five, seven and 12 years prior to the plaintiff's termination were "too temporally remote to support an inference of discrimination, and therefore these employees do not qualify as similarly situated."); Epps v. First Energy Nuclear Operating Co., 2013 U.S. Dist. LEXIS 41140, 2013 WL 1216858, at *19 (W.D. Pa. Mar. 25, 2013) (concluding that the disciplinary incident involving the comparator was "too remote in time from [plaintiff's] incident, which occurred more than four and a half years later . . . to raise a reasonable inference of discrimination"); Newton—Haskoor v. Coface N. Am., 2012 U.S. Dist. LEXIS 68972, 2012 WL 1813102 at *5 (D.N.J. May 17, 2012) (concluding that "the nature of the parties' alleged behavior is too dissimilar and the time periods in which the behaviors occurred [approximately two years apart] are too remote to conclude the two were 'similarly situated' so as to permit the inference [of discrimination] advanced by Plaintiff").

The information sought by the present plaintiff exceeds the scope of what can properly be considered comparative data of similarly situated employees. For example, three of the putative comparators - - Professor Shapiro, Dean Jensen and Dean Bach - - are not similarly situated to the plaintiff "in all material respects" because they were not Professors in the Practice. Shumway, supra, 118 F.3d at 64. Dean Jensen is an associate dean, lecturer and the

Director of Entrepreneurship.  Dean Bach is a Senior Associate Dean and Senior Lecturer.  As such, their duties, responsibilities and standards governing performance differed from that of the plaintiff.  Professor Shapiro is a tenured professor, and not in the Yale SOM, but rather in the Department of Political Science.  (See Exhibit B.)  He and the plaintiff, therefore, also do not report to the same supervisor.  Certainly, an employee who has a different title and works in a different department from the plaintiff cannot be considered similarly situated.

The plaintiff is certainly not without ample information regarding Professor Shapiro, Dean Jensen and Dean Bach.  Dean Bach and Professor Shapiro were both identified by the plaintiff as custodians and their ESI has been produced.  Dean Bach was deposed on November 28, 2014 and defendant provided documents in response to the production requests included in his subpoena prior to his deposition.  This included documents in response to a request for "[a]ny and all documents and communications that concern or relate to your recruitment and hiring by Yale SOM, including without limitation any personal e-mail communications with the Yale SOM faculty or staff prior to hiring …"  (See Exhibit C.) "Jensen" was a search term used in searching the ten custodians ESI and information relating to Dean Jensen's recruitment and hiring has been included within the defendants' ESI production.   Professor Shapiro's deposition has been scheduled for October 28, 2015, and plaintiff's counsel can obtain further information from him at that time.

Much of the information sought by the plaintiff -- even as it relates to other Professors in the Practice -- is also far too temporally remote to be considered comparative data.  As described above, the plaintiff seeks information relating to the recruitment, appointment and

reappointment of other Professors in the Practice dating back to 1983.  This information, which covers a period of almost 30 years before the vote not to reappoint the plaintiff, which forms the basis of this lawsuit, has no "temporal nexus" to the events at issue in this case. Tibbs, supra, 505 F. App'x at 515-16.  The composition of the BPO, which considers the appointment and reappointment of Professors in the Practice, changes over time.  As a result, the decision makers involved in the appointment or reappointment of Professors in the Practice in the 30 years prior to the vote on the plaintiff's reappointment are different from those who considered the plaintiff's reappointment in 2012.  (See Exhibit B.)  Information concerning the deliberations and communications of different decision makers considering different candidates over the course of many years before the plaintiff was even hired simply has no relevance to the present matter and cannot be considered comparative data.

### F.      The Plaintiff's Personnel File Has Already Been Produced.

Plaintiff's present motion also seeks to compel the production of plaintiff's personnel file.  In fact, defendants already provided that information to the plaintiff on August 7, 2014 (See Exhibit D).  Prior to the plaintiff's motion to compel, plaintiff's counsel gave no indication that they believed this information had not been supplied.  If plaintiff's counsel believes that the defendants' production of the personnel file was somehow deficient, the discovery rules, as noted above, require that they have a contact with defense counsel in an effort to resolve that dispute prior to seeking the intervention of the court.  That was not done in this case, and the motion to compel production of the personnel file should be denied.

G.     **Plaintiff Is Not Entitled To Attorneys' Fees Or Costs.**

There is no basis for an award to the plaintiff of attorneys' fees or costs in connection with her motion to compel, nor does the plaintiff make any attempt to articulate the grounds for such an award.   The information that the plaintiff now seeks has never before been requested of the defendants, so there has been no failure to comply.   Furthermore, under Conn. Gen. Stat. § 31-128f, defendants were required to contest disclosure of materials the plaintiff now seeks and the plaintiff's requests clearly exceed the bounds of reasonable discovery.

IV.    **CONCLUSION**

Despite the exceedingly large volume of documents that have been searched, reviewed and produced by the defendants, the plaintiff, through the present Motion to Compel, essentially seeks an additional phase of ESI and document review, and one which will be much broader in scope than what has already been performed.   The plaintiff seeks this information even though this Court has previously indicated that it did not condone the addition of custodians beyond the ten initially identified by the plaintiff.   (See Document No. 131, p. 16.)   The requests with which the plaintiff seeks compliance, attached as Exhibit A to her Motion to Compel, had never been served on the defendants until being attached to the motion itself.   The Motion to Compel should therefore be denied for this reason alone, as the plaintiff has not complied with Fed. R. Civ. P. 37 and Rule 37 of the Local Civil Rules.   Even if plaintiff had complied with Rule 37, the Motion to Compel should nonetheless be denied as the plaintiff's discovery requests are unreasonable in scope due to the fact that they cover a time period of 32 years and involve the data of what will likely be in excess of 100 custodians.   These requests are particularly

unreasonable when it is considered that compliance would require the production of the protected personnel information of individuals who are not parties to this lawsuit.   Therefore, for the reasons stated herein, the plaintiff's Motion to Compel should be denied.  If this Court does order the production of any personnel information, however, the defendants request that such information is reviewed *in camera* prior to disclosure to the plaintiff.

THE DEFENDANTS
YALE UNIVERSITY, DOUGLAS RAE,
EDWARD SNYDER and ANDREW
METRICK, Individually


BY:___/s/ Patrick M. Noonan  (#ct00189)___
Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

## **CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan