UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE E. BAGLEY, | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 3:13-cv-01890 (CSH) |
| YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER, AND ANDREW METRICK, Individually, | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO THE DEFENDANTS' OBJECTION TO HER MOTION TO COMPEL DEFENDANT YALE UNIVERSITY TO PRODUCE DOCUMENTS**

Pursuant to D. Conn. Local Rule 7(d), Plaintiff Constance E. Bagley ("Professor Bagley") submits this Reply to the Defendants' Objection to her Motion to Compel Defendant Yale University to Produce Documents.

Through their Objection, the Defendants seek to convince the Court to deny Professor Bagley's Motion to Compel based on an overly broad reading of the requests Professor Bagley attached as Exhibit A to her Memorandum in Support of the Motion to Compel, and their erroneous claim that the requests were never made. However, as set forth more fully herein, Professor Bagley's Motion seeks comparative evidence related to a very narrow group of individuals (eleven professors) and finite events (their appointments or reappointments) that occurred during timeframes that are easily ascertainable by the Defendants. Additionally, contrary to the Defendants' representations, the Motion addresses discovery Professor Bagley has attempted to obtain from the Defendants for well over a year.

For these reasons, the Defendants' Objection to Professor Bagley's Motion to Compel

1

should not be sustained.[1]

**I.   BACKGROUND**

Professor Bagley commenced this action on December 20, 2013. On March 20, 2014, the Defendants moved to dismiss her Complaint. Following a telephone conference, on March 21, 2014, the Court ordered a stay of depositions pending the Court's ruling on the motion, but allowed the parties to proceed with document requests. Discovery was, at this juncture, governed by the Court's Initial Discovery Protocols for employment cases. See Dkt. No. 30.[2]

Professor Bagley served her First Request for Production of Documents on July 8, 2014. Exhibit A, Pl.'s First Request for Production of Documents. The Request specifically called for the production of documents related to highly relevant topics, including her comparators. See id. No. 33 (seeking "[a]ny policies, procedures, or reports relating to the contract renewal, including the process for determining whether an individual should be reappointed, of Professors in the Practice at Yale SOM, as well as the standards applied in each instance"); No. 34 (seeking "[t]he minutes of all BPO meetings, including any draft meetings, at which a vote was taken on the reappointment of a Professor in the Practice at Yale SOM, as well as any notes, voice recordings or videos relating to such meeting").[3]

The Defendants objected to Professor Bagley's requests on August 18, 2014, in part, based on relevance, undue burden, and the Connecticut Personnel Files Act and ultimately never changed their position. See Exhibit B, Def.'s Corrected Objections, Nos. 13-14, 33-34. Thus,

---

[1] It should be noted that the Defendants are correct in noting Plaintiff's mistaken belief that the e-mail exchanges between Provost Salovey and Deputy Provost Rosenbluth, which were, in fact, produced on or about February 13, 2015, had not been produced until after the Court's order on April 27, 2015. See Defs.' Objection, at 7. These "needles" in the haystack were culled from more than 24,000 pages produced leading up to the date Plaintiff filed her February 19th Motion.

[2] The Protocols encourage "parties and their counsel to exchange the most relevant information and documents early in the case, to assist in framing the issues to be resolved and to plan for more efficient and targeted discovery." Protocols, at 1.

[3] The Request also sought information related to the recruitment, hiring, and qualifications of David Bach, Ian Shapiro, and Kyle Jensen. Exhibit A, Nos. 12-14.

while they produced some documents from Professor Bagley's own personnel file and BPO meeting materials concerning her reappointment, they did not provide the same information concerning her comparators.

On January 14, 2015, Professor Bagley served her Second Request for Production of Documents, wherein she requested, among other documents, "[t]he complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred." Exhibit C, Pl.'s Second Request for Production of Documents, No. 47.  The Defendants objected on February 14, 2015, arguing that the request was overbroad, burdensome, unlimited in scope of time, not designed to lead to relevant, admissible evidence, and in violation of the Connecticut Personnel Files Act. See Exhibit D.  After the Defendants refused, yet again, to disclose comparator information, Professor Bagley's counsel conferred with the Defendants' counsel by phone and in writing, to no avail.  See Exhibit E, February 24, 2015 Letter from Emily Nelson, Esq. to Patrick Noonan, Esq.; Exhibit F, E-mail correspondence between Nelson and Matthew Geelan, Esq., dated March 9 – April 10, 2015.

Over a year has passed, and Yale still refuses to give Professor Bagley access to discovery related to the personnel files and other comparative data she needs to rebut Yale's alleged non-discriminatory motive for refusing to renew her appointment.  While Yale has, since its first production on July 20, 2014, produced over 55,000 pages of documents, several of those documents include duplicative or wholly irrelevant information.[4]  Of the documents that are relevant, many were produced without any organization whatsoever, thus making it difficult for

---

[4] In a letter dated July 30, 2014, counsel for the Defendants acknowledged that the Defendants had produced "literally thousands of pages of documents, most of them completed unrelated to any issue in this lawsuit." Exhibit G.  Additionally, by May 2015, the Defendants had produced approximately 4,000 pages of duplicates.

3

Professor Bagley to obtain the information she needed.[5] Others were not timely produced, arriving either just days before a scheduled deposition or long after.[6]

Remarkably, the Defendants now seek to avoid their obligation to produce documents responsive to Professor Bagley's reasonable requests by essentially arguing that they have done enough. This argument should fail.

## II.   ARGUMENT

### a.  The Discovery Requests At Issue Are Reasonably Narrow In Scope

The Defendants argue that Professor Bagley's request for personnel files and other comparative evidence relating to the appointments and reappointments of her comparators should be denied because they "sweeping in nature" and unreasonable in light of the effort they have expended in responding to Professor Bagley's requests to date. See Defs.' Objection, 8-13. These claims are without merit.

Professor Bagley's Motion to Compel seeks discovery of material from personnel files and other comparative documents concerning the appointments and reappointments of a narrow group of individuals – Frank Fabozzi, Jeffrey Garten, Stanley Garstka, Roger Ibbotson, Thomas Kolditz, Loretta Mester, Rakesh Mohan, Jeffrey Sonnenfield, Ian Shapiro, David Bach, and Kyle Jensen, all of whom are Professor Bagley's comparators.[7] The requests are within the ambit of

---

[5] For example, the Defendants' July 30, 2014 production included thousands of pages, divided into three discs for Defendant Rae, Defendant Metrick, and Defendant Snyder. The documents were not bates numbered, and were not associated with any of Professor Bagley's specific requests. The Defendants subsequently served additional productions without Bates numbers. Most recently, on the evening of October 26, 2015, the Defendants served copies of 35 versions of core curriculum reports, some of which contained redlines. The reports ranged from 11 to 28 pages each and were not Bates numbered or organized by author/editor.

[6] For example, a document containing Stanley Garstka's notes to Joel Podolny regarding the terms of Professor Bagley's contract was not produced until on or around April 23, 2015, five working days before Garstka's deposition. Additionally, State & Society course evaluations of Ian Shapiro's teaching from 2013 onward were not produced until October 14, 2015, more than seven months after his co-teacher, Defendant Rae's deposition, and nine working days before Shapiro's scheduled deposition. Furthermore, as of the date of this Reply, the Defendants still have not confirmed whether they have completed their productions of *all* responsive information from the files of Camille Costelli and Sheril Frano, Yale employees who are scheduled to be deposed on November 3, 2015.

[7] The Defendants attempt to distinguish Ian Shapiro, Kyle Jensen, and David Bach from Professor Bagley because

4

reasonable discovery because they seek information Professor Bagley needs to rebut Yale's alleged non-discriminatory motive for refusing to renew her appointment as a Professor in the Practice. See Ruran v. Beth El Temple of West Hartford, Inc., 226 F.R.D. 165, (D. Conn. 2005) (personnel files are relevant to claims of disparate treatment). They are also reasonable in scope because they seek very specific material (such as correspondence, notes, ballots, and meeting minutes) from finite time periods that relate only to the appointment or reappointment of the individuals referenced above.

The Defendants' argument that compliance with Professor Bagley's requests would require production of documents "covering a period of 32 years" is of no moment, as is their claim that Professor Bagley "seeks … an additional phase of ESI review." See Defs.' Objection, at 10-11. As an initial matter, Professor Bagley has not asked Yale to "search the files and communications of every Yale employee over the last 32 years." See Defs.' Objection, at 11. Rather, she has asked that Yale identify the specific time periods during which each comparator was appointed or considered for reappointment and gather relevant documents from the narrow group of individuals who were involved in the appointment committee or serving on the BPO during the relevant timeframe.

For example, in the case of Stanley Garstka, whose employment at Yale dates back to the

---

they are not PIPs. See Defs.' Objection, at 19. However, the law does not require that comparators be identical. See McKinney v. Dep't. of Transp. For Conn., No. 3:06-cv-2055 (WWE), 2010 WL 1883427, at *4 (D. Conn. May 11, 2010). Nor does it necessarily require that they report to the same supervisor. See Berube v. Great Atl. & Pac. Tea Co., Inc., 348 Fed. Appx. 684, 686 (2d Cir. 2009) (the fact that employees had a different supervisor did not, in itself, preclude plaintiff from showing he was subject to the same standards and procedures). Rather, there must be a "reasonably close resemblance" of circumstances. See McKinney, 2010 WL 1883427, at *4. Here, Professor Shapiro replaced Professor Bagley in co-teaching the exact same State and Society course she taught at the SOM along with Defendant Rae. Similarly, Dean Bach replaced Professor Bagley in teaching State and Society in a pre-MBA program. Finally, Kyle Jensen was selected to fill a position for which Professor Bagley was qualified but summarily overlooked. Even assuming, *arguendo*, that the Defendants could show these individuals are not similarly situated, they were reassigned Professor Bagley's responsibilities or chosen for positions for which Professor Bagley alleges she was more qualified. On that basis alone, information in their personnel files is relevant and discoverable. See Sperling v. Harman Int'l Indus., 2011 U.S. Dist. LEXIS 103455, at *5 (S.D.N.Y. Sept. 14, 2011) (plaintiff's claim that his duties were reassigned to younger, less qualified employees supported relevance of their personnel files).

1980s, information concerning his 1983 appointment may be obtained through searches of Garstka's and then-Dean Burton Malkiel's files from February through June 1983, and information concerning his 1992 review may be obtained through searches of Garstka's, Jon Ingersoll's, Steve Ross', and Paul Bracken's files, and BPO meeting materials from January through February 1992.  See Exhibit H, select material from Garstka's personnel file.  The same approach can be taken in other cases, such as that of Frank Fabozzi, who, for example, obtained an extension of his appointment in 2010.  Documents related to that particular extension may be found by searching the files of the review committee – Roger Ibbotson, William Goetzmann, and Jonathan Ingersoll – from February through April 2010.  See Exhibit I, select material from Fabozzi's personnel file.  Relevant here, Fabozzi's files include references to his earlier appointment, in 2006, and includes the names of the individuals who were responsible for that review.  See id.  Thus, personnel files to which Yale already has access include all necessary information Yale will need to identify the appropriate sources and time periods for the information Professor Bagley seeks.

      In light of the above, Yale can identify and is, in fact, in the best position to identify and provide documents responsive to Professor Bagley's reasonably tailored requests.  Additionally, Yale is also in the best position to affirm, where applicable, that "no such documents exist" pertaining to any given comparator.[8]  Thus, Yale should be compelled to produce documents responsive to Professor Bagley's request for personnel file information and other comparative evidence, and should be required to provide an affirmation in the event such documents do not exist.  See Hannah v. Wal-Mart Stores, Inc., Civ. No. 3:12CV1361(JCH), 2014 WL 2515221, at *2 (D. Conn. June 3, 2014) (requiring sworn statements that, "despite a diligent search, no

---

[8] For example, if there are no notes of BPO meetings or votes on other Professors in the Practice, Professor Bagley is entitled to be so advised.

6

responsive documents were found," or "after a diligent search, all responsive documents have been produced").

### b. Plaintiff Complied With Fed. R. Civ. P. 37 Prior to Filing Her Motion

The Defendants argue that Professor Bagley's Motion to Compel should not stand because it seeks compliance with new discovery requests that "have never been served on the defendants." See Defs.' Objection, at 6. The Defendants also claim that Professor Bagley's counsel did not confer with their counsel prior to filing the Motion. Id., at 7. This is simply not the case.[9]

As set forth above, Professor Bagley's First Request for Production of Documents, which was served on July 8, 2014, specifically called for the production of documents of comparator information. Request No. 33 sought "[a]ny policies, procedures, or reports relating to the contract renewal, including the process for determining whether an individual should be reappointed, of Professors in the Practice at Yale SOM, as well as the standards applied in each instance." Request No. 34 sought "[t]he minutes of all BPO meetings, including any draft meetings, at which a vote was taken on the reappointment of a Professor in the Practice at Yale SOM, as well as any notes, voice recordings or videos relating to such meeting." Exhibit A, Pl.'s First Request for Production of Documents, Nos. 33-34.[10] Additionally, Requests 13-14 sought information regarding the recruitment, hiring, and qualifications of David Bach and Kyle Jenson. See id.

---

[9] To the contrary, the Defendants have not fully complied with the federal rules governing discovery. See Fed. R. Civ. P. 34(b)(2)(E). Rule 34(b)(2)(E) requires parties to "produce documents as they are kept in the usual course of business" or "organize and label them to the categories in the request." Courts have noted that the purpose of this rule is "'to prevent parties from 'deliberately … mix[ing] critical documents with others in the hope of obscuring significance.'" See Hannah, 2014 WL 2515221, at *2 (where plaintiffs did not present evidence suggesting they produced documents as kept in the usual course of business, plaintiffs were required to amend their discovery responses by identifying, by bates number, documents responsive to each request) (quoting Johnson v. Kraft Foods N. Am., 236 F.R.D. 535, 540 (D. Kan. 2006).

[10] The Request also sought information related to the recruitment, hiring, and qualifications of David Bach, Kyle Jensen, and Ian Shapiro. Exhibit A, Pl.'s First Request for Production of Documents, Nos. 12-14.

Professor Bagley's Second Request for Production of Documents also addresses material that is the subject of her Motion to Compel. She expressly requested "[t]he complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred." Exhibit A, Pl.'s Second Request for Production of Documents, No. 47. These requests, which counsel for the parties repeatedly discussed, call for production of the very same types of documents, communications, ballots, and other data set forth in Exhibit A to Plaintiff's Motion to Compel. Consequently, the Defendants' objection to the Motion to Compel based on Professor Bagley's purported failure to comply with Rule 37 should not be withheld.

### c. Adequate Protections are in Place to Ensure Privacy of the Comparators' Files

The Defendants argue that Professor Bagley's reasonably tailored requests are improper in light of the personal and sensitive information sought regarding non-parties to this action. See Defs.' Objection, at 13. This argument lacks merit.

As set forth more fully in Professor Bagley's Motion to Compel, Connecticut law permits disclosure of the information in response to requests that seek documents relevant to legitimate issues in a case. See Ruran, 226 F.R.D. at 169. Furthermore, the privacy of the comparators can be maintained through the confidentiality agreement, to which Professor Bagley has already agreed. See Sperling, 2011 U.S. Dist. LEXIS 1034455, at *4 (recognizing that no "rigid rule" prohibits discovery of personnel files and "a protective order can 'appropriately remedy privacy concerns arising from discovery of personnel records'").

Moreover, discovery conducted to date reveals that this argument is also belied by the Defendants' own disclosures. Specifically, Yale has already produced the following documents

related to Professor Bagley's comparators who hold or have also held the title of PIP:

1. Stanley Garstka: 1983 offer and acceptance letters, document reflecting vote confirming PIP appointment for 2003-2008, 1992 correspondence regarding Garstka's review;

2. Frank Fabozzi: 2006 PIP appointment committee report, document reflecting vote confirming PIP appointment for 2007-2011, 2010 correspondence regarding upcoming renewal, 2010 renewal committee report;

3. Thomas Kolditz: 2012 letter confirming vote of appointment as PIP for five-year term, beginning July 1, 2012, and 2012 PIP appointment committee report;

4. Rakesh Mohan: 2009 letter confirming PIP appointment for three-year term, from July 2010-June 2013, and 2009 PIP Appointment committee report;

5. Loretta Mester: 2006 letter confirming appointment as PIP for five-year term, beginning July 2006, and 2006 appointment committee report

6. Jeffrey Gaarten: 2005 letter confirming PIP appointment through June 2015

7. Roger Ibbotson: 1983 letter expressing interest in working at Yale and Yale's response, 1984 letters confirming PIP appointment for a five-year term, 1984 document reflecting vote confirming PIP appointment for five-year term, beginning July 1984, 1984 letter confirming Ibbotson's acceptance of employment offer, 1987 correspondence confirming Ibbotson's upcoming review, 1998 letter regarding Ibbotson's employment status at SOM, and 2008 document summarizing review of Ibbotson for PIP renewal; and

8. Jeffrey Sonnenfeld: 2000 committee report on PIP appointment, 2004 PIP appointment committee report, and 2005 letter confirming BPO vote to extent two consecutive five-year appointments as a PIP.

In light of these prior disclosures and the parties' existing confidentiality agreement, Yale should be barred from refusing to provide complete disclosures of comparator data on the basis of privacy.

## II.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her Motion

9

to Compel Defendant Yale University to Produce Documents.  Plaintiff also requests that the Court consider appropriate sanctions for Yale's dilatory tactics in the course of discovery, including reasonable attorneys' fees related to such tactics that have caused Plaintiff to incur unnecessary time and expense seeking reasonable discovery related to her claims and Yale's defenses.

    Respectfully Submitted,
Constance E. Bagley
BY HER ATTORNEYS,

/s/ Laura R. Student /car
Laura R. Studen, Esq.
lstuden@burnslev.com
Ellen J. Zucker, Esq.
ezucker@burnslev.com
Neerja Sharma, Esq.
nsharma@burnslev.com
Carla A. Reeves, Esq.
creeves@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
617-345-3000

Dated: October 27, 2015

**CERTIFICATE OF SERVICE**

      I hereby certify that, on October 27, 2015, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

      /s/ Carla A. Reeves
      Carla A. Reeves

4819-3529-5530.1