# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE E. BAGLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 3:13-cv-01890 |
| ) | |
| YALE UNIVERSITY, DOUGLAS ) | |
| RAE, EDWARD SNYDER, AND ) | |
| ANDREW METRICK, Individually. ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## PROPOUNDED ON DEFENDANT YALE UNIVERSITY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26, the Plaintiff, Constance E. Bagley ("Professor Bagley" or "Plaintiff"), hereby requests that all documents and tangible things described below be produced for inspection or copying, within thirty (30) days from the date of this request, at the offices of Burns & Levinson LLP, 125 Summer Street, Boston, Massachusetts 02110. This request is intended to supplement, and not replace, the document production expressly mandated by the Initial Discovery Protocols for Employment Cases Alleging Adverse Action endorsed by the Court in this action.[1] See Dkt. 30.

## TIME FRAME

Unless otherwise specified, the time period governing the below Requests is January of 2006 to the present.

---

[1] This Protocol already requires Defendants to produce, *inter alia*, documents concerning the formation and termination of Plaintiff's employment, her personnel file, evaluations, workplace policies and codes of conduct, documents concerning investigations of the Plaintiff's complaints and communications relevant to the actions in the lawsuit. Plaintiff notes that certain Requests contained herein may be more specific requests that fall within the categories required by the Protocol.

1

Spangler, concerning or relating to Professor Bagley, "State and Society," or the standards for reappointment of Professors in the Practice at Yale SOM.

**Request No. 7**

All documents and communications between you, including without limitation Peter Salovey, Frances McCall Rosenbluth, or Stephanie Spangler, and former Yale President Richard Levin, concerning or relating to Professor Bagley, "State and Society," or the standards for reappointment of Professors in the Practice at Yale SOM.

**Request No. 8**

All communications between Richard Levin and Professor Bagley.

**Request No. 9**

All documents and communications relating to one or more of the following Yale SOM courses: "State and Society," "Legal Aspects of Entrepreneurship," "Law for Executives," and "Managing Legal and Regulatory Complexity."

**Request No. 10**

All documents prepared by and all communications with Provost Ben Polak concerning or relating to Professor Bagley, "State and Society," or the standards for reappointment of Professors in the Practice at Yale SOM.

**Request No. 11**

All documents and communications regarding Yale's decision to remove Professor Bagley from teaching the core course "State and Society" in or around 2012.

**Request No. 12**

All documents and communications regarding Yale's decision to have Professor Ian Shapiro co-teach "State and Society" with Douglas Rae.

**Request No. 13**

All documents and communications regarding the selection and hiring of David Bach by Yale

SOM, including without limitation his interview schedule, as well as the decision to have him

teach "State and Society" in the Executive MBA Program at Yale SOM.

**Request No. 14**

All documents and communications concerning the search for a Director of Entrepreneurial

Programs at Yale SOM (or a comparable position), including without limitation all documents

and communications related to the recruitment and selection of Kyle Jensen to fill the position of

Director of Entrepreneurial Programs at Yale SOM.

**Request No. 15**

All documents and communications concerning Professor Bagley's application to the position of

Director of Entrepreneurial Programs (or a comparable position) at Yale SOM, including without

limitation, all communications with prospective outside reviewers and any written responses

therefrom.

**Request No. 16**

All documents and communications concerning the criteria for, applications to, or candidates for

the Theodore Nierenberg Chair (also known as the Theodore Nierenberg Professorship),

including without limitation the interview schedules of all candidates invited to give "job talks"

at Yale SOM and all documents and communications relating to any such candidates.

**Request No. 17**

All documents and communications concerning Professor Bagley's application for the Theodore

Nierenberg Chair and/or faculty director of the Millstein Center for Corporate Governance and

Performance, including without limitation her request for a meeting with search committee chair

founding of Yale SOM and the dates and duration of their initial and any renewed appointments, including the gender, age, rank, and title of each such individual at the time of the initial appointment and any renewed appointments.

**Request No. 31**

All documents listing, containing, or referencing statistics on diversity and diversity hiring, retention, and promotion at Yale SOM from January 1, 2007, to the present.

**Request No. 32**

A copy of the report produced as a result of the 2014 Diversity Summit at Yale ("2014 Summit"), as well as any data collected in preparation for drafting the report and any documents provided to the participants in the 2014 Summit.

**Request No. 33**

Any policies, procedures, or reports relating to the contract renewal, including the process for determining whether an individual should be reappointed, of Professors in the Practice at Yale SOM, as well as the standards applied in each instance.

**Request No. 34**

The minutes of all BPO meetings, including any draft minutes, at which a vote was taken on the reappointment of a Professor in the Practice at Yale SOM, as well as any notes, voice recordings or videos relating to such meeting.

**Request No. 35**

All documents and communications concerning the dispersing or distribution of Professor Bagley's responsibilities, including without limitation her teaching responsibilities, upon or after her termination from Yale SOM.

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE BAGLEY | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:13 CV 1890  (CSH) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, DOUGLAS RAE, | : | |
| EDWARD SNYDER and ANDREW | : | |
| METRICK, Individually | : | |
| | : | AUGUST 18, 2014 |

## DEFENDANT, YALE UNIVERSITY'S, CORRECTED OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants hereby file these Corrected Objections to Plaintiff's First Request for Production of Documents, in order to correct a mistake made by defense counsel in the Objections to Plaintiff's First Request for Production of Documents dated August 7, 2014. Specifically, the prior Objections indicated that the three DVD's produced by the defendants contained 20.8 gigabytes of data.  In fact, the three DVD's contained 300 megabytes of data, which is the equivalent of 33,000 pages of email text.  The August 7, 2014 Objections should have read as follows:

The defendant, Yale University, hereby objects to the plaintiff's First Request for Production of Documents dated July 8, 2014.

## TIME FRAME

Unless otherwise specified, the time period governing the below Requests is January of 2006 to the present.

extent possible, identify any portion(s) that cannot be so produced and specify the reasons for your inability to produce said portion(s).

## GENERAL OBJECTIONS

1.    Defendant objects to the extent that materials sought are covered by the attorney-client privilege.

2.    Defendant objects to the extent that information is protected by the work product privilege.

3.    Defendant objects to the extent that the discovery requested is duplicative, overbroad, burdensome, readily obtainable from another source that is more convenient or less expensive, and/or the burden of responding is outweighed by the likely benefit, within the meaning of Fed R. Civ. P. 26(b)(2).

4.    Defendant objects to the plaintiff's "Instructions" and "Definitions" to the extent that these are inconsistent with the Federal Rules of Civil Procedure.

5.    Defendant objects on the ground that the time period reflected in plaintiff's discovery requests – January, 2006 to the present – is unreasonably long.  In this regard, defendant notes that the first claim of an adverse employment action was May, 2012. Accordingly, the timeframe should be no longer January, 2012 to present.

6.    Defendant objects to all of plaintiff's discovery requests on the ground that the ESI search terms requested by the plaintiff are unreasonably broad and have resulted in the collection of literally thousands of pages of irrelevant documents.  In this regard, defendant notes the following:

- In response to the Court's order on Initial Disclosures, counsel for plaintiff and defendant consulted on ESI search terms and a date for the commencement of discovery.  The date requested by the plaintiff was January 1, 2007 to present. Plaintiff requested that the files of a large number of employees of Yale University be searched for a number of ESI terms.  Defendant then in fact carried out that search.

- The result of the search requested by the plaintiff in response to the Initial Disclosures led to the production by the defendant of three large-capacity DVD's containing 300 megabytes of data, which were divided into 37,991 separate files. According to Lexis Nexus, 300 megabytes of data equals 33,000 pages of email text.

- A large number of the defendant's staff members in the IT Department and in the Office of General Counsel collectively spent hundreds of hours assembling and

reviewing this material. It is estimated that more than 99% of the materials are completely irrelevant to the subject matter of the present dispute. Nevertheless, it has been turned over to plaintiff's counsel.

- Following the production of the 33,000 pages of material, defense counsel consulted with plaintiff's counsel about compliance with the plaintiff's Production Requests and suggested that the parties agree on a method for reducing the volume of documents and the enormous commitment of time to review and produce them.

- Rather than reduce the amount of the defendant's commitment, plaintiff's counsel added additional ESI search terms and then insisted that the search be conducted for an additional year, i.e. starting in January of 2006, rather than January of 2007. This insistence on a longer time period was made despite the fact that the first claim of an adverse employment action occurred in May, 2012. Furthermore, plaintiff's counsel stated that she was unwilling to agree that whatever search terms and time period were agreed upon would be final. She wished to reserve the right to request additional search terms for additional periods of time.

- Under these circumstances, defendant objects to embarking upon any additional search until such time as the Court has determined the period of time for searching of documents and the ESI search terms. Defendant should not be required to make multiple searches of computerized documents.

**BY WAY OF PRODUCTION REQUEST:**

    1.    All documents and communications between or among Edward Snyder, Douglas Rae, Andrew Metrick, Geert Rouwenhorst, Joel Podolny, and Stanley Garstka concerning or relating to Professor Bagley.

**OBJECTION:**    **See general objections.**

    2.    All documents and communications between or among Edward Snyder, Douglas Rae, Andrew Metrick, Geert Rouwenhorst, Joel Podolny, and Stanley Garstka concerning or relating to the Yale SOM course "State and Society."

**OBJECTION:**    **See general objections. Defendant also objects on the ground that this request will generate a large quantity of documents which are neither relevant nor likely to lead to the discovery of relevant evidence. Accordingly, the burden of responding to this request is substantially outweighed by the likely benefit. See Fed.R.Civ. p.26(b)(2)**

9.     All documents and communications relating to one or more of the following Yale SOM courses: "State and Society," "Legal Aspects of Entrepreneurship," "Law for Executives," and "Managing Legal and Regulatory Complexity."

**OBJECTION:**     **See objection to Production Request #2 above.**

10.     All documents prepared by and all communications with Provost Ben Polak concerning or relating to Professor Bagley, "State and Society," or the standards for reappointment of Professors in the Practice at Yale SOM.

**OBJECTION:**     **See objection to Production Request #2 above.**

11.     All documents and communications regarding Yale's decision to remove Professor Bagley from teaching the core course "State and Society" in or around 2012.

**OBJECTION:**     **See general objections.**

12.     All documents and communications regarding Yale's decision to have Professor Ian Shapiro co-teach "State and Society" with Douglas Rae.

**OBJECTION:**     **See general objections.**

13.     All documents and communications regarding the selection and hiring of David Bach by Yale SOM, including without limitation his interview schedule, as well as the decision to have him teach "State and Society" in the Executive MBA Program at Yale SOM.

**OBJECTION:**     **See general objections.  Defendant further objects on the ground that compliance would violate the privacy interests of an individual who is not a party to this litigation and on the ground that compliance with this request would violate the provisions of Conn.Gen.Stat. § 31-128f.**

14.     All documents and communications concerning the search for a Director of Entrepreneurial Programs at Yale SOM (or a comparable position), including without limitation all documents and communications related to the recruitment and selection of Kyle Jensen to fill the position of Director of Entrepreneurial Programs at Yale SOM.

**OBJECTION:**     **See objection to Production Request #13 above.**

15.     All documents and communications concerning Professor Bagley's application to the position of Director of Entrepreneurial Programs (or a comparable position) at Yale SOM, including without limitation, all communications with prospective outside reviewers and any written responses therefrom.

**OBJECTION:**     **See objection to Production Request #13 above.**

16.     All documents and communications concerning the criteria for, applications to, or candidates for the Theodore Nierenberg Chair (also known as the Theodore Nierenberg Professorship), including without limitation the interview schedules of all candidates invited to give "job talks" at Yale SOM and all documents and communications relating to any such candidates.

**OBJECTION:**     **See objections to Production Requests #2 and #13 above.**

17.     All documents and communications concerning Professor Bagley's application for the Theodore Nierenberg Chair and/or faculty director of the Millstein Center for Corporate Governance and Performance, including without limitation her request for a meeting with search committee chair Douglas Rae to discuss her candidacy.

**OBJECTION:**     **See general objections.**

18.     A copy of the report produced in or around 2011-2012 by the review committee chaired by Professor Paul Bracken ( the "Bracken Committee") concerning Professor Bagley, as well as all drafts, notes, interviews, correspondence, meeting minutes, and other documents relating thereto.

**OBJECTION:**     **See objections to Production Request #2 above.  Without waiving these objections, defendant notes that it has already provided a copy of the Bracken report.**

19.     A copy of the charge to the Bracken Committee issued in or around 2011 concerning Professor Bagley's reappointment as a Professor in the Practice.

**OBJECTION:**     **See general objections.**

31.     All documents listing, containing, or referencing statistics on diversity and diversity hiring, retention, and promotion at Yale SOM from January 1, 2007, to the present.

**OBJECTION:**     **See general objections.  Without waiving these objections, defendant states that it has no objection to compiling a document indicating the name, race (where known) and gender of faculty members at Yale SOM for each academic year commencing with the 2007-2008 academic year to the present.**

32.     A copy of the report produced as a result of the 2014 Diversity Summit at Yale ("2014 Summit"), as well as any data collected in preparation for drafting the report and any documents provided to the participants in the 2014 Summit.

**OBJECTION:**     **See general objection to Production Request #2.**

33.     Any policies, procedures, or reports relating to the contract renewal, including the process for determining whether an individual should be reappointed, of Professors in the Practice at Yale SOM, as well as the standards applied in each instance.

**OBJECTION:**     **See objections to Production Request #2.**

34.     The minutes of all BPO meetings, including any draft minutes, at which a vote was taken on the reappointment of a Professor in the Practice at Yale SOM, as well as any notes, voice recordings or videos relating to such meeting.

**OBJECTION:**     **See general objections.  Defendant further objects on the ground that providing such information for individuals other than the plaintiff will invade the privacy rights of persons not party to this litigation and violate the provisions of Conn.Gen.Stat. § 31-128f.  Without waiving these objections, defendant notes that it has no objection to producing minutes of all BPO meetings taken on the reappointment of the plaintiff.**

35.     All documents and communications concerning the dispersing or distribution of Professor Bagley's responsibilities, including without limitation her teaching responsibilities, upon or after her termination from Yale SOM.

**OBJECTION:**     **See general objections.  Defendant also objects on the ground that this request is vague and uncertain in meaning.**

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CONSTANCE E. BAGLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 3:13-cv-01890 |
| ) | |
| YALE UNIVERSITY, DOUGLAS ) | |
| RAE, EDWARD SNYDER, AND ) | |
| ANDREW METRICK, Individually. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S SECOND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED ON DEFENDANT YALE UNIVERSITY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26, the Plaintiff, Constance E. Bagley ("Professor Bagley" or "Plaintiff"), hereby requests that all documents and tangible things described below be produced for inspection or copying, within thirty (30) days from the date of this request, at the offices of Burns & Levinson LLP, 125 Summer Street, Boston, Massachusetts 02110.  This request is intended to supplement, and not replace, the document production expressly mandated by the Initial Discovery Protocols for Employment Cases Alleging Adverse Action endorsed by the Court in this action.[1]  See Dkt. 30.

## TIME FRAME

Unless otherwise specified, the time period governing the below Requests is January of 2006 to the present.

---

[1] This Protocol already requires Defendants to produce, *inter alia*, documents concerning the formation and termination of Plaintiff's employment, her personnel file, evaluations, workplace policies and codes of conduct, documents concerning investigations of the Plaintiff's complaints and communications relevant to the actions in the lawsuit.  Plaintiff notes that certain Requests contained herein may be more specific requests that fall within the categories required by the Protocol.

1

**REQUESTS**

**Request No. 43**

All drafts of the report produced as a result of the 2014 Diversity Summit at Yale, including any revisions made by Yale management prior to its publication.

**Request No. 44**

All documents or communications provided by SOM Deans or any other individual to President Salovey in response to Professor Bagley's June 2012 request for provostial review of the decision not to renew her contract.

**Request No. 45**

All documents and communications relating to any decision or recommendation by the University-Wide Committee on Sexual Misconduct concerning an allegation or incident of sexual misconduct that was overturned or reversed by Yale management.

**Request No. 46**

Any and all complaints of harassment, discrimination, or retaliation against Dean Snyder, Dean Metrick, or Professor Rae, including any communications relating thereto.

**Request No. 47**

The complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred.

**Request No. 48**

A copy of the job posting ("job as posted") as referenced at bates-stamped document YU003170.

**Request No. 49**

All emails to and from the e-mail account eas@yale.edu ("EAS Confidential") referencing or concerning Professor Bagley.

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE BAGLEY | : | |
| Plaintiff | : : | CIVIL ACTION NO.: 3:13 CV 1890 (CSH) |
| vs. | : : | |
| YALE UNIVERSITY, DOUGLAS RAE, EDWARD SNYDER and ANDREW METRICK, Individually | : : : | |
| Defendants | : : | FEBRUARY 13, 2015 |

## DEFENDANT YALE UNIVERSITY'S OBJECTIONS TO
## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.      Defendant objects to the extent that materials sought are covered by the attorney-client privilege.

2.      Defendant objects to the extent that information is protected by the work product privilege.

3.      Defendant objects to the extent that the discovery requested is duplicative, overbroad, burdensome, readily obtainable from another source that is more convenient or less expensive, and/or the burden of responding is outweighed by the likely benefit, within the meaning of Fed R. Civ. P. 26(b)(2).

4.      Defendant objects to the plaintiff's "Instructions" and "Definitions" to the extent that these are inconsistent with the Federal Rules of Civil Procedure.

5.      Defendant objects on the ground that the time period reflected in plaintiff's discovery requests – January, 2006 to the present – is unreasonably long.  In this regard,

defendant notes that the plaintiff's appointment began on July 1, 2008 and the first claim of an adverse employment action was May, 2012.  Accordingly, the timeframe should be no longer January, 2007 to present.

**Request No. 43**

All drafts of the report produced as a result of the 2014 Diversity Summit at Yale, including any revisions made by Yale management prior to its publication.

**OBJECTION:**        **See general objections.   In addition, defendants object to this request to the extent that plaintiff seeks information regarding any school or department of Yale University other than the School of Management, as it is overbroad, burdensome, and not designed to lead to the discovery of relevant, admissible evidence.**

**Request No. 44**

All documents or communications provided by SOM Deans or any other individual to President Salovey in response to Professor Bagley's June 2012 request for provostial review of the decision not to renew her contract.

**OBJECTION:**        **See general objections.**

**Request No. 45**

All documents and communications relating to any decision or recommendation by the University-Wide Committee on Sexual Misconduct concerning an allegation or incident of sexual misconduct that was overturned or reversed by Yale management.

**OBJECTION:**        **See general objections.   In addition, defendants object to this request on the ground that it is overbroad, burdensome, unlimited in scope of time, and is not designed to lead to the discovery of relevant, admissible evidence.  Defendants further object on the ground that compliance with this interrogatory will invade the privacy interests of persons who are not parties to this action.**

**Request No. 46**

Any and all complaints of harassment, discrimination, or retaliation against Dean Snyder, Dean Metrick, or Professor Rae, including any communications relating thereto.

**OBJECTION:**      See general objections.

**Request No. 47**

The complete personnel file of any individual appointed to the rank of Professor in the Practice at Yale SOM, including any meeting minutes, notes, ballots, or other data relating to any meeting of the BPO at which a discussion or vote of appointment renewal occurred.

**OBJECTION:**      **See general objections. Defendants also object to this request on the ground that it is overbroad, burdensome, unlimited in scope of time, and is not designed to lead to the discovery of relevant, admissible evidence. In addition, compliance with this request would violate the provisions of Conn. Gen. Stat. §31-128f, which prohibits the disclosure of personnel information without the consent of the employee, and would violate the privacy interests of persons or not parties to this litigation.**

**Request No. 48**

A copy of the job posting ("job as posted") as referenced at bates-stamped document YU003170.

**OBJECTION:**      See general objections.

**Request No. 49**

All emails to and from the e-mail account eas@yale.edu ("EAS Confidential") referencing or concerning Professor Bagley.

**OBJECTION:**      **See general objections. In addition, defendants object on the ground that, to the extent this request seeks anything other than emails and documents relating to the plaintiff's employment, it is overbroad, burdensome, and not designed to lead to the discovery of relevant, admissible evidence.**

**Request No. 50**

The second and all subsequent pages to the July 2012 email chain, starting at bates-stamped page YU005019.

**OBJECTION:**      **Defendant objects to this request on the ground that it seeks information protected by the attorney-client privilege. The email chain, starting at bates**

3

# EXHIBIT E

BURNS & LEVINSON LLP

125 SUMMER STREET  BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
BURNSLEV.COM

EMILY J. NELSON
617.345.3205
ENELSON@BURNSLEV.COM

Feburary 24, 2015

**VIA EMAIL**
Patrick Noonan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
PNoonan@ddnctlaw.com

> *Re:*   *Constance E. Bagley v. Yale University et al.*
> *USDC District of Connecticut, Civil Action No. 3:13-cv-01890*

Dear Pat:

　　As discussed in our telephone conference on Saturday, February 21, 2015, Yale's production of documents in response to the Plaintiff's First and Second Requests for Production, served on July 8, 2014 and January 14, 2015, respectively, contains gaps in specific subject matters and/or time frames. I outline below Professor Bagley's primary concerns with the production, although she expressly reserves her right to supplement this list. The Plaintiff also notes that the requests herein supplement, rather than replace, her request for continued production of Electronically Stored Information (ESI), expressly addressed in an e-mail to you dated February 23, 2015.

- **Requests Nos. 18, 22:** notes, memoranda, meeting minutes, drafts, etc. relating to Pinker and Bracken Committees

  - As outlined in my email to your associate on February 11, 2015, Plaintiff has received copies of the Pinker Report and Bracken Report, but has not the associated documents requested.

- **Request No. 49:** emails from the "EAS Confidential" account of Dean Edward Snyder

  - To our knowledge, Yale has produced only eight pages of documents in response to this request. See YU01512-YU015720. Plaintiff has reason to believe several additional and relevant e-mails exist. For example, Plaintiff specifically requests the April 14, 2012 "Connie Bagley update" email referenced by Dean Metrick in an email to Dean Snyder dated April 15, 2012, see Yale0000944, in addition to all other emails to or from the "EAS Confidential" account concerning the Plaintiff.

1

BURNS & LEVINSON LLP

- **Request No. 43**: Drafts of the Diversity Summit Report of 2014

  - Yale's response to this Request indicated that "it is not in possession of" these drafts. Plaintiff asks that the Defendants either renew its search for these drafts, identify the custodian(s) of these drafts, or indicate that the 2014 Diversity Summit Report was fully written and edited in one setting without review.

- **Request No. 45**: Documents and communications relating to any decision or recommendation by the University-Wide Committee on Sexual Misconduct concerning an allegation or incident of sexual misconduct that was overturned or reversed by Yale management.

  - Defendants have objected that this request is overbroad, burdensome, unlimited in scope of time, and not designed to lead to the discovery of relevant, admissible evidence, and that compliance with this interrogatory will invade the privacy interests of persons who are not parties to this action.

  - The Plaintiff responds as follows: the UWC was formed in 2011 and thus this request encompasses only a short period of time and could hardly be deemed overly broad or unduly burdensome; as discussed in our telephone conference, these materials are clearly relevant given the Plaintiff's role in forming the UWC and her allegations of retaliation for her participation on the UWC as plead in her Complaint; Plaintiff agrees to redact names and identifying information in any materials produced by Yale to protect confidentiality.

- **Request Nos. 4, 6, 7, 44**: Documents and communications involving former Provost and President Peter Salovey, including communications between Salovey and the SOM Deans relevant to Professor Bagley, State & Society and standards for PIP reappointment.

  - The Plaintiff has just begun to receive relevant documents from President Salovey's account. While she has received documents from 2009-2012 (without representing or asserting the completeness of this production), Professor Bagley seeks e-mails between President Salovey and Frances Rosenbluth, Dean Snyder, Dean Metrick, or Stephanie Spangler from the second half of 2013 to the present concerning Professor Bagley.

  - With respect to any relevance objection, this time period is encompasses, *inter alia*, the formation and deliberation of the Pinker Committee, the second BPO vote on Professor Bagley's reappointment, and conversations regarding the newly expressed standards for renewal of PIPs.

BURNS & LEVINSON LLP

- **Request No. 47**: Personnel files of PIP at SOM.

  - Defendants object to this request on the grounds that it is overbroad, burdensome, unlimited in scope of time, not designed to lead to the discovery of relevant, admissible evidence, and that "compliance with Conn. Stat. §31-128f prohibits disclosure of personnel information without consent of employee."

  - At this juncture, Plaintiff agrees to narrow this request to any *handwritten notes or typed minutes from the BPO deliberations on PIP renewal* for any of the approximately 10 PIPs who have or continue to by employed by SOM. These documents relate directly to the scope of the BPO deliberations, the standards of renewal, and past practices more generally for comparative purposes.

- **"Beyond the Scope of SOM" Objection**

  - Yale has broadly objected to producing data or documents beyond the School of Management. For example, when Plaintiff sought redacted statistical data on female faculty at Yale, see YU012604-YU012605, Yale objected because it "believes that information regarding any school or department of Yale University other than the School of Management is outside the scope of proper discovery." Plaintiff renews her request for this data, as well as any other data or documents withheld on the same grounds. Given the role of President Salovey (now and as Provost) and several non-SOM faculty members, Professor Bagley's work on the University-Wide Committee, and the role of General Counsel from the beginning of this matter – as well as the utility of pattern-or-practice and comparator evidence – I would ask that Yale reconsider its position on this front.

We hope that the parties can resolve any disagreements absent Court intervention. Please let me know by the close of business on March 3, 2015 whether Yale assents to any or all of the above follow-up requests.

Thank you,

*Emily J. Nelson*

Emily J. Nelson

cc:     Constance E. Bagley
        Laura R. Studen, Esq.
        Michael Rose, Esq.

# EXHIBIT F

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Friday, April 10, 2015 9:19 AM
**To:** Emily J. Nelson
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

I just wanted to touch bases with you about a few outstanding matters:

(1) I will be sending you a privilege log related to President Salovey's ESI a little later today.

(2) I am working on the privilege log for Dean Snyder's confidential email account. I will try to get it done today, but it may not be ready until early next week.

(3) As to the plaintiff's request for BPO notes and contracts regarding other PIPs at SOM, Yale intends to pursue its object to this request. Even though the plaintiff has narrowed this request, it nonetheless seeks private information about individuals who are not parties to this lawsuit. As a result, Yale believes that it needs to protect this information. In addition, the request is overly broad and burdensome.

(4) You should be receiving a disc from Ricoh on Monday containing documents in response to Request for Production No. 22.

Please let me know if you have any questions.

Matt

~~~~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Monday, April 06, 2015 10:49 AM
**To:** Matt Geelan
**Subject:** RE: Document Production (Bagley v Yale)

thanks Matt

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

*Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections. If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Monday, April 06, 2015 10:47 AM
**To:** Emily J. Nelson
**Subject:** RE: Document Production (Bagley v Yale)

Here you go Emily.

Matt

~~~~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Friday, April 03, 2015 12:21 PM

3

**To:** Matt Geelan
**Subject:** FW: Document Production (Bagley v Yale)

Matt — I think you sent me a bates-stamped copy of these and I may have accidentally deleted it before I saved it. Are you able to re-send? Thanks so much.  - Emily

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;;

'Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections. If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Monday, March 30, 2015 6:40 PM
**To:** Emily J. Nelson
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

Attached are the documents referred to below. I haven't been able to get them Bates stamped yet as my assistance was out today. I hope to have a Bates stamped copy for you tomorrow.

Thanks

Matt

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 — Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Monday, March 30, 2015 2:34 PM
**To:** Matt Geelan
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Thanks, Matt. I will follow up with any questions or concerns.

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

*Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s).  It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections.  If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication.  If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Thursday, March 26, 2015 6:26 PM
**To:** Emily J. Nelson
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

Attached please find the defendants' responses to plaintiff's concerns regarding the privilege log.  As you'll see, there are several documents we have agreed to produce.  I will have these documents Bates stamped and emailed to you by Monday.  Also, I expect to have privilege logs relating to President Salovey's ESI and Dean Snyder's confidential email accounts to you by Friday April 10th.  Please let me know if you have any questions.

Matt

~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Tuesday, March 24, 2015 5:01 PM
**To:** Matt Geelan
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Matt,

In follow up to my email below, please let me know a date certain by which we can expect to receive Yale's responses to our concerns regarding the privilege logs produced to date (as laid out in my letter and chart), as well as the privilege logs for witnesses not yet produced.  If we do not hear back from Yale with such a date by the close of business on Friday, we will need to file a Motion to Compel these logs and certain emails therein.

Thanks,
Emily

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

*Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections. If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

**From:** Emily J. Nelson
**Sent:** Monday, March 16, 2015 10:40 AM
**To:** 'Matt Geelan'
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Thanks, Matt. Please let me know Yale's response regarding our narrowed requested. I also wanted to check in on our objections to the privilege log – you indicated Yale was going to respond to each specific request; are you able to provide an ETA? Thanks.

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

*Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections. If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Wednesday, March 11, 2015 6:38 PM
**To:** Emily J. Nelson
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

Please let me discuss your suggestions with our client and I will get back in touch with you.  Thank you.

Matt

~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Monday, March 09, 2015 3:26 PM
**To:** Matt Geelan
**Cc:** Pat Noonan; Laura R. Studen; Valerie Brown
**Subject:** RE: Document Production (Bagley v Yale)

Hi Matt,

With respect to Request No. 47, I wanted to clarify that we agreed in our letter to your office dated February 24, 2015 to reduce the scope from "personnel files of PIPs at SOM" to "*handwritten notes or typed minutes from the BPO deliberations on PIP renewal*" for any SOM PIPs.  Do you object to this narrowed request, particularly as one of your objections is that our original request was "overly broad and unduly burdensome"?

If, with respect to this narrowed request, you maintain your alternative objection based upon Conn. Gen. Stat. 31-128f and third party privacy rights, we are happy to have the documents marked confidential pursuant to the protective order in place; an alternative way to protect you from statutory violation is to ask the Court for an Order requiring the production of these BPO minutes.  Would you be amenable?

I will be following up on your responses to certain other requests by separate cover.

Thanks,
Emily

Emily J. Nelson
Burns & Levinson LLP
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

'Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections.  If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication.  If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

7

**From:** Matt Geelan [mailto:MGeelan@ddnctlaw.com]
**Sent:** Tuesday, March 03, 2015 4:42 PM
**To:** Emily J. Nelson
**Cc:** Pat Noonan
**Subject:** RE: Document Production (Bagley v Yale)

Hi Emily,

Please see attached.

Matt

~~~~~~~~~~~~~~~~~~~~~~~~~
Matthew H. Geelan, Esq.
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Suite 306
Guilford, CT 06437
(203) 458-9168 - Phone
(203) 458-4424 – Fax

**From:** Emily J. Nelson [mailto:enelson@burnslev.com]
**Sent:** Tuesday, February 24, 2015 1:31 PM
**To:** Pat Noonan
**Cc:** Laura R. Studen; Valerie Brown; Matt Geelan
**Subject:** Document Production (Bagley v Yale)

Hi Pat,

In follow up to our conversation on Saturday, please see the attached letter outlining the Plaintiff's specific concerns and requests regarding Yale's document production to date.

Thanks,
Emily

Emily J. Nelson
**Burns & Levinson LLP**
Associate | Business Litigation | Employment
125 Summer Street | Boston MA 02110
617.345.3205 (d) | 617.345.3000 | 617.345.3299 (f)
www.burnslev.com
enelson@burnslev.com

::::::::::::::::::::::::::::::::::::::::::::::::::::

*Only print this e-mail if necessary.

IRS Circular 230 Disclaimer: Any tax advice in the communication is not intended or written by company to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message is intended only for the designated recipient(s). It may contain confidential or proprietary information, and may be subject to the attorney-client privilege and/or other confidentiality protections. If you are not the intended recipient, you may not review, retain, disseminate, distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or reply e-mail. Thank you.

# EXHIBIT G

# DONAHUE, DURHAM & NOONAN, P.C.

Patrick M. Noonan
pnoonan@ddnctlaw.com

Concept Park
741 Boston Post Road
Suite 306
Guilford, CT  06437
Tel  (203) 458-9168
Fax (203) 458-4424

July 30, 2014

**Via Federal Express**

Attorney Laura R. Studen
Burns & Levinson, LLP
125 Summer Street
Boston, MA 02110

RE:   <u>Constance E. Bagley v. Yale University, Et Al</u>

Dear Laura:

Enclosed, in partial response to the Court's Initial Discovery Protocol and Plaintiff's First Request for Production of Documents, are three DVD's of electronic documents gathered from the computers of Andrew Metrick, Edward Snyder and Douglas Rae.  Consistent with the agreement reached between myself and Alex Deal, the search covered the period January 1, 2007 to the present and applied the following search terms:  "State and Society;" Bagley, Constance; Connie; CB; Bracken AND Committee or Bracken AND Cmte or Bracken AND Report; Harte AND Committee or Harte AND Cmte or Harte AND Report; Blackball (with extensions); Nierenberg /2 Chair (with extensions); Aguilera; "Professor in the Practice;" PIP; Alstott; Ayers; Blanchette; Margaret.Clark; Meltdown; bitch; Baglady; and Bag w/2 lady.  This search identified many e-mail messages to and from students in the State & Society course that were unrelated to any issue in this lawsuit and which have not been produced.

As you can see, there are literally thousands of pages of documents, most of them completely unrelated to any issue in this lawsuit.  After you have had a chance to look at these documents, perhaps we can discuss a way in which discovery can be done without requiring us to unearth this volume of material.  In the meantime, can you let me know when you will be providing responses to the initial discovery protocol?

Very truly yours,

Patrick M. Noonan/djl

Patrick M. Noonan

PMN/mgb
Enclosures

# EXHIBIT H

## Yale School of Organization and Management

Box 1A   New Haven Connecticut 06520



Burton G. Malkiel
*Dean*
*William S. Beinecke Professor of Management Studies*
*Professor of Economics*

February 9, 1983

Professor Stanley Garstka
SOM

Dear Stan:

With the Provost's approval, I am happy to offer you the position of Professor in the Practice of Accounting for the next academic year with a salary of $55,000. This appointment is for a period of five years and is renewable thereafter. Moreover, the appointment is made without prejudice to any future consideration for a tenured position at SOM.

I realize that this is not the preferred outcome from either of our points of view. I want to assure you, however, that you have the full support of the tenured faculty here and there is no doubt in my mind that all of us would consider you an integral part of the family. I hope very much you will be able to stay with us. Believe me, I will do everything in my power to ensure that you will not regret the decision to stay.

Sincerely,

Burt

BGM/ktg

bcc:  Linda Scotten



EXHIBIT
GARSTKA
98
4-30-15

YU007750



Yale University
**Inter-Office Correspondence**

Date:   June 9, 1983

To: Dean Burton Malkiel

From: Stanley J. Garstka

I would like to formally accept the five year appointment of Professor in the Practice of Accounting beginning July 1, 1983. I anticipate a productive year in terms of both teaching and research.

YALE UNIVERSITY
NEW HAVEN, CONNECTICUT

At the last meeting of the Corporation it was
voted to make the following appointment:

Promotion

School of Management

Stanley J. Garstka as Professor in the Practice, from July 1,
2003 through June 30, 2008.

April 13, 2002

Linda Koch Lorimer

VICE PRESIDENT AND SECRETARY

YU007753



YALE UNIVERSITY
*INTER-OFFICE MEMORANDUM*

January 15, 1992

To:.     Steve Ross

From:   Jon Ingersoll

Re:      Stan Garstka's review

As promised a while ago I'm sending the confidential review from Stan's last renewal. Please note that this review is confidential to the BPO. (Paul Bracken can, of course, see it.)

You should also have been receiving regularly evaluations from former students.

I would like to have the BPO's discussion of Stan's renewal sometime during February. The Appointments Committee will need to meet with you after the subcommittee report is written before it can be sent to the BPO.

*Paul and Rick Antle were asked to serve on comm.*
*Antle declined.*
*Ross was asked & accepted.*
*Alumni evaluations were obtained. Copy to Ross who is chair.*
*Student evals. not obtained.*
*Bracken (3/2/92) requested help in putting report together, was unaware that alumni had been contacted and was not aware of process*

YU007757

# EXHIBIT I

Committee Report
Appointment of Frank Fabozzi to Professor in Practice
December, 2006

**Committee Members:**
Roger Ibbotson (Chair)
Jake Thomas

**Recommendation**: Based on our review of Frank Fabozzi's portfolio, we recommend that Frank be appointed as a Professor in Practice (half-time appointment).

Frank has been associated with SOM for the past 12 years as an Adjunct Professor of Finance. Between 2003 and 2005 he was the Frederick Frank Adjunct Professor of Finance and since then has been the Becton Fellow. In addition to being a popular teacher of Finance electives that are not normally taught by our regular faculty, he has helped us out in numerous ways, including finding jobs for many MBA students.

There are two main reasons why the Dean's Office wishes to consider appointing Frank as a Professor in Practice. First, he is serving a more and more important role in the school. He is participating in the core. He has agreed to co-teach the Sourcing and Managing Funds course and offer "boot camp" sessions for students interested in Finance careers. He is very prominent in the financial community and represents Yale well. Second, the length of service and quality of his contributions to SOM are deserving of special recognition. However, since Frank does not plan to move to New Haven and be a full time faculty member, it seemed appropriate to consider a half-time appointment.

The criteria used to consider the last two appointments for Professor in Practice (for Jeff Sonnenfeld and Loretta Mester) were applied again in this case. Those criteria are described broadly in the Yale provost handbook as follows:

1

YU026797

This is a term position for practitioners or scholars whose appointments are based primarily on their distinction in one of the areas integral to the practice of management. Persons appointed in this position must show evidence of significant accomplishment as either a practitioner or scholar in their chosen area. In addition, they must show evidence of exemplary performance in teaching the fundamental skills of that area of practice to others.

Our review of Frank's portfolio suggests that he clearly satisfies the general guideline. He has shown significant evidence of accomplishments as a practitioner. As confirmed by all letter writers, Frank is widely recognized as a person who has had a substantial impact on practice, primarily because of the many books he has written. He has also shown evidence of exemplary performance in teaching fundamental skills from his areas of expertise.

More specific guidelines that have been adopted in recent cases are as follows:

In the absence of a universally accepted, formal listing of the requirements for appointment to Professor in Practice, we considered a variety of desirable attributes. We felt that a Professor in Practice should be able to make productive linkages between underlying theory and important real-world practice. To do this he must have some familiarity with both worlds. On the one hand, he should be familiar enough with research and important academic issues to be able to interact with ladder faculty in ways that are both stimulating and informing. On the other hand, he should have substantial industry expertise and contact with practitioners that benefits faculty and students and enhances the external reputation of the school. Faculty and students gain the most when the Professor in Practice brings skills and knowledge that are orthogonal to those we have currently.

We also kept in mind the following general guidelines provided by the Dean's Office. First, Professors in Practice should provide some experience and expertise that the School views as essential but currently lacks. This experience need not be research-based and could, for example, be related to Executive Education. Second, such Professors should be full-time participants who are likely to interact with the intellectual community of the School. Third, given the desire to limit the number of such appointments, the threshold is high. In essence, a strong case should be made that the faculty would like to have this person as a colleague.

We also believe that he satisfies these more specific guidelines. Frank is able to make productive linkages between underlying theory and practice, because he has considerable

2

YU026798

involvement in both worlds. His practical expertise and professional contacts provide skills and knowledge that are orthogonal to those we have currently and he should be able to interact with our regular faculty in ways that are both stimulating and informing. Turning to the three conditions suggested by the Dean's Office, here are our conclusions. First, we feel that Frank provides expertise and experience that SOM lacks. Second, we believe Frank will interact with the intellectual community of the school, but that interaction will be limited somewhat by the fact that he has a half-time appointment and will not be on campus all year round. He is, however, available and eager to discuss issues via phone and e-mail. Finally, we feel that there is a strong case to be made for Frank to be appointed as Professor in Practice and his achievements and potential future contributions are sufficient to satisfy the high threshold we impose.

We provide below some summaries of his written work, his teaching contributions, and the letters we requested.

a) Written work

Frank is a prolific writer; he has authored over 50 books, edited 80 books, and authored over a 125 articles mostly in peer-reviewed Journals. Despite the quantity, most of his work is of good quality. (We have provided links to two journal articles and three chapters from his books as samples of his written work. See http://www.som.yale.edu/public/fabozzi) His interests range far and wide within finance. And when he felt he needed to understand better the details of financial reports he studied for and obtained a CPA! His most influential work tends to blend theory and practice, or to pull together in a comprehensive way a number of recent innovations.

YU026799

Frank's early interests lay in testing the CAPM and studying the determinants of market risk. During the late 1970's he published two papers in the JF and three papers in the JFQA in this area. He next investigated fixed income securities and structured finance. While he published papers in the JFQA and JF he was struck by the narrow perspective taken by referees at the top journals. For example, they dismissed his efforts to understand the burgeoning structured finance market since "it was not consistent with the CAPM". Impressed by the lack of material for practitioners on these topics he decided to emphasize books, handbooks, and manuals that could interpret research findings and guide practice. Among his earliest efforts in this area include his 1981 book on leasing (now in its fourth edition), his 1983 Handbook of fixed income securities (now in its seventh edition), and the 1985 Handbook of mortgage-backed securities (now in its sixth edition).

Subsequently, Frank has written extensively on investment management and capital markets, mainly because he felt the textbooks available at the time did not reflect market realities or current practice. In response, he wrote text books targeted to fill the void in both areas.[1] His latest efforts have focused on financial modeling and financial econometrics.

b) Teaching

Frank has been an innovative teacher who has received excellent evaluations from students, analysts, and executives he has taught. To the best of his knowledge, he is the first to develop University courses on fixed income course (at MIT in 1987) and structured finance (at Yale in the late 1990's). He has also taught at Investment Banks and at the

---

[1] The passing of Franco Modigliani, his co-author on the capital markets text, has caused Frank to search for other collaborators. He is hopeful that Bob Shiller will replace Modigliani on the next edition..

4

YU026800

Certified Financial Analysts Institute, and has founded a company which focused on developing conferences for the financial community.[2]

As noted in the Table below Frank's teacher ratings at Yale have been reasonably good (mean and median about 6). And the reviews obtained from former students were uniformly very positive. They valued Frank's expertise and his contacts with the industry. Most of the negative comments related to relatively minor issues, such as his absence from campus when he was not teaching (though some admitted that he was prompt when they tried to contact him via e-mail or phone), that he could be more organized, and that he spoke too fast.

**Course Ratings: Frank Fabozzi**

| Semester | Course | Title | # Enrolled | % Response | Overall Instructor Rating Mean | Median | % Response | Overall Course Rating Mean | Median |
|---|---|---|---|---|---|---|---|---|---|
| Spring '94 * | 540 | Financial Management I | 235 | 80% | 5.7 | 6.0 | 80% | 5.6 | 6.0 |
| Fall 1994 | 643 | Investment Banking | 55 | 93% | 6.5 | 7.0 | 93% | 6.3 | 7.0 |
| Fall 1995 ** | 643 | Investment Banking | 63 | 25% | 5.7 | 6.0 | 25% | 5.6 | 5.0 |
| Spring 1996 | 547 | Fixed Income Security Analysis | 60 | 42% | 5.7 | 6.0 | 42% | 5.4 | 6.0 |
| Fall 1996 | 643 | Investment Banking | 53 | 17% | 5.8 | 6.0 | 17% | 5.2 | 6.0 |
| Spring 1997 | 547 | Fixed Income Security Analysis | 48 | 23% | 5.5 | 6.0 | 23% | 5.1 | 6.0 |
| Spring 1998 | 547 | Fixed Income Security Analysis | 66 | 70% | 4.8 | 5.0 | 70% | 4.7 | 5.0 |
| Spring 1999 | 547 | Fixed Income Security Analysis | 57 | 78% | 5.4 | 6.0 | 21% | 4.8 | 5.0 |
| Spring 2000 | 644 | Structured Finance | 39 | 36% | 5.8 | 6.5 | 36% | 5.7 | 6.5 |
| Spring 2001 | 644 | Structured Finance | 36 | 89% | 6.0 | 6.0 | 86% | 5.8 | 6.0 |
| Spring 2003 | 644 | Structured Finance | 55 | 31% | 5.5 | 5.0 | 31% | 5.4 | 5.0 |
| Spring 2004 | 644 | Structured Finance | 51 | 55% | 5.8 | 6.0 | 55% | 5.8 | 6.0 |
| Spring 2005 | 644 | Structured Finance | 40 | 58% | 5.9 | 6.0 | 58% | 5.7 | 6.0 |
| Spring 2006 | 644 | Structured Finance | 23 | 91% | 5.8 | 6.0 | 91% | 5.3 | 6.0 |

*co taught with Rouwenhorst & Ibbotson
** co taught with Asness & Jones

---

[2] That company, with offices in NY, CA, Hong Kong and London, was sold to Euromoney/Institutional Investor (a public company traded on the London stock exchange) and it now represents 20% of the profits of the combined firm.

5

YU026801

c) Letters

Requests for evaluation letters were sent out to four senior faculty (Jonathan Berk, Doug Breeden, Stew Meyers, and Steve Ross) and four established practitioners (Peter Bernstein, Richard Breeden, Richard Ennis, and Marty Leibowitz). Letters were received from Berk, Meyers, Ross, Bernstein, and Liebowitz.[3] All the letters strongly support the appointment and point to Frank being "a leading (if not *the* leading) scholar in the practice of finance" (Berk), "outstanding on many levels" (Bernstein), "a Renaissance Man spanning across some of the most exciting areas of finance" (Leibowitz), somebody with "an encyclopedic knowledge of financial markets, and when those markets innovate, he always seems among the first to document and explain the innovations" (Meyers), and "one of the best known financial practitioners in the world … has come to be highly regarded as a guru in the world of financial instruments" (Ross).

---

[3] Ennis sent an e-mail indicating that he had a favorable impression of Frank, but was not sufficiently acquainted to provide a detailed letter.

6

Committee Report
Renewal of Frank Fabozzi
Professor in the Practice (half-time appointment)
April 2010

**Committee Members:**
Roger Ibbotson (Chair)
William Goetzmann
Jonathan Ingersoll

**Recommendation:** The committee recommends that Frank Fabozzi's appointment be extended two more years.

Frank Fabozzi was originally appointed to a five-year term as a half-time Professor in Practice in December 2006, following a request from the Dean's Office and a committee report chaired by Roger Ibbotson, which included Jake Thomas. Frank had been an Adjunct Professor since January 1994, including Frederick Frank Adjunct Professor of Finance between 2003 and 2005.

Frank is being considered for a two-year extension, instead of the ordinary five-year extension for a Professor in the Practice renewal. The finance faculty specifically wants the flexibility going forward to configure its make-up to continue to build upon our research-oriented faculty as the new Dean comes on the scene.

The criteria for a Professor in Practice are described broadly in the Yale provost handbook as follows:

> This is a term position for practitioners or scholars whose appointments are based primarily on their distinction in one of the areas integral to the practice of management. Persons appointed in this position must show evidence of significant accomplishment as either a practitioner or scholar in their chosen area. In addition, they must show evidence of exemplary performance in teaching the fundamental skills of that area of practice to others.

1

YU026803

The committee clearly feels that Frank continues to satisfy these criteria. He in fact is widely recognized as both a practioner and a scholar, especially in applied research. As a practioner he has been an entrepreneur who has started and sold several businesses. He is a trustee of Black Rock Closed-End funds. He has previously been a director at the Guardian Mutual and Annuity Funds. He is currently the editor of the *Journal of Portfolio Management,* one of the two leading practioner journals. He is a prolific author and excellent teacher, both of which we detail later in this report.

In Frank's original appointment, some more specific guidelines were given.

1. A Professor in Practice should be able to make productive linkages between underlying theory and important real-world practice. To do this he must have some familiarity with both worlds. On the one hand, he should be familiar enough with research and important academic issues to be able to interact with ladder faculty in ways that are both stimulating and informing. On the other hand, he should have substantial industry expertise and contact with practitioners that benefits faculty and students and enhances the external reputation of the school.

2. Professors in Practice should provide some experience and expertise that the School views as essential but currently lacks.

3. Such Professors should be participants in the intellectual community of the school.

4. Given the desire to limit the number of such appointments, the threshold is high. In essence, a strong case should be made that the faculty would like to have this person as a colleague.

Frank clearly meets the criteria (1) and (2).

Frank has not met criteria (3) and (4) as well. He lives in Pennsylvania and is not often on campus on days when he is not teaching. However, he has been very responsive to any requests from faculty and students. He has actively encouraged Yale faculty to publish

2

YU026804

in the journal that he edits. He has helped provide a few faculty members with data or answers to institutional type questions. He has been helpful to both the admissions office (see attached letter from Bruce Delmonico) and the CDO office in helping students get jobs. We asked Frank to provide a summary of his contributions to the school, not including his teaching (see separate attachment).

## Writing:

Frank Fabozzi is best known for his handbooks of finance. His series of textbooks on mortgage-backed securities are widely visible and important reference guides. He continues to produce very useful textbooks in a wide range of subjects: leveraged finance, quantitative equity investing and short-selling, among many others. His general analytical approach is applied mathematical methods in asset pricing and investment management, however he is nothing if not broad.  Frank is undoubtedly the most prolific writer in all of finance. He has authored or co-authored over 75 books, edited 88 books, and written over 200 articles, mostly in peer reviewed journals. Since his Professor in Practice appointment at the end of 2006, he has co-authored 75 articles (including forthcoming), published 22 books, edited 8 (mostly) handbooks (he co-authored many of the chapters), and co-authored chapters in 11 books edited by others.

Frank's vast research has covered many areas. His most recent research covers portfolio management, financial econometrics and stochastic modeling, derivatives and risk, real estate trading, quantitative investments, and economics.

3

YU026805

We asked Frank to provide five articles (attached) and five books (available outside Deputy Dean Stan Garstka's office). In general the articles are very applied, often quite specific, and somewhat quantitative. Few of the articles are widely cited, but in their entirety, Frank has thousands of citations on Google Scholar. Many of the books are textbooks in nature, again on specific topics. Many practioners turn to Frank's writings as a way to learn the institutional and theoretical background on a topic. There is a sense that, were his work to be judged as academic contributions alone, that much of it is not up to the standard we would expect from a tenured or tenure-track professor. On the other hand, the best of it is published in top-tiered refereed publications in our field and explores interesting questions.

**Teaching:**

Frank has been an innovative teacher who has received excellent evaluations from students, analysts, and executives he has taught. Since 1994 he has taught "Financial Management I," "Investment Banking," "Fixed Income Security Analysis," "Sourcing & Managing Funds," and "Portfolio Management."

In 2006, the Dean's Office wanted to increase Frank's role in the school following 12 years of very successful teaching at SOM, and his increasing prominence in the financial community. Frank taught "Sourcing & Managing Funds" in 2007, a core course that is a mixture of accounting and finance. This seemed like a natural fit since Frank has both a CPA and a CFA. However, this was the only course that he ever had any trouble with, and he no longer teaches in the core. He continues to teach "Structured Finance," and has added a new course "Portfolio Management" following our request.

4

YU026806

Below is the record of Frank's teaching evaluations since his Professor in the Practice appointment at the end of 2006:

| | | | | | Overall Instructor Rating | | | Overall Course Rating | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | # Enrolled | % Response | Mean | Median | % Response | Mean | Median |
| Spring 2007 | Fabozzi | 423-1 | Sourcing & Managing Funds | 71 | 48% | 3.4 | 3.0 | 46% | 2.4 | 2.0 |
| Spring 2007 | Fabozzi | 423-1 | Sourcing & Managing Funds | 66 | 55% | 3.4 | 3.0 | 55% | 2.3 | 3.0 |
| Spring 2007 | Fabozzi | 423-3 | Sourcing & Managing Funds | 71 | 49% | 3.5 | 3.5 | 49% | 2.4 | 2.0 |
| Spring 2007 | Fabozzi | 423 | Sourcing & Managing Funds | 108 | 49% | 3.4 | 3.2 | 48% | 2.4 | 2.3 |
| Spring 2007 | Fabozzi | 444 | Structured Finance | 41 | 46% | 4.3 | 4.0 | 49% | 3.6 | 4.0 |
| Fall 2007 | Fabozzi | 644 | Structured Finance | 33 | 73% | 4.2 | 4.0 | 73% | 3.9 | 4.0 |
| Fall 2008 | Fabozzi | 644-01 | Structured Finance | 27 | 78% | 4.2 | 4.0 | 78% | 3.9 | 4.0 |
| Fall 2009 | Fabozzi | 644-01 | Structured Finance | 11 | 73% | 4.4 | 5.0 | 73% | 4.3 | 5.0 |
| Fall 2009 | Fabozzi | 604-01 | Portfolio Management | 19 | 79% | 4.2 | 5.0 | 79% | 4.1 | 4.0 |

The committee feels that a two-year extension is an appropriate recommendation for Frank Fabozzi, as it maintains his current status without locking in a professor in this half-time practice slot deeply into the new Dean's tenure.   It further allows the finance group time to assess the extent to which Frank wishes to spend time at Yale in a Professor in Practice capacity.

5

YU026807

YALE UNIVERSITY

NEW HAVEN, CONNECTICUT


At the last meeting of the Corporation it was
voted to make the following appointment:


Management

Reappointment

Frank J. Fabozzi as Professor in the Practice,
from July 1, 2007 through June 30, 2011.


December 8, 2007


*Linda Koch Lorimer*

VICE PRESIDENT AND SECRETARY

YU026808