UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE BAGLEY | : |
| Plaintiff | : CIVIL ACTION NO.: |
| | : 3:13 CV 1890 (CSH) |
| vs. | : |
| | : |
| YALE UNIVERSITY, DOUGLAS RAE, | : |
| EDWARD SNYDER and ANDREW | : |
| METRICK, Individually | : DECEMBER 28, 2015 |
| | : |
| Defendants | : |

## DEFENDANTS' OFFER OF PROOF

In accordance with this Court's December 14, 2015 Ruling (Document No. 160), the defendants, Yale University ("Yale"), Douglas Rae, Edward Snyder and Andrew Metrick, hereby submit the following Offer of Proof in order to articulate their explanation of the legitimate and nondiscriminatory reasons for the decision to not renew the plaintiff's appointment as a Professor in the Practice.

1. In the fall of 2007 and spring of 2008, then-SOM Dean Joel Podolny and Plaintiff entered into negotiations for Plaintiff to join SOM for a five-year term as a Professor in the Practice ("PiP"), the highest rank at SOM given to "non-ladder" faculty. It carries neither tenure nor the promise, or expectation, of tenure.

2. On February 15, 2008, an SOM review committee -- which consisted of SOM professors Jeff Garten, Jeff Sonnenfeld and defendant Douglas Rae -- unanimously recommended Plaintiff's appointment to the Board of Permanent Officers (the "BPO") of

SOM. Professor Rae was the Chair of the Review Committee and wrote a very favorable report advocating the hiring of the plaintiff.

3. The BPO -- which consists of the tenured faculty members of SOM -- subsequently voted in favor of Plaintiff's appointment as a Professor in the Practice of Law and Management. Her five-year term was to run from July 1, 2008 to June 30, 2013, and she was to be reviewed in the fourth year of her appointment for consideration of renewal.

4. In September of 2011, SOM Professor Paul Bracken was appointed to chair Plaintiff's reappointment review committee (the "Bracken Committee"). The Bracken Committee also included SOM Professor Stan Garstka and Yale Law School Professor Ian Ayres. On April 2, 2012, the Bracken Committee delivered its report. That report, which was written primarily by Professor Bracken, was favorable to the plaintiff in the areas of teaching, scholarship and service to the University. The report did not address the issue of continued need for the plaintiff on the faculty, since that is an issue which is left to the BPO on a reappointment vote.

5. The BPO met to consider and vote on Plaintiff's reappointment on May 7, 2012. SOM Dean Snyder chaired that meeting, but did not participate in the deliberations, did not indicate a preference, and did not vote. Dean Metrick participated only to the extent that he was required to answer procedural questions. After discussion, the BPO conducted its vote on Plaintiff's reappointment: six members voted in favor of reappointment; nine members voted against; and three abstained from voting. Both of the female BPO members present voted against Plaintiff's reappointment.

6.     Dean Snyder then sent Plaintiff a letter formally informing her of the negative outcome of the May 7, 2012 BPO vote and informing her that he would not overturn the vote of the BPO.  The testimony of both former Dean Podolny and Dean Snyder at the hearing before this Court on plaintiff's Motion for Preliminary Injunction was to the effect that although the Dean has the power to reject a faculty vote on a reappointment, business school deans in fact almost never do that.  Dean Podolny testified he had never overturned a faculty vote.  Dean Snyder testified that he had served as a dean at several different institutions over a period of 20 years, and he had never countermanded a faculty vote on an appointment or reappointment.

7.     On June 19, 2012, Plaintiff submitted a letter to Yale Provost Peter Salovey requesting review and reconsideration of Dean Snyder's decision adopting the May 7, 2012 BPO vote.  It was the contention of the plaintiff that SOM had utilized an inappropriate standard of review for her reappointment and that she had been disadvantaged because the Dean's Office had failed to disseminate the most recent course evaluations relating to the spring 2012 State & Society course.  Dean Metrick has testified that those materials were not made available to the BPO for the reason that the student evaluations contained very negative comments about the plaintiff, and it was thought that producing those evaluations at that time, without the ability to respond completely to them, would be unfairly prejudicial to the plaintiff.  The evaluations from the spring 2012 iteration of the State & Society course included the following comments:

- "I hate to say it but I think Connie might be one of the worst teachers I've ever experienced (sorry!)."

- "Professor Bagley showed herself completely incapable of teaching law, which appeared to be her primary function. This manifested itself in two ways. She

3

would be unable to present basic concepts clearly, and would also go on long ranting tangents that had nothing to do with the presented material."

- "The net result is that literally no one in the class learned anything. People had to post analysis on Facebook to provide a basic understanding of these issues."

- "She would frequently abandon the materials she assigned to go on long rants on the legal field. In one class, for example, she discussed Lochner at length – which almost no one here has read, and said that the Roberts Court was moving us back to the Lochner era. That then led to an abortion rant (in which only she participated) that had no relevance to any of the readings or assignments, but appeared only to showcase her political views."

- "She often gets the laws wrong. During her long rant on abortion, for example, Professor Bagley criticized Casey as the case on privacy that set the stage for Roe. That case was Griswold. Casey came after Roe."

- "Literally every class she would insist on mentioning she went to Harvard Law School. We know now. You don't have to keep saying it."

- "In one class Professor Bagley barged in late and said: 'I was just in a meeting with the Dean. I'm sorry, but the Dean is more important.' I found this incredibly rude, both to students but far more importantly, to the two guests we had from the Soros Fund. One does not invite guests, and then insult them by saying other commitments are more important."

- "The main weakness of Connie was her style. Her style hindered the learning process and made this a dreaded class to attend."

- "She should also work on not interrupting students and their thought process when asking a student questions, rather than giving them less than a nanosecond."

- "The way Connie leads discussions is frantic and does not get the most out of students. She often asks vaguely worded or nebulous questions that do not add value to the conversation. The yelling in the middle of class is really not acceptable."

- "She often becomes discombobulated while presenting, speaks too rapidly and does not clearly and succinctly outline the legal concepts in a manner digestible by people who have non-law backgrounds."

4

- My view, and that of many of my classmates, is that she confuses more issues than she illuminates."

- "She sometimes goes off on tangents unrelated to the course which ends up being distracting and even derailing."

- "Never finished sentences. Asked questions but did not allow students to answer before she stated berating them. Was hard to understand what she was asking."

- "She came to class several times unprepared (once telling us she was unprepared because she celebrated her son's birthday over the weekend). Birthdays are an entirely predictable event that can be worked around in preparing for a six week class that you had taught before."

- "Lectures were poorly organized. Questions were circuitous and confusing. She also used a lot of jargon and inside references that I totally missed. Law jargon will likely go over the head of many SOM students."

- "It is really unhelpful when she spends time name dropping. I get it. She taught at Stanford and Harvard. She does research with famous researchers. She was almost the original counsel for Google and would be really rich right now if she had gone through with that. Etc., etc."

- "She tends to obfuscate relatively simple legal issues. While she is prepared, her questions in class are often unclear and seem undirected."

- "Frantic at times; tone can be combative."

- "She needs some order to her lectures. They bounce around way too much and it is impossible to take anything from them."

- "She speaks about her personal life and professional background far too much in my opinion. It is usually irrelevant and sometimes uncomfortable."

- "Cold calling students and asking them about minute details in the case don't add to the discussion, especially since cases are really long."

- "Teaches class like she would a law school class, making it not very interesting for MBA students."

- "The questions she asked usually just scratch the surface. And I am not sure if she does enough research in the real business world."

- "Unstructured, always in a rush, so the material she was trying to present often confused students."

- "Asks complicated, long-winded questions that are difficult to follow. Forgets most of us don't have legal training or experience living and working in foreign countries."

- "Not engaging in a positive way."

- "Wastes a tremendous amount of time talking about her Stanford experience or her time as a teacher at Harvard."

- "Sometimes made legal issues more complicated than it seemed like they needed to be. Sometimes this was because explanations of concepts were interrupted by tangential points."

- "Frantic, under-structured classroom environment. Jumps from topic to topic without clear transitions. Often expects case minutia to be memorized, even when this information can be easily looked up."

- "Most of Professor Bagley's lectures were poorly organized."

- "I feel like we spent a lot of time listening to her resume in repeated classes (Stanford …) very impressive but not necessarily relevant to rehash in every class."

- "Though familiar with the legal material she covered, I found her presentations borderline incoherent."

- "In conversations with students who did not have a legal background, I learned that many of them got little from the lectures."

- "I also found that Professor Bagley's manner with students often discouraged class discussions. She is inexplicably aggressive when calling on students and rarely gives them the time to speak or offer their own ideas."

- "She has a hard time sticking to the topic of the case. Often she drives the class to topics only tangentially related."

- "In spite of Prof. Bagley's insistence on the first day of class that this would be a "safe space" for people to express their opinions, regardless of what those might

- be, it became clear early on that this was all talk. I have never felt so threatened for my political beliefs as I have in Professor Bagley's class."

- "If this is to be improved, I would recommend that Prof. Bagley make a concerted effort not to inject her personal political beliefs into class discussion, or at least not ridicule the beliefs of others at the expense of limiting class discussion."

- "Connie can get too caught up on the legal side of issues."

- "Her lectures were extremely disorganized and tangential. She tends to name drop top universities so much it gets annoying."

- "Some discussions are scattered and incoherent."

- "She's all over the place with her classes, and the way she asks people to participate, instead of encouraging participation actually hinders it because she is very confronting about it."

- "Extremely difficult to follow in lecture – poor organization – reviews minutia of case without driving toward a point – overly aggressive."

- "Goes on too many tangents which distract from the points she's trying to make."

- "Her lectures often confuse me. She often talked about a number of things very quickly and I had trouble following her."

- "She is way over the top and bitter when interacting with students."

- "Not organized thinking. Not structured class. Kept interrupting the guest speakers, the students could not get the most from the speakers."

- "Connie lacks some professionalism. She often goes on wildly absurd tangents calling herself a 'college slut' ???), and often intimidates students through her aggressive questioning."

8.  In response to the plaintiff's request for reconsideration of the faculty vote, Provost Salovey ordered a second review of Plaintiff's request for reappointment. He specified that SOM should clarify the standards for reappointment as a PiP and provide the student

7

evaluations for the spring 2012 State & Society course to the BPO prior to the vote. A new review committee, chaired by SOM Professor Edieal Pinker, was selected to conduct the review as outlined by Provost Salovey.

9. On October 21, 2013, the BPO met again to consider the renewal of Plaintiff's five-year appointment. Sixteen faculty members voted against Plaintiff's reappointment; two voted in favor of reappointment; and two abstained from voting. All three of the female BPO members present voted against Plaintiff's reappointment. A total of four BPO members who were present at both the May 7, 2012 and October 21, 2013 votes switched their initial "yes" votes to "no." No one present at both meetings switched a "no" vote to "yes." Just one BPO member voted in favor of reappointment at both meetings.

10. On November 7, 2013, Dean Snyder once again declined to upset the vote of the BPO and sent a letter to Plaintiff informing her of that.

11. There was no one single reason for members of the BPO to vote as they did. A total of 15 members of the BPO voted at the first meeting, and 18 voted at the second. The votes were either in favor of or against reappointment; faculty members were not required to provide a reason for their positions. There were a number of reasons for individual members of the faculty to vote as they did, and not all faculty members agreed on all of those reasons. The criteria for the reappointment of PiP's are: scholarship, teaching, service to the University and need for the position. All members of the BPO who have indicated their reasons for voting against reappointment have stated that they had no reservations about Professor Bagley's service to the University. However, each of the other three criteria were mentioned as reasons for the negative

vote. No one mentioned her gender. It bears noting that most of the faculty members who voted negatively on the reappointment in 2012 and 2013 had voted in favor of the initial appointment in 2008. That fact provides powerful evidence of the absence of gender discrimination. Specific comments by particular faculty members include the following:

- Some faculty members were not in favor of having a full-time faculty member teaching Law & Management at SOM, whether in State & Society or any other course. Some felt that the legal perspective could be obtained by forging a closer relationship with the Yale Law School, while others suggested practicing lawyers could teach elective courses.

- Professor Rae was originally an enthusiastic supporter of Professor Bagley. He had taught with her during the spring semester of 2008 when she was a visiting faculty member, and he wrote the report of the Review Committee which recommended that she be given the initial five year appointment as a Professor in the Practice starting July 1, 2008. Professor Bagley and Professor Rae then taught together successfully for the next several years. During their final year of teaching together, the relationship deteriorated, and Professor Rae ultimately decided to vote against reappointment. It was his view that Professor Bagley's dedication to the school and the State & Society course had waned; although each of them was expected to participate in every class session of the State & Society course, Professor Bagley missed approximately one quarter of the class sessions in the spring, 2012 rendition of the course. Professor Rae was also troubled by the fact that she was steering the course further towards a legalistic approach, whereas he had favored a more balanced approach between the legal and political science underpinnings of the course. His concerns were exacerbated by the fact that Professor Bagley was uncompromising with regard to course content. Furthermore, he was troubled by the fact that she had made untrue derogatory comments about him, and had acted unprofessionally in a manner which impacted negatively on the students' experience in the course. While he voted against her, it had nothing to do with her gender. Similarly, his prior enthusiastic support of Professor Bagley was not gender-related.

- Professor Nalebuff has indicated that one reason he voted against the plaintiff's reappointment is that he has serious reservations about her scholarship, both as to its rigor and as to its accuracy. He also believes that the erroneous views expressed in her scholarship have "spilled over" into her teaching, which in his view makes her a less desirable faculty member for SOM.

9

- Professor Bracken, who had written a favorable report for reappointment and had voted in favor of reappointment at the May 7, 2012 BPO meeting, changed his mind and voted in the negative on October 21, 2013. He has stated that a significant factor in changing his vote was that when he reviewed the student evaluations from the spring 2012 State & Society course, he came to the conclusion that Professor Bagley had acted unprofessionally in permitting the deterioration of her relationship with Professor Rae to destroy the course for the more than 300 students who were enrolled in it during the spring of 2012. He also indicated that he believed the course had drifted away from its origins in a way that he did not believe was best for the school.

- Professor Judy Chevalier has noted that she was not in favor of having a full-time faculty member teaching in the area of Law & Management at SOM, in the State & Society course or in any other course. She believed the school would be better served by engaging legal scholars from the Yale Law School to the extent that legal expertise is needed at SOM. She also observed that the focus of the school in 2012 had become much more international with the arrival of Dean Snyder, and therefore the focus on American legal process was not as important as when Dean Podolny served as the Dean. Professor Chevalier further indicated that in her view the initial appointment of Professor Bagley in 2008 was "an experiment," and she believes that the experiment failed. Consequently, she was opposed to continuing the experiment and voted against reappointment in 2012 and again in 2013.

- Professor Sharon Oster served as the interim Dean of SOM immediately prior to Dean Podolny being appointed as Dean. Although she voted in favor of the initial appointment of Professor Bagley in 2008, she voted against reappointment in 2012 and again in 2013. She has indicated that while she was not enthusiastic about the initial appointment in 2008, she believed it was appropriate to back the recommendation of the new Dean at that point. Over the course of the next several years, she became convinced that her initial reservations were warranted. She did not favor the extensive legal content of the State & Society course, and she believed it would be preferable to form a closer alliance with the Yale Law School, if legal content were deemed necessary. Furthermore, she was extremely disappointed by the fact that the course disintegrated because of the breakdown of the personal relationship between Professor Bagley and Professor Rae, to the point where the more than 300 students were significantly disadvantaged.

12. Although they did not vote either time on the reappointment, both Dean Snyder and Dean Metrick took steps to maximize the plaintiff's prospects for reappointment. In a

10

meeting with Dean Snyder and Dean Metrick shortly before the May 7, 2012 vote, Professor Bagley indicated that she would require "at least" a 10 year contract renewal, as well as an expansion of her voting and meeting rights beyond those held by other faculty members of her rank, in order for her to remain at SOM. Following this meeting, Dean Metrick inquired from the Provost's Office as to whether a 10 year contract could be granted by the BPO. He learned that this would require approval from the President of Yale. Dean Metrick then sought out and received that approval from then President Richard Levin. The plan was to seek a 10 year renewal following the initial vote on a 5 year renewal, if the first vote had been successful. The student evaluations from the spring 2012 State & Society course were first available to the Dean's Office on the Friday prior to the May 7, 2012 vote. The deans reviewed those evaluations and concluded that releasing them to the BPO so shortly prior to the vote would severely reduce any chance Professor Bagley had for reappointment. They therefore decided to withhold that information from the BPO until after the vote was taken. Although this strategy did not produce a vote that was positive to the plaintiff, it did give her the best chance for reappointment.

> THE DEFENDANTS
> YALE UNIVERSITY, DOUGLAS RAE,
> EDWARD SNYDER and ANDREW
> METRICK, Individually
>
>
> BY:   /s/ Patrick M. Noonan  (#ct00189)
> Patrick M. Noonan
> Donahue, Durham & Noonan, P.C.
> 741 Boston Post Road
> Guilford, CT 06437
> (203) 458-9168

## **CERTIFICATION**

     I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                  /s/
                                      Patrick M. Noonan