UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                        )
CONSTANCE E. BAGLEY,                    )
                                        )
       Plaintiff                        )
                                        )
  v.                                    )   Civil Action No. 3:13-cv-01890 (CSH)
                                        )
YALE UNIVERSITY, DOUGLAS                )
RAE, EDWARD SNYDER, AND                 )
ANDREW METRICK, Individually,           )
                                        )
       Defendants.                      )
_____)

**PLAINTIFF'S OPPOSITION TO
THE DEFENDANTS' MOTION TO COMPEL**

Plaintiff Constance E. Bagley ("Plaintiff or "Professor Bagley") submits this Opposition to the Defendants' Motion to Compel her deposition. As the facts and circumstances of the case are fully stated in the Court's prior decisions (Haight, Senior District Judge), and most recently in the Court's orders on Plaintiff's Motion to Compel and Motion for Clarification [Dkt. Nos. 160, 162], Plaintiff assumes the Court's familiarity with the factual background of this dispute.

Professor Bagley initiated this action more than two years ago. As of the date of this Opposition, the Defendants have not served a Notice of Deposition for Professor's Bagley's deposition, and they did not indicate any intention to depose her until after the parties mutually agreed to hire a mediator and confirmed a mediation date with that mediator. The Defendants have repeatedly delayed discovery, and by their actions evidence an intention to interpose Professor Bagley's deposition merely to cause further undue delay. Their Motion to Compel not only suffers from procedural infirmities,[1] but is also deficient in substance. Therefore, the

---

[1] The Defendants failed to comply with Fed. R. Civ. P. 30(b)(1) prior to filing their Motion to Compel and, in fact, as of the date of this Opposition, still have not served a Notice of Deposition for Professor Bagley's deposition. In

1

Motion should be denied.

## PROCEDURAL HISTORY

Professor Bagley filed this action on December 20, 2013. Pursuant to the Court's initial Order on Pretrial Deadlines, the parties were authorized to commence formal discovery after the Rule 26(f) conference on February 4, 2014, more than two years ago. See Exhibit A, Order on Pretrial Deadlines, dated December 20, 2013. In March 2014, the Defendants filed their Motion to Dismiss this action. The Court ordered a stay of depositions pending its ruling on the Defendants' Motion to Dismiss, but allowed the parties to proceed with document requests.[2]

Professor Bagley served her first written discovery requests in July 2014, nineteen months ago. Later that same month, she served her first Notices of Deposition (of Defendants Edward Snyder, Douglas Rae, and Andrew Metrick). In August 2014, the Defendants obtained a sixty-day extension of time to, to October 8, 2014, to respond to Professor Bagley's document requests. The Defendants served their first set of document requests on October 2, 2014, eight months after formal discovery began. Professor Bagley served her response to the requests on October 15, 2014.

On November 14, 2014, Professor Bagley moved the Court for a preliminary injunction, seeking to prevent Yale from removing her from her position as a PIP within the SOM, pending a dispositive order. At the preliminary injunction hearing, the Defendants' counsel suggested that the relief Professor Bagley sought was unnecessary, in part, because this case would be tried within nine months to a year. See Exhibit B, Excerpts of December 9, 2014 Preliminary

---

the absence of proper Rule 30(b)(1) notices, courts have declined to compel witnesses, including parties, to attend depositions. See Pegoraro v. Marrero, 281 F.R.D. 122, 128 (S.D.N.Y. 2012); see also Hotel Management Group, Inc. v. CC, LLC, No. 6:07-cv-488-Orl-22DAB, 2008 WL 1990666 (M.D. Fla. May 5, 2008) (without a Rule 30(b)(1) notice, there was "nothing for the Court to 'compel'").

[2] The Court's ruling on the Motion to Dismiss was issued in August 2014.

Injunction Hearing Transcript; Exhibit C, Except of December 11, 2014 Preliminary Hearing Transcript. The Defendants' counsel also spent hours questioning Professor Bagley extensively on her claims and damages in this case. The Court issued its Ruling on Professor Bagley's Motion for Preliminary Injunction on December 12, 2014.

On January 14, 2015, Professor Bagley served a second set of document requests, along with additional Notices of Deposition. In February, the Defendants filed motions for protective orders asking to be relieved from any further obligation to produce electronic discovery, and seeking to impose a two-hour limit on the properly noticed deposition of President Peter Salovey. Both motions were denied in April 2015.

On September 11, 2015, eleven months after the Defendants served their first set of document requests, they served a second request for production of documents, along with interrogatories. Professor Bagley served her third document request, a single request, on November 17, 2015. The Defendants never, and to this day have not, served a Rule 30(b)(1) Notice of Deposition for Professor Bagley's deposition.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(2) authorizes this Court to "limit the frequency or extent of discovery otherwise allowed by the [federal] rules or by local rule if it determines that: … the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Further, under Rule 26(c)(1),

> [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding … discovery; (B) specifying terms, including time and place or the allocation of expenses for the disclosure or discovery…

The Court's broad discretion over discovery matters under the Federal Rules "'includes the discretion to determine whether a movant's tardiness constitutes undue delay.'" See Joseph v. Sikorsky Aircraft Corp, No. 3:14CV00424(AWT), 2015 WL 5304177, at *3 (D. Conn. Sept. 9, 2015) (quoting West v. Miller, No. 05C4977, 2006 WL 2349988, at *5 (N.D. Ill. Aug. 11, 2006)).  It also includes "prevent[ing] the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." See In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69-70 (2d. Cir. 2003).  The circumstances of this case warrant such an exercise of discretion.

In their Motion to Compel, the Defendants argue that the time commitment required to comply with Professor Bagley's discovery requests "made it difficult to schedule the plaintiff's deposition and prepare to question her."  Defs.' Motion to Compel, at 2-4.  Yet, the Defendants cannot demonstrate any supportable factual basis for such an assertion of "difficulty."

As the Defendants' own counsel acknowledged during the February 5, 2016 status conference, the Defendants have failed to provide Professor Bagley the comparator discovery that the Court ordered be produced more than eight weeks ago.[3]  While Professor Bagley has been responsive to the Defendants' discovery requests since 2014, it has taken her hours of negotiating and months of delays to get the Defendants to meet their discovery obligations. Moreover, the Defendants never tried to take Professor Bagley's deposition until now, when discovery has wound down the case is ripe for trial.  See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 112 (2d Cir. 2002) (observing that "as a discovery deadline or trial date

---

[3] In its December 14, 2015 Ruling on Plaintiff's Motion to Compel and December 28, 2015 Order on Plaintiff's Motion for Clarification, the Court ordered the Defendants to produce discovery concerning comparators who applied for or received reappointment during the period of time Professor Bagley held the rank and position of Professor in the Practice.  However, the Defendants have produced only a handful of documents and have failed to offer any legitimate explanation for their ongoing failure to comply with the Court's discovery orders.  The Defendants have also refused Professor Bagley's requests that they identify a date by which their compliance can be expected.

4

draws near, discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court"). Therefore, the Defendants cannot argue, in good faith, that they did not have sufficient time or opportunity to seek Professor Bagley's deposition.

Moreover, although the Defendants claim that they seek to depose Professor Bagley to "move this case forward," that is not how the Defendants have proceeded. To the contrary, they have taken steps to delay discovery and resolution of this case.

Recently, Professor Bagley's counsel spent a week attempting to work with the Defendants' counsel and the parties' chosen mediator to schedule a mediation.[4] On February 2, 2016, after the parties reached an agreement on the date (April 18, 2016) and confirmed the date with the mediator, the Defendants mentioned, for the first time, deposing Professor Bagley before the mediation. The Defendants never conditioned mediation upon any deposition, and never raised the issue as Professor Bagley's counsel sorted through various scheduling conflicts to identify a mutually acceptable date.[5] However, now, the Defendants have withdrawn from mediation based on challenges Professor Bagley raised to their demand for a deposition that they failed to properly notice or otherwise pursue throughout the protracted discovery in this case.[6]

Despite having had a full and fair opportunity to depose Professor Bagley over the course

---

[4] On January 26, 2016, more than six weeks after the Defendants were ordered to produce key comparator information, the Defendants attempted to use the mediation as an opportunity to avoid timely compliance with the Court's December 14, 2015 Ruling. The Defendants requested a stay of discovery in light of the mediation, which Professor Bagley denied. In that correspondence, the Defendants never expressed any intent to depose Professor Bagley.

[5] The Defendants made clear that the insurer was unwilling to mediate on a weekend, but never expressed any intention to depose Professor Bagley. Similarly, when the parties discussed mediation in February 2015, the Defendants agreed to mediate and, even then, never mentioned Professor Bagley's deposition.

[6] On February 9, 2016, the date the Defendants' Motion to Compel was filed, Professor Bagley's counsel learned that counsel for the Defendants called the mediator's office to cancel the April 18, 2016 mediation date. Since then, the Defendants' counsel has indicated that he is no longer available on the dates in early March on which he wanted to depose Professor Bagley and, due to his trial and vacation schedule for the month, even if the Defendants' Motion to Compel is granted, he will not be able to depose Professor Bagley, obtain a copy of the transcript, and prepare a mediation statement before April 18th.

5

of two years, the Defendants chose not to do so. Now, the Defendants have asked this Court to overlook their partial compliance with discovery rulings and order a deposition that they have yet to properly notice. The Defendants should not have the privilege to continue prolonging discovery and delaying a resolution of this case at Professor Bagley's expense.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' Motion to Compel. However, should the Court decide to grant the Defendants' Motion, Professor Bagley requests that:

1) The deposition be held on one of the following days, and be concluded on that day:

   March 1, 2016
   March 2, 2016
   March 3, 2016
   March 10, 2016
   March 22, 2016
   March 23, 2016
   March 29, 2016
   March 30, 2016
   March 31, 2016;

2) The Plaintiff be entitled to recover attorney's fees and costs associated with the wasted time and effort expended to schedule a mutually agreed-upon mediation that the Defendants unilaterally cancelled; and

3) The Defendants be order to pay the Plaintiff's costs (including costs associated with her attorney's travel, accommodations, and transcription costs) and her attorney's fees for attendance at deposition.

                                                 Respectfully Submitted,
                                                 Constance E. Bagley
                                                 BY HER ATTORNEYS,

                                               /s/ Laura R. Studen
                                               Laura R. Studen, Esq.
                                               lstuden@burnslev.com
                                               Ellen J. Zucker, Esq.
                                               ezucker@burnslev.com
                                               Carla A. Reeves, Esq.
                                               creeves@burnslev.com
                                               Burns & Levinson LLP
                                               125 Summer Street
                                               Boston, MA 02110
                                               617-345-3000

Dated: February 14, 2016

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on February 14, 2016, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

      /s/ Carla A. Reeves
      Carla A. Reeves

4823-0688-8750.3

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ORDER ON PRETRIAL DEADLINES

This Order is issued pursuant to the Standing Order on Scheduling In Civil Cases which appears in the Appendix to the Local Civil Rules. Unless otherwise ordered by the Judge to whom this is case is assigned, the parties shall adhere to the following deadlines:

(a) In accordance with Local Civil Rule 26(f), within 30 days of the appearance of a defendant, the parties must confer for the purposes described in Fed. R. Civ. P. 26(f). Within 14 days thereafter, the parties must jointly file a report using Form 26(f), which appears in the Appendix to the Local Civil Rules. The report will be used to establish a scheduling order, which will include a date by which the case must be ready for trial.

(b) In accordance with Fed. R. Civ. P. 16(b), motions for modification of the dates set forth in the scheduling order issued pursuant to the parties' 26(f) report will not be granted except for good cause. This standard requires a particularized showing that the scheduling order could not be complied with despite due diligence on the part of the party seeking the modification. Any such motion must be filed in writing at least five days before expiration of the date in question.

(c) Formal discovery pursuant to the Federal Rules of Civil Procedure may commence once the parties have conferred as required by Fed. R. Civ. P. 26(f) and Local Civil Rule 26(f).Informal discovery by agreement of the parties is encouraged and may commence at any time. Unless otherwise ordered, discovery must be completed within 6 months after the filing of the complaint, the filing of a petition for removal, or the date of transfer of an action from another District.

A copy of this Order must be served by the plaintiff on all defendants.

By Order of the Court
Robin D. Tabora, Clerk

Rev 8/1/13

# EXHIBIT B

```
 1    until about three years from now.  Is that right?
 2         A    Most likely that's correct.
 3         Q    And so assuming that the Court calendar
 4    allowed us to have the trial between now and then,
 5    it would be, assuming you were to win and be
 6    reinstated, you would again be able to represent on
 7    the book jacket that you were at the Yale School of
 8    Management.  Is that right?
 9         A    I would, but the sales reps wouldn't be
10    able to represent it to the faculty considering
11    publication.
12         Q    Okay.  If it were done within the next --
13    let me ask you this:  Supposing the Court can
14    schedule a trial within the next, say, nine months,
15    or even a year, up to next December, you'd still be
16    62 years old by then.  Is that right?
17         A    Yes.
18         Q    And as you said yesterday, it would be
19    easier for you to get a job, then, if you chose to
20    look for a job, if you were 62 rather than 64.  Is
21    that right?
22         A    I believe so.
23         Q    And if you were -- if you were successful
24    in the trial within the next year and reinstated,
25    then you would be able to tell the publishers of
```

1  your textbooks that you'd been -- you indeed are
2  still a member of the Yale School of Management.  Is
3  that right?
4       A    I have two textbooks.
5       Q    Right.
6       A    The --
7       Q    Could I just get an answer to the
8  question, though?
9       A    I thought you said plural.
10      Q    Would you be able to tell -- if you were
11 to postpone the publication of your textbooks by at
12 least nine months to a year, would you be able to
13 inform the publishers at that time that -- and you
14 got reinstated that you were actually affiliated
15 with the Yale School of Management?
16      A    So I want to make sure I'm understanding
17 the question.
18      Q    Sure.
19      A    As I testified yesterday, and I think I
20 made clear, the first book, *Managers and the Legal
21 Environment,* will be out the end of December.  The
22 second book, the publisher is asking me to begin the
23 5th edition on the assumption that I still have this
24 rank at Yale.  I honestly don't know how they would
25 respond if I told them I had only the rank of senior

1  about 100 schools across the country?
2       A    As of the last record I received from the
3  publisher, each of them was being used at more than
4  100 schools.
5       Q    And have any of the schools indicated to
6  you that they will not continue to use the book that
7  they -- the books that they've been using?
8       A    I have not directly raised that with
9  them.
10      Q    Okay.  So is it fair to say that there is
11 no one who has told you that the more than 100
12 schools which use these two books will cease using
13 them over the next nine months to a year in the
14 event that you're not affiliated with the Yale
15 School of Management?
16      A    I can only speak to my own experience.
17      Q    Right.  What I'm asking you, ma'am:  Has
18 anyone told you from the schools at which your books
19 are being used that they will not use your books
20 over the next nine months to a year if you are not
21 affiliated with the Yale School of Management?
22      A    No.
23      Q    Now, you also indicated yesterday that you
24 thought there would be some advantage to having an
25 affiliation with some institution when you publish

```
 1      A    Since I came to Yale.
 2      Q    Okay.  And --
 3      A    Actually that's not true.  I'm sorry.  It
 4 was -- I had been here perhaps six months, something
 5 like that.
 6      Q    And do you anticipate treating with
 7 Dr. Laub in the coming months irrespective of
 8 whether Judge Haight grants or request for
 9 injunction or not?
10      A    Given that even if he grants the
11 injunction, the trial will still be ahead of me,
12 yes.  Absent a wonderful settlement offer.  We can
13 make it all go away.
14      Q    Well, you know, I've been trying to engage
15 your lawyer on that for some time but I haven't had
16 a whole lot of response.
17           THE COURT:  Move on.
18           MR. NOONAN:  Will do.
19 BY MR. NOONAN:
20      Q    Now, you have indicated that you actually
21 are a brand name out there to people in your
22 field?
23      A    In my field, yes.  I was the president of
24 the academy in my field.
25      Q    And do you think that that's likely to
```

```
 1   continue for the next, say, nine months to a year
 2   before this case gets tried?
 3        A    If I have only the appointment of senior
 4   research scholar and no longer a professor --
 5   professorial appointment?
 6        Q    Yes.
 7        A    I think people will justifiably wonder, as
 8   I would, what happened to Professor Bagley?
 9        Q    Right.  And will people, to the extent
10   that you want to publish something, given your past
11   successes, do you think that people will in fact
12   read it to see whether you still have the same
13   quality of prose as you had in the past?
14        A    As I mentioned, if I'm a law review editor
15   and I have thousands of manuscripts and I realize
16   that there are many from professors at top schools
17   and there's one from someone who is merely a senior
18   lecturer from albeit the top law school or a top law
19   school, then I would be far less likely to take the
20   time to read what are usually about 30,000 word
21   articles replete with some 400 footnotes to find out
22   whether she's kept her edge or not.
23        Q    And the -- but do you agree with me that
24   those out there who know of your brand name, at
25   least, are likely to be willing to give you a
```

1  things require me to -- what my schedule is.  If I'm
2  teaching, it will take longer.  On the other hand,
3  I -- frankly, with that one, I'm thinking that that
4  one more the August time frame.
5      Q    Okay.  And so you could submit one in
6  February and one in August.  And if it turned out
7  that you were going to have a trial, say, nine
8  months or a year from now, say next fall, you could
9  then submit -- if you were not successful on these
10 two articles this year, you could submit them the
11 next -- well, I think you said there was something
12 in the fall, too, that you could submit or not?  Is
13 that a period of time?
14     A    Again, there tend to be the two windows.
15     Q    It's just February and August?
16     A    Well, they're rolling submissions.  But if
17 one looks at the statistics of one's likelihood of
18 success, because the volumes fill so quickly, I
19 would, with respect to the first article, have lost
20 the opportunity to be able to send it directly to
21 the European commission saying that this is
22 publication forthcoming and X law review.  And I
23 think thereby lost an irretrievable opportunity to
24 potentially make a difference in whether inventions
25 in universities lead to life-saving treatments or

# EXHIBIT C

```
 1              Well, she's got -- she testified herself
 2         she's got a brand.  It doesn't go away
 3         because she's not employed for nine months
 4         or a year.  I mean, she's got 100 schools
 5         that are buying her textbooks.  One
 6         textbook, we know, is not in jeopardy
 7         because that's not going to be published
 8         again for at least three years.  The other
 9         textbook -- and, again, you know, the
10         standard on preliminary injunctions is
11         actual, hard evidence.
12              Let's talk about the entrepreneurship
13         book.  What she said is that she has
14         talked with her publisher several months
15         ago about when she'll start to work on
16         this.  She -- there's no suggestion she
17         started yet.  She didn't ask the publisher
18         whether this would be continued to be
19         published if she was no longer employed by
20         the school of management.  Didn't ask at
21         all.  She said she didn't know what the
22         publisher would respond with respect to
23         her newly acquired -- or not newly
24         acquired, but the new information that she
25         will continue her association with the
```