UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTANCE BAGLEY | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:13 CV 1890 (CSH) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, DOUGLAS RAE, | : | |
| EDWARD SNYDER and ANDREW | : | |
| METRICK, Individually | : | NOVEMBER 23, 2016 |
| | : | |
| Defendants | : | |

### DEFENDANTS' OBJECTION TO MOTION TO COMPEL

The defendants, Yale University ("Yale"), Douglas Rae, Edward Snyder and Andrew Metrick, hereby submit the following objection to the plaintiff's November 4, 2016 Motion to Compel. After more than two years of discovery, including the depositions of twenty-one Yale employees and service of an excessive number of production requests, the plaintiff now claims that she is entitled to, *inter alia*, the production of litigation hold notices issued by Yale, in order to determine whether to pursue a motion for sanctions. The plaintiff bases her motion on the assertion that the defendants "have intentionally failed to produce documents that more likely than not existed at some time, but that no longer available." (Document No. 191, p. 11.) However, the plaintiff fails to provide a single example of a document that the defendants have not produced. Indeed, the plaintiff's accusations of wrongdoing are either incorrect, without any support or basis,

or too vague to even permit a response. As such, the plaintiff's Motion to Compel should be denied.[1]

The Federal Courts have routinely held that "'litigation hold' letters exchanged between attorneys and their clients are privileged communications." McDevitt v. Verizon Services Corp., 2016 U.S. Dist. Lexis 34777, *2 (E.D. Pa. Feb. 22, 2016). See e.g. EEOC v. Beauty Enters., 2008 U.S. Dist. LEXIS 60414, *14-15 (D. Conn. Aug. 8, 2008) (Nevas, J.) (denying plaintiff's request for production of a letter from counsel to the defendants' supervisors advising them to implement a litigation hold on the ground that "the communication is privileged"). In Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1123-1124 (N.D. Ga. 2007), the plaintiff requested the document sent to the defendant's employees instructing them not to destroy certain types of documents that were required to be maintained as a result of the litigation. The court denied this request, reasoning as follows:

> In the Court's experience, these instructions are often, if not always, drafted by counsel, involve their work product, are often overly inclusive, and the documents they list do not necessarily bear a reasonable relationship to the issues in litigation. This is not a document relating to the Defendant's business. Rather, the document relates exclusively to this litigation, was apparently created after this dispute arose, and exists for the sole purpose of assuring compliance with discovery that may be required in this litigation. Not only is the document likely to constitute attorney work-product, but its compelled production could dissuade other businesses from issuing such instructions in the event of litigation. Instructions like the one that appears to have been issued here insure the availability of information during

---

[1] It should be noted at the outset that the plaintiff has been aware of the date when Yale first issued litigation hold notices since March 30, 2015, when Yale responded to her Second Set of Interrogatories. Almost one year later, in a conference call with this Court, the plaintiff was ordered to file an "omnibus" motion addressing all of the defendants' alleged discovery deficiencies. Despite this instruction, and despite the fact that the plaintiff was aware of the date of the first litigation hold notices, she did not seek disclosure of litigation hold notices at that time. As such, this appears to be nothing more than the plaintiff's latest attempt to prolong the discovery phase of this litigation.

>litigation. Parties should be encouraged, not discouraged, to issue such directives. Defendants are not required to produce these materials.

Id. Similarly, in Muro v. Target Corp., 250 F.R.D. 350, 360, 2007 U.S. Dist. LEXIS 81776 (N.D. Ill. 2007) the court upheld the magistrate's ruling that the defendant's "litigation hold" notices are subject to the attorney-client and to work product privileges, as they constitute "communications of legal advice from corporate counsel to corporate employees regarding document preservation." Id. See also Turner v. Resort Condos. Int'l, 2006 U.S. Dist. LEXIS 48561, 2006 WL 1990379, at *7-8 (S.D. Ind. July 13, 2006) (accepting defendant's assertion that its litigation hold document is privileged and denying plaintiff's motion to compel defendant to produce the document in discovery).

Although some courts have recognized an exception to the general rule that litigation hold notices are privileged and therefore not discoverable, this exception applies only when the party seeking disclosure provides evidence demonstrating that spoliation has occurred. It is not sufficient for the party seeking the disclosure of a litigation hold notice to simply speculate as to the spoliation of evidence. In McDevitt, supra, 2016 U.S. Dist. Lexis 34777, for instance, the court denied the defendant's motion to compel the plaintiff to produce any litigation hold notices issued by his counsel because the defendant did not produce "sufficient evidence that would establish that spoliation occurred." Id. at *4. The plaintiff in Tracy v. NVR, Inc., 2012 U.S. Dist. LEXIS 44350, 2012 WL 1067889 (W.D.N.Y. Mar. 26, 2012), similar to the present plaintiff, sought an order requiring the plaintiff to produce its litigation hold notices in order to assess whether to pursue a "full blown spoliation motion." Id. at 18. The court denied the plaintiff's motion because the plaintiff did not establish "that documents that should have been preserved by NVR were lost or

destroyed." Id. at 30.  See also Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 425 nn.15-16 (S.D.N.Y. 2004) (disclosing the details of counsel's litigation hold communication after discovering that at least one e-mail had never been produced).

It should also be noted that the Federal Courts addressing this issue often determine that the production of the date on which the litigation hold notice was sent and the names of the recipients of the notice is sufficient.  See e.g. Beauty Enters., supra, 2008 U.S. Dist. LEXIS 60414 at *15; McDevitt, supra, 2016 U.S. Dist. Lexis 34777, *4.  The present defendants have already produced this information pursuant to this Court's June 15, 2015 Order. (See Document No. 187.)  Also, while courts have required production of litigation hold notices where there has been a showing of the destruction of evidence, undersigned counsel has not located any decision in which a court has required the production of a recipient's response to a litigation hold notice, or an affidavit detailing efforts to retain and produce non-ESI documents, as the plaintiff seeks here.

The litigation hold notices at issue in the present case are privileged.  The notices were drafted by attorneys employed by Yale's Office of General Counsel, and are communications of legal advice to corporate employees regarding document preservation.  See Muro, supra, 250 F.R.D. at 360.  The notices describe the obligation to preserve information, the ramifications for the failure to preserve information, and how to preserve the information.  These notices do not relate to Yale's business, but rather were created solely because of the present dispute, and for the purpose of assuring the preservation of information that may be relevant in this litigation.  Yale's attempt to preserve relevant information should not be discouraged through compelled production, which

could also dissuade other businesses from issuing such instructions in the event of litigation. Gibson, supra, 510 F. Supp. 2d at 1123-1124

Because the litigation hold notices at issue here are privileged, the plaintiff is not entitled to disclosure unless she can demonstrate that spoliation has occurred. Her attempts to satisfy this burden, however, are unavailing. As an initial matter, the plaintiff points to an alleged failure on the part of the defendants to disclose any documents related to then President Richard Levin's approval of the plaintiff's request to be considered for a 10-year contract renewal. The typical PiP reappointment is for a term of 5 years. As Deputy Dean Andrew Metrick learned shortly prior to the Board of Permanent Officer's ("BPO") vote on the plaintiff's reappointment application, a reappointment in excess of five years requires the approval of the Yale University President. The plaintiff claims that it "strains credulity" that there is no paper trail related to Dean Metrick obtaining President Levin's approval of her 10-year reappointment request. (Document No. 191, p. 4.) However, this is nothing more than an assumption, and does not constitute evidence of spoliation. In fact, there is no "paper trail" or other document formalizing this approval. The reason for this is because Dean Metrick obtained this approval in a face-to-face meeting with President Levin. (See Exhibit A, Affidavit of Andrew Metrick.) As the BPO's vote on the plaintiff's reappointment was only a matter of days away when Dean Metrick became aware of the requirement of obtaining the President's approval, he believed that meeting with President Levin in-person was the most expedient manner in which to obtain the approval. (Exhibit A, ¶¶ 5-6.) It was also easier to explain the plaintiff's situation in person, rather than through a series of emails. (Exhibit A, ¶ 6.). Therefore, the plaintiff's incredulity aside, she has not demonstrated the

5

spoliation of evidence in connection with the approval of her request to be considered for a 10-year reappointment.

In a further attempt to justify the disclosure of the litigation hold notices, the plaintiff accuses the defendants and defense counsel of engaging in a "pattern of misleading," and cites as an example an email from Dean Metrick to Professor Ian Shapiro that was allegedly not disclosed until Professor Shapiro's deposition. Again basing her argument on assumptions rather than facts, the plaintiff claims that this email would not have been disclosed had she not deposed Professor Shapiro. The plaintiff claims that this email is dated April 28, 2012 and is of importance because Dean Metrick asks Professor Shapiro to co-teach the State & Society course with Professor Doug Rae. The email in question is not attached to the plaintiff's motion nor does the plaintiff reference a Bates number. As such, it difficult for the defendants to respond to this accusation as it is unclear exactly which document is at issue. However, as the email was, in fact, produced, this is not evidence of spoliation. Furthermore, undersigned defense counsel believes that the plaintiff may in fact have intended to reference an April 22, 2012 email exchange between Dean Metrick and Professor Shapiro.[2] If that is the case, this email was produced on July 30, 2014 -- more than a year before Professor Shapiro's October 28, 2015 deposition -- as part of Dean Metrick's ESI production. As Professor Shapiro was one of the custodians designated by the plaintiff for a

---

[2] In this email exchange, Dean Metrick does not ask Professor Shapiro to co-teach the State & Society course. Rather, he asks him to consider how he feels about the course and the possibility of teaching it with Professor Rae in the future.

keyword ESI search, this email exchange was produced again on July 7, 2015, as part of Professor Shapiro's ESI production.  (See Bates Nos. YU053623-YU053625.)[3]

In an attempt to justify the disclosure of the litigation hold notices, the plaintiff also argues that, in attempting to limit discovery concerning President Salovey, the defendants misled the Court as to his involvement in this case.  This accusation is a reference to the defendant's Motion for Protective Order (Document No. 109) and completely ignores the context in which this argument was advanced by the defendants.  Considering President Salovey's status as a high ranking official, and his involvement in this case, the defendants argued that it should not take a full seven hours to complete his deposition.  In making this argument, the defendants accurately described his role.  As it turns out, a great deal of time was wasted in President Salovey's deposition with questioning about irrelevant matters such as his background, including each degree, the title of his dissertation, his publications and co-authors.  The defendants' attempt to ensure that the Yale University President did not have to spend any unnecessary time on this matter does not demonstrate that any evidence has been spoliated and therefore is not a basis upon which to order the disclosure of litigation hold notices.

In support of her motion, the plaintiff also frequently references Yale's Offer of Proof and an affidavit of former SOM employee Steven Mello.  Neither document supports the plaintiff's Motion to Compel.  The Offer of Proof was filed by the defendants on December 28, 2015 in accordance with this Court's December 14, 2015 Ruling (Document No. 160).  The Court required

---

[3] In very vague terms, the plaintiff also accuses the defendants of destroying hand-written notes, including those of Deputy Provost Frances Rosenbluth. (Document No., 191, pp. 9-10.)  Without additional detail, it is not possible for the defendants to respond to this accusation.

7

the defendants to file the Offer of Proof explaining the legitimate nondiscriminatory reasons for the nonrenewal of the plaintiff's contract so that the Court would then be able to "determine the proper boundaries of the discovery Bagley seeks to compel."  (Document No. 160, p. 16.)  The Offer of Proof is a statement regarding what the defendants intend to prove at trial.  This does not mean that a document or documents exist supporting each assertion contained in the Offer of Proof.  The decision to not reappoint the plaintiff was made by the BPO.  Much of what is asserted in the Offer of Proof merely reflects the thought processes of certain BPO members in their decision to vote against the plaintiff's reappointment, which can be established through their testimony at trial.

The affidavit of Steven Mello also does not demonstrate the spoliation of evidence or otherwise provide grounds for the disclosure of the litigation hold notices.  As stated in his affidavit, Mr. Mello was formerly employed by SOM as Associate Dean for Communications and Strategy.  Mr. Mello did not vote on the plaintiff's reappointment and did not have any role in connection with the reappointment process.  His affidavit does not state that the defendants destroyed or lost any relevant document, nor does it reference any documents that have not been produced in discovery.

As has previously been described, the defendants have gone to great lengths to locate and produce relevant documents.  The defendants' efforts, in this regard, are certainly not indicative of a party attempting to conceal evidence and the plaintiffs have not provided any evidence establishing that spoliation occurred.  While the plaintiff attempts to downplay the relevance of the defendants' production in this case to date, the substantial volume of materials produced cannot be so easily dismissed.  The defendants have now produced in excess of 60,000 pages of documents.

This includes documents from an ESI search of ten Yale custodians -- who were selected by the plaintiff -- which covered the period from January 1, 2007 to the present and utilized 25 different search terms. This aspect of the defendant's discovery compliance alone required the review of the equivalent of 2.8 million pages of emails. Compliance with the plaintiff's 75 production requests to date has required an excessive amount of additional time and effort, including the search of the files of 30 additional custodians. Therefore, the plaintiff's characterization of the defendants' production as mostly duplicative materials from only a handful of custodians is a gross misrepresentation of what has taken place.

## CONCLUSION

The plaintiff has failed to satisfy her burden of demonstrating that Yale has lost or destroyed documents that should have been preserved. As such, she is not entitled to disclosure of the litigation hold notices, responses to the litigation hold notices or an affidavit detailing efforts to retain and produce non-ESI documents. The Motion to Compel should be denied.

<div style="margin-left: 50%;">

THE DEFENDANTS
YALE UNIVERSITY, DOUGLAS RAE,
EDWARD SNYDER and ANDREW
METRICK, Individually

BY:    /s/ Patrick M. Noonan  (#ct00189)
       Patrick M. Noonan
       Donahue, Durham & Noonan, P.C.
       741 Boston Post Road
       Guilford, CT 06437
       (203) 458-9168

</div>

9

**CERTIFICATION**

      I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                                        /s/
                                                              Patrick M. Noonan