UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSTANCE E. BAGLEY, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | Civil Action No. 3:13-cv-01890 |
| ) | |
| YALE UNIVERSITY, DOUGLAS ) | |
| RAE, EDWARD SNYDER, AND ) | |
| ANDREW METRICK, Individually. ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

The Plaintiff disputes the Defendants' assertion that the litigation hold notices themselves are privileged. First, the description of Professor Bagley claims in the sought after Document Preservation Notices are vanilla in their summary of the obligations imposed by law regarding retention of documents; nothing stated in those Notices can be construed as constituting "legal advice. (See copy of Document Preservation Notice attached to Plaintiff's Motion to Compel). The Plaintiff had already filed her claims with the Connecticut Human Rights Organization before the first of the litigation hold notices were issued so the nature of her claims were already well known. This is not a case where counsel was offering advice as to the assessment of future claims or potential liability. Further, the Defendants concede that litigation hold notices are not protected by attorney-client privilege when there is evidence of spoliation. "Spoliation is defined as 'the destruction or significant alteration of evidence, or the failure to preserve property for

1

another's use as evidence in pending or reasonably foreseeable litigation.'" West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).  The timing alone of Defendant's efforts to send litigation hold notices suggests a failure to preserve evidence for known litigation.  It is undisputed that the Defendants failed to send out litigation hold notices in a timely manner.[1]

If, however, the Court concludes that the hold notices themselves (or parts thereof) are privileged, then the Plaintiff is still entitled to know what steps the Defendants took to monitor compliance.  "[A] litigation hold is not, alone, sufficient; instead compliance must be monitored."  Mastr. Adjustable Rate Mtgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc., 295 F.R.D. 77, 85 (S.D.N.Y. 2013).  Copies of the "Document Preservation Computer Survey" that accompanied the preservation notices provides evidence of the scope of each respondent's ESI document search, including whether or not a "back up" for each devise exists or existed at the time the preservation notice was sent.  There is nothing "privileged" regarding the Document Preservation Computer Survey.  Given what is now known about the dates upon which certain individuals (including key witnesses) were first advised of their preservation obligations, information on the devices searched and Yale's efforts to reach ESI that existed at one point but

---

[1] Even though the Plaintiff erroneously identified the April 2012 email exchange between Deputy Dean Metrick and Professor Ian Shapiro as dated April 28th, instead of April 22nd, 2012, but for the deposition of Professor Shapiro this exchange would never have seen the light of day.  Although the Defendants in their Opposition characterized Deputy Dean Metrick's April 22nd email as little more than a request for Professor Shapiro's opinion of the State & Society course, in fact Deputy Dean Metrick stated: "Doug views you as a possible long-run savior for [State & Society] that course, and upon reflection I agree with him."  (Yale 0006179).) Although the Defendants assert that they produced this exchange as part of Defendant Metrick's electronic discovery prior to his deposition on March 20, 2015, they have failed to provide a Bates number to support that assertion.

was subsequently "taken down" relates to Yale's obligations to follow up and monitor the preservation process.[2]

The Plaintiff is also entitled to know whether each responsive non-electronic and electronic document has been produced by the Defendants or is duly listed on a privilege log. The Defendants have given her cause to believe that they have not. As noted in the Plaintiff's Motion to Compel, the Defendants have not produced any handwritten notes from former Deputy Provost Frances Rosenbluth. Yet, when the Plaintiff met with her in the spring of 2012, before the first vote of the Board of Permanent Officers (the "BPO"), to discuss her concerns about retaliation and discrimination, the Plaintiff observed her writing down notes. Similarly, each time the Plaintiff met with Deputy Provost Stephanie Spangler, the Plaintiff witnessed her taking hand-written notes. Yet, the Defendants produced some, but not all, of Deputy Spangler's notes from scheduled meetings with the Plaintiff. Given the key roles both Deputy Provost Rosenbluth and Deputy Provost Spangler played in the events at issue in this litigation, the failure to timely preserve—and monitor—documents undermines Professor Bagley's ability to fairly and fully prosecute her case. Accepting the challenge of demonstrating that certain documents which either did exist, or would reasonably be assumed to have existed, are missing, Plaintiff's concerns regarding spoliation go way beyond mere speculation.

Yale explains in their opposition (by affidavit of Deputy Dean Metrick), there is no "paper trail" or other document formalizing the approval by President Levin of a 10-year

---

[2] Yale has represented that materials made available to the BPO for Professor Bagley's May 7, 2012 and October 21, 2013 reappointment votes, as well as the materials made available for Professor Jeffrey Sonnefeld's 2014 reappointment vote, were posted to an "internal, password protected website" that was "as a matter of course" taken off the site immediately following the BPO meetings. Therefore, Yale could not identify the "exact package" of documents posted for each vote, despite the fact that this type of comparator evidence is highly relevant to Professor Bagley's claims and was certainly known to Yale to constitute relevant evidence.

reappointment request for Professor Bagley.  Hence, Yale asserts, no documents to produce to evidence that such a request was ever made.  Indeed, it does strain credulity to believe that a Deputy Dean (not the Dean himself) would secure the required formal approval from the President of Yale for a 10- year contract based on an unscheduled and informal sidewalk conversation; no documents prepared for the President's review formalizing the request, no document confirming formal approval, no background information or documents on Professor Bagley provided for the President's review, no written assessments, no documents or other writings of support from members of the Board of Permanent Officers of SOM?  Not even any communication or confirmation from the SOM Dean himself that he supports the request?  If nothing else, Yale's narrative places former President Levin as a key witness at trial.

Wherefore, Professor Bagley prays the Court order the Defendants to produce copies of the Document Preservation Notices together with the Document Preservation Computer Survey forms completed by each recipient and returned to the Office of the General Counsel.

Respectfully Submitted,

Constance E. Bagley

BY HER ATTORNEYS,

/s/ Laura R. Studen
Laura R. Studen, Esq.
lstuden@burnslev.com
Ellen J. Zucker, Esq.
ezucker@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
617-345-3000

December 12, 2016

## CERTIFICATE OF SERVICE

I, Valerie Brown, hereby certify that on December 12, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

        /s/ Valerie Brown
Administrative Assistant to Attorney Laura R. Studen

4830-8432-2109.3